## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

THOMAS J. HEEG, *Individually and on Behalf of All Others Similarly Situated,*

     Plaintiff,

v.

FMC CORPORATION, MARK A. DOUGLAS, and ANDREW D. SANDIFER,

     Defendants.

Case No.

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

**Class Action**

***Demand for Jury Trial***

1.      Plaintiff Thomas J. Heeg ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following based upon the investigation of Plaintiff's counsel, which included a review and analysis of U.S. Securities and Exchange Commission ("SEC") filings made by FMC Corporation ("FMC" or the "Company"), as well as reports and advisories about the Company composed by securities analysts, press releases, and other public statements issued by the Company, media reports, and other publicly available information about the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## INTRODUCTION

2.      Plaintiff brings claims against all Defendants for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5) on behalf of the class of persons and entities that purchased or otherwise acquired FMC common stock between November 2, 2022 and October 20, 2023 (the "Class Period").

3.      FMC is an agricultural sciences company and chemical manufacturer specializing in the production of patented crop protection products. The Company describes its business as "advanc[ing] farming through innovative and sustainable crop protection technologies."

4.      Intellectual property and patent protections are a critical component of FMC's business, particularly when it comes to generating earnings and maintaining market share in key markets abroad, including India, China, and Brazil. According to the Company, "[t]he FMC intellectual property estate provides us with a significant competitive advantage which we seek to expand and renew on a continual basis," and the Company's patents "cover many aspects of our business, including our chemical and biological active ingredients, intermediate chemicals, manufacturing processes."

5.      Throughout 2023, FMC repeatedly offered investors optimistic projections, predicated, in part, on the Company's progress in key markets overseas, only to reverse that guidance and revise projections downward, in some cases just weeks later. For example, on May 1, 2023, FMC revised upwards its projected earnings before interest, taxes, depreciation, and

amortization ("EBITDA") and earnings per share ("EPS") for fiscal year ("FY") 2023, before rescinding that guidance and revising its projections downward on July 10, 2023. Driven in part by the Company's acknowledgment of "headwinds" in key markets, including Brazil, FMC's stock price fell $11.62 per share, or 11.14%, to close at $92.63 per share on July 10, 2023.

6.     Then, on September 7, 2023, Blue Orca Capital published a report (the "BOC Report"), alleging that FMC and its executives had made a series of false statements about the status of patent protections for FMC's flagship products following legal defeats in India, China, and Brazil that the Company had concealed from investors. The BOC Report emphasized that the products at issue, patented diamides (a class of insecticide), "account for almost 40% of FMC's. . . revenues" in the past year and an estimated "60+% of reported EBITDA." Further, the BOC Report alleged that FMC had "concealed from investors that it [had] suffered a recent string of stunning legal defeats around the globe that have enabled competitors to now launch competing generics at prices up to 80% below the price of FMC's flagship insecticide product," and that "contrary to the Company's claims, FMC's process patents do not protect its flagship product from generic competition."

7.     The investigation set out in the BOC Report included an analysis of legal proceedings and market conditions in India, China, and Brazil. In addition to identifying a range of market headwinds affecting FMC's prospects in such markets, the BOC Report concluded that FMC and its executives repeatedly made false claims that legal victories ensured diamide patent protection for years to come, when, in fact, FMC's legal losses resulted in a loss of patent protection for its flagship products and cleared the way for generic competition. In short, Defendants repeatedly falsely reassured investors that FMC had not gone over the patent cliff while, in truth, the Company was already in free fall.

8.     Immediately following these revelations on September 7, 2023, the Company's common share price dropped more than 7.4%, to close at $76.10 per share, representing approximately $630 million in investor losses, on high trading volume.

9.     Finally, On October 23, 2023, FMC announced that it was again cutting its Q3 2023 outlook and guidance for revenues for Q4 and FY 2024, projecting earnings well below the

expectations of analysts, citing substantially lower sales volumes in Latin America, particularly Brazil.

10.    On this news, FMC's stock price fell $8.83 per share, or 12.18%, to close at $58.12 per share on October 23, 2023.

11.    As set out below, throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors that: (1) the diminishment of patent protection for FMC's flagship products following legal defeats in key markets including India, China, and Brazil had opened the door to increased competition from generics; (2) the Company repeatedly mislead investors about the status of such proceedings and falsely claimed that it did not and would not face generic competition in key markets until 2026 at the earliest; and (3) because of these issues Defendant's positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## JURISDICTION AND VENUE

12.    The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

13.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

14.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). The Company's principal offices are located in this District. Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Defendants' wrongful acts also arose in, emanated from, and caused harm in this District. Such acts include the dissemination of materially misleading statements into this District. Additionally, venue is proper in light of the purchase of the Company's common stock by members of the Class who reside in this District.

