**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THOMAS J. HEEG, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> FMC CORPORATION, MARK A. DOUGLAS, and ANDREW D. SANDIFER, <br><br> Defendants. | Case No. 2:23-cv-04398-KNS <br><br> Hon. Kai N. Scott <br> District Judge <br><br> <u>CLASS ACTION</u> <br><br> **ORAL ARGUMENT REQUESTED** |
| EMPLOYER-TEAMSTERS LOCAL NOS. 175 & 505 HEALTH & WELFARE FUND, on Behalf of Itself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> FMC CORPORATION, MARK A. DOUGLAS, and ANDREW D. SANDIFER, <br><br> Defendants. | Case No. 2:23-cv-04487-KNS |
| OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> FMC CORPORATION, MARK A. DOUGLAS, and ANDREW D. SANDIFER, <br><br> Defendants. | Case No. 2:23-cv-04842-KNS |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF RUTH ASSET MANAGEMENT AB FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF <u>SELECTION OF COUNSEL</u>**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................... 1

II.   FACTUAL BACKGROUND.................................................................................. 3

III.  ARGUMENT .......................................................................................................... 5

    A.    The Related Actions Should Be Consolidated......................................... 5

    B.    Ruth Satisfies the PSLRA's Requirements and Should Be Appointed
        Lead Plaintiff ............................................................................................ 6

        1.    Ruth Has Timely Moved for Appointment as Lead Plaintiff ...................... 7

        2.    Ruth Asserts the Largest Financial Interest in the Relief Sought by
            the Class ................................................................................................. 8

        3.    Ruth Satisfies the Requirements of Rule 23 ............................................ 8

            i.    Ruth's Claims Are Typical of Those of the Class ......................... 8

            ii.   Ruth Will Fairly and Adequately Protect the Interests of
                the Class ................................................................................... 9

    C.    The Court Should Approve Ruth's Selection of Counsel..................... 10

IV.   CONCLUSION..................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bhojwani v. Pistiolis*,
Nos. 06 Civ. 13761(CM)(KNF), *et al.*,
2007 WL 2197836 (S.D.N.Y. June 26, 2007) ..........................................................................1

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001).....................................................................................2, 8, 9, 10

*Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*,
586 F.3d 703 (9th Cir. 2009) ...............................................................................................10

*A1 Credit Co. ex rel. Herskowitz v. RAIT Fin. Tr.*,
No. 2:07-cv-03148-LDD,
2007 WL 9677273 (E.D. Pa. Oct. 25, 2007)..........................................................................10

*Patel v. Coinbase Glob., Inc.*,
Nos. 22-4915 (BRM) (LDW), *et al.*,
2022 WL 17582549 (D.N.J. Dec. 12, 2022)..............................................................................6

*Ratz v. PhotoMedex, Inc.*,
No. 13-6808,
2014 WL 12611308 (E.D. Pa. Feb. 12, 2014) .....................................................................8, 9

**Statutes**

15 U.S.C. 78u-4(a) ....................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 23(a)(4).............................................................................................................9

Fed. R. Civ. P. 42(a) .................................................................................................................6

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 ...........................2, 10

ii

Ruth Asset Management AB ("Ruth") respectfully submits this Memorandum of Law in support of its motion requesting: (1) consolidation of the above-captioned, related actions (the "Related Actions") pursuant to Rule 42(a) of the Federal Rules of Civil Procedure ("Rule 42(a)"); (2) appointment of Ruth as Lead Plaintiff pursuant to 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (3) approval of Ruth's selection of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") as Lead Counsel for the class; and (4) such other and further relief as the Court may deem just and proper.

## I.    INTRODUCTION

The Related Actions are three securities class actions brought under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), against FMC Corporation ("FMC" or the "Company") and certain of the Company's executive officers (collectively, "Defendants"). The Related Actions are brought on behalf of all persons and entities that purchased or acquired FMC common stock between February 9, 2022, and October 30, 2023, inclusive (the "Class Period").[1]  As detailed below, the Related Actions involve common issues of law and fact and should be consolidated pursuant to Rule 42(a).  *See infra* Section III.A.