15.     In connection with the acts, transactions, and conduct alleged herein, Defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange, the New York Stock Exchange.

## THE PARTIES

16.     Plaintiff Thomas J. Heeg, as set forth in the accompanying certification, incorporated by reference herein, purchased FMC common stock during the Class Period, and suffered damages as a result of the violations of federal securities law and the false and/or misleading statements and/or material omissions alleged below.

17.     Defendant FMC is incorporated under the laws of Delaware with its principal executive offices located at 1735 Market Street, Philadelphia, PA. FMC's common stock trades on the New York Stock Exchange under the symbol "FMC."

18.     Defendant Mark A. Douglas ("Douglas") was the Company's President, Chief Executive Officer ("CEO"), and Director at all relevant times.

19.     Defendant Andrew D. Sandifer ("Sandifer") was the Company's Executive VP and Chief Financial Officer ("CFO") at all relevant times.

20.     Defendants Douglas and Sandifer (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to the market via securities analysts, money and portfolio managers, and institutional investors. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading before, or immediately after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and misleading. The Individual Defendants are liable for the false statements set forth below.

## FACTUAL BACKGROUND

21.     According to the BOC Report, "FMC's core business is to sell directly, and through licensed partners, its flagship diamide products, which accounted for $2.1 billion or roughly 36% of FMC's total revenues and an estimated 60% of its EBITDA in 2022."

22.     The Company acquired the patented diamides from DuPont de Nemours, Inc. in 2017 and currently brands them in the U.S. as Rynaxypyr and Cyazypyr. Rynaxypyr's non-branded name is chlorantraniliprole, commonly referred to as "CTPR" and it is one of the best-selling insecticides in the world. Cyazypry's non-braded name is cyantraniliprole. According to the BOC Report, these two ingredients account for 80% of diamide class sales industry-wide.

23.     The Company's efforts to protect its intellectual property rights through patent litigation is a critical component of its response to this challenge.

24.     According to the BOC Report, while "[t]he critical composition patents on FMC's leading diamide produce expired in 2022. . . FMC repeatedly promise[d] investors that it will not face any legal competition from generics in Asia until 2026 or later, supposedly because FMC's purportedly valuable 'process patents' will prevent generic competitors from entering key diamide markets like India and China."

25.     On February 7, 2023, FMC issued guidance for 2023 predicting "strong growth." Specifically, the Company projected adjusted EBITDA in the range of $1.48 to $1.56 billion, reflecting 8 percent growth at the midpoint. FMC's guidance also projected earnings per diluted share in the range of $7.20 to $8.00, reflecting 3 percent growth at the midpoint compared to 2022.

26.     On May 1, 2023, the day before reporting its quarterly results for the first quarter of 2023, FMC raised its full-year adjusted EBITDA and adjusted EPS guidance. Specifically, the Company raised its adjusted EBITDA outlook to a range of $1.5 to $1.56 billion, reflecting 9 percent growth at the midpoint compared to 2022. FMC also raised its adjusted earnings per diluted share projections to $7.34 to $7.94, reflecting 3 percent growth at the midpoint compared to 2022. In short, the Company doubled down on its optimistic projections for the year, before backtracking just a few weeks later as described below.

## DEFENDANTS' FALSE AND MISLEADING STATEMENTS

27.      Throughout the Class Period, Defendants made false and/or misleading representations about the status of legal proceedings in key markets involving the Company's patents.

28.      Specifically, legal defeats in India, China, and Brazil concerning the intellectual property protections for key compounds and intermediaries manufactured by FMC were misrepresented in Defendants' statements and omissions.

### A.    Defendants' False Statements About Patent Litigation in India

29.      According to the BOC Report, the India sub-region is "by far FMC's biggest" market in Asia, "generating revenue approaching $450 million in FY 2022, 8% of FMC's currently forecasted $5.3 billion annual revenue. . . India is critical to FMC's future growth plans." Accordingly, the expiration of FMC's patents in India, and the resulting rise of generic competition, is a key strategic challenge for the Company.