After consolidation, the PSLRA allows any member of the purported class to move for appointment as lead plaintiff and requires a court to appoint the "most adequate plaintiff" as lead plaintiff, which is the movant that: (1) makes a timely motion under the PSLRA's sixty-day

---

[1]     For purposes of this motion, Ruth has used the longest-pled class period in the Related Actions (*see Oklahoma Firefighters Pension & Retirement System. v. FMC Corporation, et al.*, No. 2:23-cv-04842-KNS, (E.D. Pa. filed Dec. 7, 2023), ECF No. 1) to calculate its financial interest. *See, e.g.*, *Bhojwani v. Pistiolis*, Nos. 06 Civ. 13761(CM)(KNF), *et al.*, 2007 WL 2197836, at *3 (S.D.N.Y. June 26, 2007), *R. & R. partially adopted*, No. 06 Civ. 13761(CM)(KNF), 2007 WL 9228588 (S.D.N.Y. July 30, 2007) (using broadest class period to assess movants' financial interests).

deadline; (2) asserts the largest financial interest among the movants seeking appointment as lead plaintiff; and (3) "otherwise satisfies the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001) (describing the PSLRA's process for selecting a lead plaintiff).[2]

Ruth respectfully submits that it is the presumptive "most adequate plaintiff" under the PSLRA and should be appointed as Lead Plaintiff. Ruth's motion is timely, and Ruth's losses of approximately $7,331,001.13 on a last-in, first-out ("LIFO") basis in connection with its transactions in FMC common stock during the Class Period represent the largest known financial interest in the relief sought by the class. *See* Declaration of Naumon A. Amjed in Support of the Motion of Ruth Asset Management AB for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Selection of Counsel ("Amjed Declaration"), Exs. A & B. Additionally, Ruth easily satisfies the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure. With more than $5 billion in assets under management, Ruth is a highly-sophisticated institutional investor, and thus, is the prototypical lead plaintiff under the PSLRA. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"); *Cendant*, 264 F.3d at 273 (finding that "the purpose of the [PSLRA] was to encourage institutional investors to serve as lead plaintiff"). Further, Ruth's claims are typical of all members of the class, and it will fairly and adequately represent the class in this putative class action.

---

[2]    Unless otherwise noted, all emphases are added and all internal citations and quotation marks are omitted.

Lastly, Ruth has retained experienced and competent counsel to represent the class. As the "most adequate plaintiff" under the PSLRA, Ruth's selection of Kessler Topaz as Lead Counsel for the class should be approved. 15 U.S.C. § 78u-4(a)(3)(B)(v). Kessler Topaz has an extensive history of prosecuting complex actions under the PSLRA. Thus, the class can be assured of zealous representation if Ruth's selection of Kessler Topaz as Lead Counsel for the class is approved.

## II.      FACTUAL BACKGROUND

FMC is a Delaware corporation with its principal executive offices in Philadelphia, Pennsylvania. The Company is one of the world's largest providers of agricultural chemicals, and it develops and sells crop protection solutions including insecticides, herbicides, and fungicides. FMC's primary products are the insecticides Rynaxypyr® (chlorantraniliprole) and Cyazypyr® (cyantraniliprole), which are part of the diamide group of chemicals. FMC's common stock trades on the New York Stock Exchange under the ticker symbol "FMC."

The Related Actions allege that, during the Class Period, Defendants misrepresented and/or failed to disclose the diminishment of patent protections for FMC's diamide products as a result of legal defeats in key markets such as China, India, and Brazil, and that these legal defeats opened the door to increased competition from generic products. The complaints further assert that Defendants repeatedly misled investors about the status of the pending legal proceedings and falsely claimed that the Company did not, and would not, face competition from generic products in key markets until at least 2026. As a result, Defendants concealed that competitive forces rendered FMC unable to raise prices on its diamide products in order to increase its revenues or margins in its key markets. Additionally, Defendants failed to disclose that FMC's distribution channels had a significant inventory backlog due to a pull-forward of orders caused by double-ordering after the dissipation of the COVID-19 pandemic disruptions. Accordingly, the Company's increasing backlog was being exacerbated by increased competition from generic

3

products.    Thus, throughout the Class Period, Defendants' statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis.