30.      In 2021, as part of its patent protection efforts, FMC initiated litigation predicated on allegations of patent infringement against a major competitor, Natco Pharma ("Natco"), in India, securing an interim injunction in July 2021. The initiation of the proceeding, and the interim injunction, were the subject of a press release issued by FMC on July 7, 2021.

31.      According to the BOC Report, while FMC had won an initial skirmish by securing a temporary injunction, it ultimately lost the case.

32.      On September 19, 2022, pursuant to a ruling by the High Court of Delhi, the injunction was vacated and the court found that FMC had failed to make out a case of patent infringement.

33.      On November 2, 2022, FMC filed a Form 10-Q for the quarterly period ending on September 30, 2022 (the "2022 3Q 10-Q"). The 2022 3Q 10-Q misleadingly stated the following:

> We intend to strategically and vigorously enforce our patents and other forms of intellectual property and have done so already against several third parties. Other third parties may seek to enter markets with infringing products or may find alternative production methods that avoid infringement or **we may not be successful in litigating to enforce our patents due to the risk inherent in any litigation.** Patents involve complex

factual and legal issues and, thus, the scope, validity or enforceability of any patent claims we have or may obtain cannot be clearly predicted. **Patents may be challenged in the courts, as well as in various administrative proceedings before U.S. or foreign patent offices, and may be deemed unenforceable, invalidated or circumvented.** We are currently and may in the future be a party to various lawsuits or administrative proceedings involving our patents. **Such challenges can result in some or all of the claims of the asserted patent being invalidated or deemed unenforceable.** Two such proceedings in China are currently on appeal. . . **In such circumstances, an adverse patent enforcement decision which could lead to the entry of competing chlorantraniliprole products in relevant markets may materially and adversely impact our financial results**.

34.     The statement identified above in ¶33 was materially false and misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects because it framed a risk that had already materialized, a loss in a significant legal matter concerning intellectual property protections in India, as merely a theoretical possibility that "may" result in the Company's patents being invalidated or deemed unenforceable and  "could" result in competitors undermining the Company's position in key markets.

35.     While FMC appealed its loss to Natco immediately, it lost on appeal. According to the BOC Report, an opinion published on December 5, 2022, confirmed the dissolution of the injunction and the conclusions of the lower court.

36.     Neither the loss nor the failed appeal in the Natco case were relayed to FMC's investors, despite the previous significance placed on the case by FMC in the Company's public statements.

37.     Additionally, on November 14, 2022, in a separate matter involving GSP Crop Science and FMC's process patents, the Delhi High Court ruled against FMC. According to the BOC Report, the court "chastised FMC for making farcical arguments" and in a "scathing opinion, the Indian court also found that FMC was 'guilty of suppressing material facts and misleading the court and also the patent office'" in an "attempt for evergreening CTPR."

38.     According to the BOC Report, ultimately the Delhi High Court's ruling on November 14, 2022, denied all of FMC's process patent claims, awarded costs to GSP Crop

Science, and cleared the path for GSP Crop Science to launch generic competition to FMC in India, further clearing the way for generic competition to FMC in India.

39.     Despite these losses, FMC misled investors about the status of its legal battles in India, generally touting the Company's past legal victories in regulatory filings and statements to analysts while misleadingly failing to disclose the Company's losses to Natco Pharma and GSP Crop Science and the resulting impairment of the Company's critical intellectual property protections – even, as discussed below, when asked specifically about the matters.

40.     FMC's Form 10-K for FY 2022 (the "2022 10-K"), filed on February 24, 2023, misleadingly claimed that **"[d]uring 2022, we initiated proceedings to enforce several of our patents and trademarks against generic producers and infringers, resulting in multiple favorable judgments and settlements, including in India and China."** (Emphasis added).

41.     The statement identified above in ¶40 was materially false and misleading and failed to disclose FMC's unfavorable patent rulings in India.

42.     According to the BOC Report, on February 21, 2023, just two months after FMC lost its appeal in the matter involving Natco, Defendant Sandifer, speaking at the Citi Investor Conference, responded to a question about the looming expiration of some of FMC's patents by stating:

> …it's not just relying on the patents themselves. And obviously, we've been very aggressive in enforcing the patents. **We have won cases for infringement in both China and India and continue to aggressively defend our patents.**
>
> (Emphasis added).

43.     The statement identified above in ¶42 was materially false and misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects because it failed to disclose that FMC lost patent infringement cases in India.