The Related Actions assert that the truth began to emerge on July 10, 2023, when FMC announced it was slashing its revenue projections for the second quarter and the full-year 2023, attributing the reduction to "substantially lower-than-expected volumes due to an abrupt and significant reduction in inventory by channel partners."  Specifically, FMC disclosed that it had "experienced unforeseen and unprecedented volume declines in three out of four operating regions, as our channel partners rapidly reduced inventory levels."  On this news, the price of FMC common stock declined $11.62 per share, or more than 11%, from a close of $104.25 per share on July 7, 2023, to close at $92.63 per share on July 10, 2023.

On September 7, 2023, Blue Orca Capital issued a report (the "Blue Orca Report") claiming that: (1) FMC was facing significant diminishment of the patent protection for the Company's flagship products in key markets (including India, China, and Brazil), which opened the door to increased competition from generic competitors; (2) the Company misled investors regarding the status of such legal proceedings; and (3) FMC falsely claimed that it would not face competition from generic products in the Company's key markets until at least 2026.  Moreover, the Blue Orca Report explained that FMC's recent, substantial revenue growth was triggered by supply-chain disruptions, product shortages, and geopolitical events that caused the prices for FMC's products to skyrocket and distributors and cooperatives to over-purchase the Company's products due to a fear of future supply shortages.  On this news, the price of FMC common stock declined an additional $6.09 per share, or more than 7%, from a close of $82.19 per share on September 6, 2023, to close at $76.10 per share on September 7, 2023.

4

Then, on October 23, 2023, the Company cut its revenue and earnings outlook for the third quarter and full-year 2023, projecting earnings significantly below analyst projections as a result of substantially lower sales volumes in the Company's Latin American market.  Specifically, FMC disclosed that: (1) the Company "observed continued channel destocking in all regions; however, the magnitude of the destocking in Brazil was much greater than we had anticipated;" (2) the "significant global destocking impacts are expected to persist into next year"; and (3) these conditions are "not expected to improve in the near-term."  On this news, the price of FMC common stock declined $8.83 per share, or more than 13%, from a close of $66.95 per share on October 20, 2023, to close at $58.12 per share on October 23, 2023.

Then, on October 30, 2023, FMC announced its financial results for the third quarter of 2023, revealing a quarterly revenue decline of 29%, primarily due to significantly reduced customer demand in Brazil, and that Company sales were down 28% in Asia due to reduced customer demand in India.  On this news, the price of FMC common stock declined $4.76 per share, or more than 8%, from a close of $57.96 per share on October 30, 2023, to close at $53.20 per share on October 31, 2023.

## III.    ARGUMENT

### A.    The Related Actions Should Be Consolidated

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under [the Exchange Act] has been filed," courts shall not appoint a lead plaintiff "until after the decision on the motion to consolidate is rendered." 15 U.S.C. 78u-4(a)(3)(B)(ii).

Here, there are at least three related securities class actions asserting claims under the federal securities laws on behalf of investors against Defendants:

| Case Caption | Date Filed | Claims/Class Period |
|---|---|---|
| *Heeg v. FMC Corp., et al.*, No. 2:23-cv-04398-KNS (E.D. Pa.) | November 9, 2023 | Sections 10(b) and 20(a) of the Exchange Act; November 2, 2022, through October 20, 2023 |
| *Emp.-Teamsters Loc. Nos. 175 & 505 Health & Welfare Fund v. FMC Corp., et al.,* No. 2:23-cv-04487-KNS (E.D. Pa.) | November 14, 2023 | Sections 10(b) and 20(a) of the Exchange Act; November 1, 2022, through October 30, 2023 |
| *Okla. Firefighters Pension & Ret. Sys. v. FMC Corp., et al.*, No. 2:23-cv-04842-KNS (E.D. Pa.) | December 7, 2023 | Sections 10(b) and 20(a) of the Exchange Act; February 9, 2022, through October 30, 2023 |