44.     The following month, on March 1, 2023, Defendant Douglas, speaking at a Bank of America Investor Conference, responded to a specific question about the status of "legal battles in India" concerning allegations of patent infringement by stating, in part, the following:

> Yes. **There's a couple of cases in India that we recently won, a couple of cases in China as well.**

…

I think it's worth noting today that **the only legal material that's available is from FMC, even though the original patent has come off. Why is that? Because of the strength of the rest of the patent portfolio.**

(Emphasis added).

45. The statement identified above in ¶44 was materially false and misleading and failed to disclose that FMC had lost patent infringement cases in India.

46. On May 9, 2023, Defendant Sandifer spoke at the Goldman Sachs Industrials and Materials Conference about FMC's first quarter results and recently improved guidance for fiscal year 2023.

47. According to the BOC Report, in May of 2023 Defendant Sandifer claimed "**there is not a single legal competitor in Rynaxypyr in the world today" and "there are no current legal entrants" in India or China.**"

48. The statement identified above in ¶47 was materially false and misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects because it failed to disclose that FMC had lost patent infringement cases in India.

**B. Defendants' False Statements About Regulatory Protection for FMC's Intellectual Property in China**

49. In September 2022, the China National Intellectual Property Administration ("CNIPA") ruled that FMC's process patent of an intermediate of one of FMC's key compounds, CTPR, was invalid.

50. According to the BOC Report, the CNIPA patent database reflects two Chinese companies unaffiliated with FMC that have received patents on their synthetic methods for producing the same intermediate.

51. FMC's 2022 10-K, filed February 24, 2023, acknowledges the adverse CNIPA ruling, but states, in relevant part, "**we have filed appeals**" and that "**Under Chinese law, the patents remain valid but are not enforceable pending appeal.**"

52. The statement identified above in ¶51 is materially false and misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects

10

because, despite acknowledging the ruling, FMC's claim that the patents remain valid, though unenforceable misleadingly suggests to investors that the Company does not face generic competition in China consistent with its previous misleading statements claiming the Company will not face such competition until 2026 at the earliest. In truth, as revealed by the BOC Report, FMC already faces generic competition in China because of the adverse CNIPA ruling.

### C. Defendants False Statements Concerning Regulatory Proceedings in Brazil

53.     According to the BOC Report, "Brazil is FMC's single largest market, accounting for 28% of FMC's $5.8 billion in FY 2022 revenue." Brazil is also reportedly "critical to the Company's future" according to the BOC Report, because the country's tropical and subtropical climate and large land area "mean that some part of the country is always in a growing season."

54.     According to the BOC Report, recent "undisclosed legal setbacks" have left FMC's patent protections in Brazil "hanging by a thread" while generic competitors have made major progress towards obtaining regulatory approval.

55.     According to the BOC Report, Brazil has data exclusivity laws that prevent a generic competitor, for a period of time, from registering its generic product with the three relevant Brazilian regulators, ANVISA (health and safety), IBAMA (environmental), and MAPA (efficacy for agriculture).

56.     In 2019, one of the world's largest chemical crop protection providers, Rainbow Agro, applied for registrations of generic CTPR formulations with each of the three regulatory agencies above. FMC took legal action and was initially successful, blocking Rainbow Agro's registration based on claims of data exclusivity.

57.     According to the BOC Report, on August 29, 2022, Rainbow Agro sued the Brazilian Regulators in federal court in Brazil, arguing that FMC's data exclusivity period had expired. On September 16, 2022 the court agreed and ordered regulators to act on Rainbow Agro's registration applications.

58.     According to the BOC Report, on April 6, 2023, MAPA had completed its evaluation, and by July 19, 2023, ANVISA completed its evaluation.

59.     On July 26, 2023, FMC filed an urgent request to intervene in the Rainbow Agro

matter, and filed a motion for reconsideration and emergency relief.

60.     According to the BOC Report, in 2021, FMC was "quick to brag to investors" when it obtained "an injunction against Brazilian regulators to postpone action on generic applications," but thereafter failed to keep investors updated and failed to disclose that the Brazilian courts recently ruled against FMC's efforts to continue to delay the registration of generics.

61.     Specifically, according to the BOC Report, in the past few months, "two of the three required Brazilian government regulators approved a generic diamide launched by a Chinese generic agchem heavyweight. The only thing standing in the way of generic competition in Brazil appears to be a last-minute urgent motion filed by FMC in July 2023 that is currently being reviewed by the court." A loss would clear the way for robust generic competition in Brazil. According to the BOC Report, "FMC's imminent defeat is not only a possible outcome, but a likely outcome."