Under Rule 42(a), consolidation of actions before the court is appropriate where the actions "involve a common question of law or fact." Fed. R. Civ. P. 42(a); *see also Patel v. Coinbase Glob., Inc.*, Nos. 22-4915 (BRM) (LDW), *et al.*, 2022 WL 17582549, at *2 (D.N.J. Dec. 12, 2022) ("Consolidation is routinely granted where securities class actions involve common questions of law and fact, and consolidation will promote efficiency and avoid unnecessary costs or delay."). Here, the Related Actions assert similar claims under the Exchange Act against the same defendants relating to substantially the same conduct during overlapping class periods. Accordingly, the Related Actions involve common questions of law or fact and, therefore, should be consolidated.

**B.      Ruth Satisfies the PSLRA's Requirements and Should Be Appointed Lead Plaintiff**

The PSLRA establishes the procedure for selecting a lead plaintiff in a class action lawsuit asserting claims under the federal securities laws. *See* 15 U.S.C. § 78u-4(a)(1)-(3)(B)(i). First, a plaintiff who files the initial action must publish a notice to the class within twenty days of filing the action informing class members of: (1) the pendency of the action; (2) the claims asserted therein; (3) the purported class period; and (4) the right to move the court to be appointed as lead plaintiff within sixty days of the publication of the notice. *See id*. § 78u-4(a)(3)(A)(i). Within

6

sixty days of the publication of the notice, any member of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have filed a complaint in the action. *See id*. § 78u-4(a)(3)(A)-(B).

Second, the PSLRA provides that within ninety days after publication of the notice, the court shall consider any motion made by a class member and shall appoint as lead plaintiff the class member the court determines to be the "most adequate plaintiff." *Id*. § 78u-4(a)(3)(B)(i). In determining the "most adequate plaintiff," the PSLRA provides that the court shall adopt a presumption that the "most adequate plaintiff" in any private action arising under the PSLRA is the movant that "has either filed the complaint or made a motion in response to a notice," "has the largest financial interest in the relief sought by the class," and "otherwise satisfies the requirements of Rule 23." *Id*. § 78u-4(a)(3)(B)(iii)(I).

Ruth is the "most adequate plaintiff" and should be appointed Lead Plaintiff because it: (1) timely moved for appointment as Lead Plaintiff; (2) possesses the "largest financial interest in the relief sought by the class"; and (3) "otherwise satisfies the requirements of Rule 23" for this motion. *Id*.

### 1.    Ruth Has Timely Moved for Appointment as Lead Plaintiff

The PSLRA allows any member of the class to move for appointment as lead plaintiff within sixty days of the publication of notice that the first action has been filed. *See id*. § 78u-4(a)(3)(A)(i)(II). Here, in connection with the filing of the above-captioned *Heeg* action—the first-filed of the Related Actions—notice was published in *Globe Newswire* on November 9, 2023, alerting investors to the pendency of the action and informing them of the January 8, 2024 deadline to seek appointment as Lead Plaintiff. *See* Amjed Declaration, Ex. C. Accordingly, Ruth has timely moved this Court for appointment as Lead Plaintiff.

**2.      Ruth Asserts the Largest Financial Interest in the Relief Sought by the Class**

The PSLRA adopts a rebuttable presumption that the "most adequate plaintiff" is the movant with the "largest financial interest in the relief sought by the class" who "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Here, Ruth suffered losses of approximately $7,331,001.13 on a LIFO basis in connection with its Class Period transactions in FMC common stock. *See* Amjed Declaration, Exs. A & B. To the best of Ruth's knowledge, no other movant seeking Lead Plaintiff appointment has a larger financial interest in this litigation. *See Cendant*, 264 F.3d at 243 ("The Reform Act establishes a presumption that the class member most capable of adequately representing the interests of class members is the shareholder with the largest financial stake in the recovery sought by the class.").

**3.      Ruth Satisfies the Requirements of Rule 23**

Ruth also satisfies the applicable requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). At the lead plaintiff stage, movants need to make only a "*prima facie* showing of typicality and adequacy." *Cendant*, 264 F.3d at 263.