62.     The 2022 10-K stated, in part, the following:

> We have a broad estate of additional patents regarding the production of Rynaxypyr® active ingredient, **as well as trademark and data exclusivity protection in certain countries that extend well beyond the active ingredient composition of matter patents.** . . We intend to strategically and vigorously enforce our patents and other forms of intellectual property and have done so already against several third parties. Other third parties **may seek to enter markets with infringing products or may find alternative production methods that avoid infringement or we may not be successful in litigating to enforce our patents due to the risks inherent in any litigation**. Patents involve complex factual and legal issues and, thus, the scope, validity or enforceability of any patent claims we have or may obtain cannot be clearly predicted. **Patents may be challenged in the courts, as well as in various administrative proceedings before U.S. or foreign patent offices, and may be deemed unenforceable, invalidated or circumvented.** We are currently and may in the future be a party to various lawsuits or administrative proceedings involving our patents. . . Such challenges can result in some or all of the claims of the asserted patent being invalidated or deemed unenforceable. Two such proceedings in China are currently on appeal. . . **In such circumstances, an adverse patent enforcement decision which could lead to the entry of competing chlorantraniliprole products in relevant markets may materially and adversely impact our financial results.**

63.     The statements identified above in ¶62, contained in FMC's 2022 10-K, filed on

February 24, 2023, misleadingly omit material facts necessary to make the statements therein not misleading by failing to disclose the risk posed by legal and regulatory developments in Brazil concerning FMC's data exclusivity protections and the resulting in the loss of intellectual property protections for FMC's key products in its most important market, and by framing a risk that had already materialized as merely a theoretical possibility that "may" result in the Company's patents being invalidated or deemed unenforceable and "could" result in competitors undermining the Company's position in Brazil.

### THE CORRECTIVE DISCLOSURES

64.     While FMC's concealed legal losses in key markets were piling up throughout 2023, the Company repeatedly revised earnings projections downward, in some cases mere weeks after offering investors substantially more optimistic projections. The Company's waffling substantially undermined investor confidence and served as a partial corrective disclosure insofar as it highlighted the Company's failure to meet earnings benchmarks in key markets.

65.     Despite raising its full-year EBITDA and EPS guidance just two months prior, on July 10, 2023, FMC announced that it was cutting its revenue projections for the second quarter and the 2023 fiscal year. FMC explained that "the revised guidance is driven by substantially lower-than-expected volumes due to an abrupt and significant reduction in inventory by channel partners, which only became evident towards the end of May and continued through the remainder of the quarter in North America, Latin America and EMEA."

66.     On this news, FMC's stock price fell $11.62 per share, or 11.14%, to close at $92.63 per share on July 10, 2023.

67.     FMC's revised guidance on July 10, 2023, served as a partially corrective disclosure insofar as it reduced price inflation predicated on Defendants' false and misleading statements and omissions about the Company's intellectual property litigation in key markets, and thus FMC's business, operations, and prospects. It did not, however, reveal the full truth regarding FMC's financial or competitive position.

68.     As set out above, on September 7, 2023, the BOC Report disclosed that (1) the diminishment of patent protection for FMC's flagship products following legal defeats in key

markets including India, China, and Brazil had opened the door to increased competition from generics; (2) the Company repeatedly mislead investors about the status of such proceedings and falsely claimed that it did not and would not face generic competition in key markets until 2026 at the earliest; and (3) because of these issues Defendant's positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

69.     On this news, the Company's common share price fell $6.09 per share, more than 7.4%, to close at $76.10 per share, representing approximately $630 million in investor losses, on high trading volume. This news, however, represented another only partial corrective disclosure of the true state of FMC's financial and competitive position.

70.     Finally, on October 23, 2023, investors learned the full truth regarding FMC's business, operations, and prospects. On that date, FMC announced that it was again cutting its Q3 2023 outlook and guidance for revenues for Q4 and FY 2024, projecting earnings well below the expectations of analysts, citing substantially lower sales volumes in Latin America.

71.     On this news, FMC's stock price fell $8.83 per share, or 12.18%, to close at $58.12 per share on October 23, 2023.

## INDICIA OF SCIENTER

72.     Defendants knew that each of the public documents and statements identified above and issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. The Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding FMC's inventory and earnings, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning FMC, participated in the fraudulent scheme alleged herein.