**i.      Ruth's Claims Are Typical of Those of the Class**

The typicality requirement "consider[s] whether the circumstances of the movant with the largest losses are markedly different or the legal theory upon which the claims [of that movant] are based differ[] from that upon which the claims of other class members will perforce be based." *Id.* at 265 (second and third alterations in original). Here, Ruth satisfies the typicality requirement because, just like all other proposed class members, Ruth seeks recovery for the losses on its investments in FMC common stock that it incurred as a result of Defendants' misrepresentations and omissions. *See Ratz v. PhotoMedex, Inc.*, No. 13-6808, 2014 WL 12611308, at *1 (E.D. Pa. Feb. 12, 2014) (noting that "typicality and adequacy [are] satisfied where lead plaintiff, like other

putative class members, purchased stock that was artificially inflated by statements of the defendant, and was damaged as a result"). Ruth's claims arise from the same conduct as those of the other proposed class members and, thus, Ruth satisfies the typicality requirement.

#### ii.    Ruth Will Fairly and Adequately Protect the Interests of the Class

The adequacy requirement is satisfied where the lead plaintiff can "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In evaluating whether a movant satisfies the adequacy requirement, courts consider whether the movant "has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class." *Cendant*, 264 F.3d at 265 (alterations in original); *see also Ratz,* 2014 WL 12611308, at *1 ("adequacy for appointment purposes met where no potential conflict [exists] between proposed lead plaintiff and putative class members and where lead counsel [is] qualified, experienced, and able to vigorously conduct the proposed litigation").

Ruth satisfies the adequacy requirement because its interest in vigorously pursuing claims against Defendants—given its substantial financial losses—is aligned with the interests of the class who were similarly harmed as a result of Defendants' false and/or misleading statements. There is no potential conflict between Ruth's interest and the interests of the class, and Ruth is fully committed to vigorously pursuing claims on behalf of the class. Ruth has also proved its adequacy through its selection of Kessler Topaz as Lead Counsel for the class. As discussed more fully below, Kessler Topaz is highly qualified and experienced in the area of securities class action litigation and has repeatedly demonstrated its ability to prosecute complex securities class action litigation in an efficient, effective, and professional manner.

9

In addition to satisfying the typicality and adequacy requirements, Ruth—as a highly-sophisticated institutional investor with more than $5 billion in total assets under management—is the prototypical lead plaintiff Congress sought to encourage to lead securities class actions. *See* H.R. Conf. Rep. No. 104-369, at 34, *reprinted in* 1995 U.S.C.C.A.N. at 733 ("[I]ncreasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."); *Cendant*, 264 F.3d at 273 ("the purpose of the [PSLRA] was to encourage institutional investors to serve as lead plaintiff"); *A1 Credit Co. ex rel. Herskowitz v. RAIT Fin. Tr.,* No. 2:07-cv-03148-LDD, 2007 WL 9677273, at *3 (E.D. Pa. Oct. 25, 2007) ("an institutional investor that has alleged significant losses, is the type of plaintiff that has both the ability and incentive to vigorously pursue the claims of the class").

In sum, Ruth has substantial resources and is committed to vigorously pursuing the claims against Defendants to obtain the best possible recovery for the class. Ruth is precisely the type of institutional investor that Congress sought to empower as Lead Plaintiff when enacting the PSLRA.

### C.      The Court Should Approve Ruth's Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *see also Cendant*, 264 F.3d at 276 (noting that the PSLRA "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention"). Courts should not disturb the lead plaintiff's choice of counsel unless it is necessary to protect the interests of the class. *See Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*, 586 F.3d 703, 712 (9th Cir. 2009) ("[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice."). Here, Ruth has selected Kessler Topaz to serve as Lead Counsel for the class.