## NO SAFE HARBOR

73.     The statutory safe harbor provided for forward-looking statements under certain

14

circumstances does not apply to any of the allegedly false statements set forth in this Complaint. The statements alleged to be false and misleading above all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward-looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements set forth in this Complaint, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of FMC who knew that the statement was false when made.

## LOSS CAUSATION

74.    Defendants' wrongful conduct was the direct and proximate cause of the losses suffered by Plaintiff and the Class.

75.    During the Class Period, Plaintiff and the Class purchased FMC common stock at artificially inflated prices. The price of the Company's common stock significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses. Defendants false and misleading statements were the direct and proximate cause of such losses. The timing, scope, and scale of the drop of the share price for the Company's common stock following the revelations that previous financial disclosures relating to earnings and inventory were inaccurate by a margin of tens of millions of dollars establish as much.

## CLASS ACTION ALLEGATIONS

76.    Plaintiff brings this action individually and as a class action on behalf of all persons or entities, other than Defendants, who purchased or otherwise acquired FMC common stock between November 2, 2022, and October 20, 2023.

77.    This action is properly brought as a class action under Fed. R. Civ. P. 23(a) and

(b)(3).

78.     The Class is so numerous that joinder of all members is impracticable.  Throughout the Class Period, millions of the Company's shares of common stock traded on the New York Stock Exchange.  Consequently, the number of Class members is believed to be in the thousands and Class members are likely scattered across the United States.

79.     The precise number of Class members is unknown to Plaintiff at this time but could be determined following discovery as Record owners and other members of the Class may be identified based on documents possessed by FMC or its transfer agent. Those persons and entities may be notified by mail or other means of the pendency of this action as is typically done in securities class actions.

80.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

81.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

82.     Additionally, common questions of law and fact predominate over questions affecting any individual Class member.  The common questions include, inter alia:

    a.   whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of FMC;

    b.   whether Defendants thereby violated the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5); and

    c.   whether and to what extent Class members have been damaged by Defendants and the proper measure of damages.

83.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy for several reasons. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with

respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants. Also, adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the interest of other members or substantially impair or impede their ability to protect their interests. Moreover, damages suffered by individual Class members may be small, making it overly expensive and burdensome for individual Class members to pursue redress on their own and the number of Class members makes joinder impracticable.

84.    There will be no difficulty in the management of this litigation.

85.    Defendants have acted on grounds generally applicable to the Class with respect to the allegations in this Complaint, and, accordingly, the relief sought herein with respect to the Class as a whole is appropriate.

**FRAUD ON THE MARKET**

86.    The market for FMC's common stock was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose described above, the Company's common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class were damaged by purchasing or otherwise acquiring the Company's common stock while relying upon the integrity of the market price of the Company's common stock and market information relating to FMC.

87.    During the Class Period, the artificial inflation of FMC's common stock was caused by the material misrepresentations and/or omissions identified above.

88.    During the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about FMC's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of FMC and its business, operations, and prospects, thus causing the price of the Company's common stock to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's common stock at such artificially inflated prices, and each of them has been damaged as a result.

89.    At all relevant times, FMC's common stock was traded in an efficient market.

90.    FMC's common shares met the requirements for listing and were actively traded on Nasdaq, a highly efficient and automated market.

91.    As a regulated issuer, FMC filed regular public reports with the SEC and Nasdaq.

92.    FMC regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services.

93.    FMC was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

94.    The market for FMC common stock promptly digested current information regarding FMC from all publicly available sources and reflected such information in FMC's share price. Accordingly, all purchasers of FMC common stock during the Class Period suffered similar injury through their purchase of the Company's common stock at artificially inflated prices and a presumption of reliance applies.

95.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. This action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—and, accordingly, positive proof of reliance is not required. Establishing that the facts withheld were material such that a reasonable investor might have considered them important in making investment decisions is sufficient and satisfied here.

## COUNT ONE

### Violation of Section 10(b) of the Exchange Act and Rule 10b-5

### (Against All Defendants)

96.    Plaintiff reincorporates and realleges each and every allegation contained above as

18

if fully set forth herein.

97.     By reason of the conduct herein alleged, each Defendant named herein violated Section 10(b) of the Exchange Act and Rule 10b-5.

98.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase FMC's common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

99.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for FMC common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

100.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about FMC's financial well-being and prospects, as specified herein.