10

Kessler Topaz, which is headquartered in this District, specializes in prosecuting complex class action litigation and is one of the leading law firms in the field. *See* Amjed Declaration, Exs. D (Firm Profile) & E (*The Legal Intelligencer* selecting Kessler Topaz as the Litigation Departments of the Year (Specialty) for 2023). Kessler Topaz is actively engaged in complex litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors, including: *In re Tyco International, Ltd. Securities Litigation*, No. 02-md-1335 (PB) (D.N.H.) ($3.2 billion recovery); *In re Bank of America Corp. Securities, Derivative, & Employee Retirement Income Security Act (ERISA) Litigation*, No. 09-md-2058 (PKC) (S.D.N.Y.) ($2.425 billion recovery); *In re Wachovia Preferred Securities & Bond/Notes Litigation*, No. 09-cv-6351 (RJS) (S.D.N.Y.) ($627 million recovery); *In re Lehman Bros. Equity/Debt Securities Litigation*, No. 08-cv-5523 (LAK) (S.D.N.Y.) ($615 million recovery); and *In re Kraft Heinz Securities Litigation*, No. 19-cv-1339 (JLA) (N.D. Ill.) ($450 million recovery). Kessler Topaz is also currently serving as lead or co-lead counsel in several high profile securities class actions across the country, including: *In re Mylan N.V. Securities Litigation*, No. 20-cv-00955 (NR) (W.D. Pa.); *Sjunde AP-Fonden v. Goldman Sachs Group, Inc.,* No. 18-cv-12084 (VSB) (S.D.N.Y.); and *Sjunde AP-Fonden v. General Electric Co.*, No. 17-cv-8457 (JMF) (S.D.N.Y.).

Kessler Topaz's commitment to zealous representation is also evident from its trial experience under the PSLRA. Specifically, the firm obtained a rare jury verdict in the class's favor after a week-long trial held in 2014 in *In re Longtop Financial Technologies Ltd. Securities Litigation*, No. 11-cv-3658 (SAS) (S.D.N.Y.)—one of just thirteen securities class actions at the time to reach a verdict since enactment of the PSLRA in 1995 (based on post-enactment conduct). The firm also obtained the largest damage award in Delaware Chancery Court history following a trial before Chancellor Leo E. Strine, Jr. *See In re S. Peru Copper Corp. S'holder Derivative*

11

*Litig.*, No. 961-CS (Del. Ch.), *aff'd Ams. Mining Corp. v. Theriault*, 51 A.3d 1213, 1262-63 (Del. 2012) (affirming final judgment, with interest, of $2 billion).

Thus, the Court can be assured that the class will receive the highest caliber of legal representation should it approve Ruth's selection of Kessler Topaz as Lead Counsel for the class.

## IV.    CONCLUSION

For these reasons, Ruth respectfully requests that the Court: (1) consolidate the Related Actions; (2) appoint Ruth as Lead Plaintiff; (3) approve Ruth's selection of Kessler Topaz as Lead Counsel for the class; and (4) grant such other and further relief as the Court may deem just and proper.

Dated:  January 8, 2024                           Respectfully submitted,

                                                  s/ *Naumon A. Amjed*
                                                  Naumon A. Amjed (PA #309520)
                                                  **KESSLER TOPAZ MELTZER
                                                   & CHECK, LLP**
                                                  Darren J. Check (PA #86279)
                                                  Ryan T. Degnan (PA #309305)
                                                  Geoffrey C. Jarvis (PA #75473)
                                                  280 King of Prussia Road
                                                  Radnor, PA 19087
                                                  Telephone: (610) 667-7706
                                                  Facsimile: (610) 667-7056
                                                  namjed@ktmc.com
                                                  dcheck@ktmc.com
                                                  rdegnan@ktmc.com
                                                  gjarvis@ktmc.com

                                                  *Counsel for Ruth Asset Management AB and Proposed Lead Counsel for the Class*

12

## CERTIFICATE OF SERVICE

I, Naumon A. Amjed, hereby certify that on January 8, 2024, I caused a true and correct copy of the foregoing Memorandum of Law in Support of the Motion of Ruth Asset Management AB for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Selection of Counsel to be filed electronically with the Clerk of the Court using the ECF system, and it is available for viewing and downloading from the ECF system.  Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

*s/ Naumon A. Amjed*
Naumon A. Amjed (PA #309520)
**KESSLER TOPAZ MELTZER**
 **& CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com

*Counsel for Ruth Asset Management AB and Proposed Lead Counsel for the Class*

13