101.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of FMC's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about the Company and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated

as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

102.    Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

103.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing FMC's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

104.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of FMC's common stock was artificially inflated during the Class Period. Without knowledge that the market prices of the Company's common shares were artificially inflated, and relying directly or indirectly

on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common shares trade, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired FMC's common stock during the Class Period at artificially high prices.

105.    At the time of such misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that FMC was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired FMC common stock, or, if they had acquired such common shares during the Class Period, they would not have done so at the artificially inflated prices which they paid.

106.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

107.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period. Specifically, Plaintiff and the Class have sustained damages because they purchased FMC common stock at an inflated price, which declined as a result of the corrective disclosure described above.

## COUNT TWO

### Violation of Section 20(a) of the Exchange Act

### (Against the Individual Defendants)

108.    Plaintiff reincorporates and re-alleges each and every allegation contained above as if fully set forth herein.

109.    The Individual Defendants were controlling persons of FMC within the meaning of Section 20(a) of the Exchange Act. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and

21

disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unrestricted access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

110.    In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

111.    As set forth above, FMC and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against all Defendants as follows:

1.  Ordering that this action may be maintained as a class action and certifying Plaintiff as Class representatives and their counsel as Class counsel for actual damages and such other relief as the court deems appropriate;

2.  For pre-judgment and post-judgment interest on any such monetary relief;

3.  For reasonable attorneys' fees and costs;

4.  For costs of suit herein; and

5.  For such further relief as this Court may deem just and proper.

**DEMAND FOR A JURY TRIAL**

Plaintiff hereby demands a trial by jury on all counts so triable.

November 9, 2023                          Respectfully submitted,

                                         _s/ Michael Dell'Angelo_
                                         Michael Dell'Angelo (Pa. I.D. 80910)
                                         Andrew Abramowitz, *pro hac vice to be filed*
                                         James Maro, *pro hac vice to be filed*
                                         **BERGER MONTAGUE PC**
                                         1818 Market Street, Suite 3600
                                         Philadelphia, PA 19103
                                         Tel: (215) 875-3000
                                         mdellangelo@bm.net
                                         aabramowitz@bm.net
                                         jmaro@bm.net

                                         Jeffrey C. Block, *pro hac vice to be filed*
                                         **BLOCK & LEVITON LLP**
                                         260 Franklin Street, Suite 1860
                                         Boston, MA 02110
                                         (617) 398-5600 phone
                                         jeff@blockleviton.com

                                         *Counsel to Plaintiff*

## Certification Pursuant to Federal Securities Laws

**1.** I, Thomas J. Heeg, make this declaration pursuant to Section 27(a)(2) of the Securities act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

**2.** I have reviewed a Complaint against FMC Corporation ("FMC" or the "Company") and authorize the filing of a comparable complaint on my behalf.

**3.** I did not transact in FMC Corporation securities at the direction of plaintiff's counsel, or in order to participate in any private action under the federal securities laws.

**4.** I am willing to serve as a representative party on behalf of a class of investors who purchased or otherwise acquired: FMC securities during the Class Period, as specified in the Complaint; including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

**5.** Attached hereto as Exhibit 1 is a list of all of my transactions in FMC Corporation securities during the Class Period, as specified in the Complaint.

**6.** During the past three years, I have not sought to serve as a representative party on behalf of a class under federal securities laws.

**7.** I will not accept payment for serving as a representative party on behalf of a class beyond my pro rata share of any recovery, except as ordered or approved by the Court in accordance with 15 U.S.C. 78u-4(a)(4).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____11 / 06 / 2023_____

Thomas J. Heeg

# Exhibit 1

Doc ID: 529e09d1ae77fd90510e480e36f09b6059c04559

**Account 1:**

| Date | Transaction | Quantity | Price |
|------|-------------|---------:|-------|
| 1/19/23 | Bought | 0.046 | $126.72 |
| 5/10/23 | Sold | -10 | $109.70 |
| 5/10/23 | Sold | -0.181 | $109.70 |

**Account 2:**

| Date | Transaction | Quantity | Price |
|------|-------------|---------:|-------|
| 1/19/23 | Bought | 0.46 | $126.72 |

**Account 3:**

| Date | Transaction | Quantity | Price |
|------|-------------|---------:|-------|
| 8/15/23 | Sold | -50 | $87.48 |

Doc ID: 529e09d1ae77fd90510e480e36f09b6059c04559