Exhibit 5 (excerpted)

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**Washington, D.C. 20549**

# FORM 10-Q

☒     **Quarterly Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934**

**For the quarterly period ended September 30, 2022**

**or**

☐     **Transition Report Pursuant to Section 13 OR 15(d) of The Securities Exchange Act of 1934**

**For the transition period from _____ to _____**

**Commission File Number 1-2376**

# FMC CORPORATION
**(Exact name of registrant as specified in its charter)**

| | | | |
|---|---|---|---|
| **Delaware** | | | **94-0479804** |
| (State or other jurisdiction of incorporation) | | | (I.R.S. Employer Identification No.) |
| **2929 Walnut Street** | **Philadelphia** | **Pennsylvania** | **19104** |
| (Address of principal executive offices) | | | (Zip Code) |

**Registrant's telephone number, including area code: 215-299-6000**

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Trading Symbol | Name of each exchange on which registered |
|---|---|---|
| **Common Stock, par value $0.10 per share** | **FMC** | **New York Stock Exchange** |

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☒ No ☐

Indicate by check mark whether the registrant has submitted electronically every Interactive Data File required to be submitted pursuant to Rule 405 of Regulation S-T (§ 232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit such files). Yes ☒ No ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, a smaller reporting company, or an emerging growth company. See the definitions of "large accelerated filer," "accelerated filer," "smaller reporting company," and "emerging growth company" in Rule 12b-2 of the Exchange Act.

| | | | |
|---|---|---|---|
| Large accelerated filer | ☒ | Accelerated filer | ☐ |
| Non-accelerated filer | ☐ | Smaller reporting company | ☐ |
| | | Emerging growth company | ☐ |

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act) Yes ☐ No ☒

As of September 30, 2022, there were 125,965,923 of the registrant's common shares outstanding.

**Report of Independent Registered Public Accounting Firm**

To the Stockholders and Board of Directors
FMC Corporation:

*Results of Review of Interim Financial Information*

We have reviewed the condensed consolidated balance sheet of FMC Corporation and subsidiaries (the Company) as of September 30, 2022, the related condensed consolidated statements of income (loss), comprehensive income (loss), and changes in equity for the three-month and nine-month periods ended September 30, 2022 and 2021, and the related condensed consolidated statements of cash flows for the nine-month periods ended September 30, 2022 and 2021, and the related notes (collectively, the consolidated interim financial information). Based on our reviews, we are not aware of any material modifications that should be made to the consolidated interim financial information for it to be in conformity with U.S. generally accepted accounting principles.

We have previously audited, in accordance with the standards of the Public Company Accounting Oversight Board (United States) (PCAOB), the consolidated balance sheet of the Company as of December 31, 2021, and the related consolidated statements of income (loss), comprehensive income (loss), changes in equity, and cash flows for the year then ended (not presented herein); and in our report dated February 25, 2022, we expressed an unqualified opinion on those consolidated financial statements. In our opinion, the information set forth in the accompanying condensed consolidated balance sheet as of December 31, 2021, is fairly stated, in all material respects, in relation to the consolidated balance sheet from which it has been derived.

*Basis for Review Results*

This consolidated interim financial information is the responsibility of the Company's management. We are a public accounting firm registered with the PCAOB and are required to be independent with respect to the Company in accordance with the U.S. federal securities laws and the applicable rules and regulations of the Securities and Exchange Commission and the PCAOB.

We conducted our reviews in accordance with the standards of the PCAOB. A review of consolidated interim financial information consists principally of applying analytical procedures and making inquiries of persons responsible for financial and accounting matters. It is substantially less in scope than an audit conducted in accordance with the standards of the PCAOB, the objective of which is the expression of an opinion regarding the financial statements taken as a whole. Accordingly, we do not express such an opinion.

/**s**/ KPMG LLP

Philadelphia, Pennsylvania
November 2, 2022

**PART II - OTHER INFORMATION**

**ITEM 1. LEGAL PROCEEDINGS**

*Other matters.* For additional discussion of developments in the legal proceedings disclosed in Part I, Item 3 of our 2021 Form 10-K, see Notes 12 and 19 to the condensed consolidated financial statements as well as Part II, Item 5 included within this Form 10-Q.

**ITEM 1A. RISK FACTORS**

The following updates the Risk Factor captioned "Portfolio Management Risks - Enforcement of intellectual property rights" in Item 1A - "Risk Factors" in our 2021 Form 10-K.

Enforcement of intellectual property rights - The composition of matter patents on our Rynaxypyr® active ingredient are nearing their expiration in several key countries. We have a broad estate of additional patents regarding the production of Rynaxypyr® active ingredient, as well as trademark and data exclusivity protection in certain countries that extend well beyond the active ingredient composition of matter patents. (See "Diamide Growth Strategy" and "Patents, Trademarks and Licenses" in Item 1 of our 2021 Form 10-K.) We intend to strategically and vigorously enforce our patents and other forms of intellectual property and have done so already against several third parties. Other third parties may seek to enter markets with infringing products or may find alternative production methods that avoid infringement or we may not be successful in litigating to enforce our patents due to the risks inherent in any litigation. Patents involve complex factual and legal issues and, thus, the scope, validity or enforceability of any patent claims we have or may obtain cannot be clearly predicted. Patents may be challenged in the courts, as well as in various administrative proceedings before U.S. or foreign patent offices, and may be deemed unenforceable, invalidated or circumvented. We are currently and may in the future be a party to various lawsuits or administrative proceedings involving our patents. Such challenges can result in some or all of the claims of the asserted patent being invalidated or deemed unenforceable. Two such proceedings in China are currently on appeal. (See Part II, Item 5 of this Form 10-Q for additional information.) In such circumstances, an adverse patent enforcement decision which could lead to the entry of competing chlorantraniliprole products in relevant markets may materially and adversely impact our financial results.

In addition to the other information set forth in this Form 10-Q, you should carefully consider the factors discussed in Part I, Item 1A "Risk Factors" of our 2021 Form 10-K filed with the U.S. Securities and Exchange Commission (the "SEC") for the year ended December 31, 2021, the risk factor in Item 1A of our Quarterly Report on Form 10-Q for the quarter ended March 31, 2022, and the Company's other filings with the SEC, which are available at www.sec.gov and on the Company's website at www.fmc.com.

**Forward-Looking Information**

We wish to caution readers not to place undue reliance on any forward-looking statements contained herein, which speak only as of the date made. We specifically decline to undertake any obligation to publicly revise any forward-looking statements that have been made to reflect events or circumstances after the date of such statements or to reflect the occurrence of anticipated or unanticipated events.

**ITEM 2. UNREGISTERED SALES OF EQUITY SECURITIES AND USE OF PROCEEDS**

**ISSUER PURCHASES OF EQUITY SECURITIES**

| Period | Total Number of Shares Purchased [1] | Average Price Paid Per Share | Publicly Announced Program | | |
|---|---|---|---|---|---|
| | | | Total Number of Shares Purchased | Total Dollar Amount Purchased | Maximum Dollar Value of Shares that May Yet be Purchased |
| July 2022 | 2,829 | $ 106.81 | - | $ - | $ 1,000,000,000 |
| August 2022 | 303 | 73.18 | - | - | 1,000,000,000 |
| September 2022 | 130 | 106.27 | - | - | 1,000,000,000 |
| **Total Q3 2022** | **3,262** | **$ 103.67** | **-** | **$ -** | **$ 1,000,000,000** |

_____
(1) Includes shares purchased in open market transactions by the independent trustee of the FMC Corporation Non-Qualified Savings and Investment Plan ("NQSP").

In February 2022, the Board of Directors authorized the repurchase of up to $1 billion of the Company's common stock. The $1 billion share repurchase program is replacing the previous authorization in its entirety. During the nine months ended September 30, 2022, no shares were repurchased under the publicly announced repurchase program. At September 30, 2022, $1 billion remained unused under our Board-authorized repurchase program. In October, 0.9 million shares were repurchased under the publicly announced repurchase program, totaling $100 million. This repurchase program does not include a specific timetable or price targets and may be suspended or terminated at any time. Shares may be purchased through open market or privately negotiated transactions at the discretion of management based on its evaluation of market conditions and other factors. We also reacquire shares from time to time from employees in connection with the vesting, exercise and forfeiture of awards under our equity compensation plans.

**ITEM 5. OTHER INFORMATION**

The following is an update on certain matters related to enforcement of our diamide patents, described in our 2021 Form 10-K in Item 1 ("Patents, Trademarks and Licenses").

As noted in our 2021 Form 10-K, in early 2022, we received notice that certain third parties were seeking to invalidate our Chinese patents on a certain intermediate involved in producing chlorantraniliprole and a process to produce chlorantraniliprole; we intend to defend vigorously the validity of both patents. During the third quarter of 2022, the China Patent Review Board issued rulings which held that the two challenged patents were not valid in China. We believe the Review Board's decisions are seriously flawed both on procedural and substantive ground and we have filed appeals. Under Chinese law, the patents remain valid but are not enforceable pending appeal. Given the unique and specific Chinese patent law issues at issue in that situation, we do not believe that the China Patent Review Board's decisions would materially adversely impact our enforcement of similar patents in other countries. Patent challenges in response to enforcement efforts is expected as an ordinary defense tactic in patent enforcement cases; we intend to defend vigorously any diamide patents that are challenged.

The composition of matter patent that covers chlorantraniliprole (also known as Rynaxypyr® active) expired in a number of countries in August 2022; this patent will continue to remain in force in other countries throughout the world, expiring on a country-by-country basis at various dates through 2027. As described in our 2021 Form 10-K, we are deploying a multi-pronged strategy to defend that business after active ingredient patent expiration, including enforcement of our patents in many countries which continue to cover chemical intermediates and manufacturing processes that are essential in the production of chlorantraniliprole. Patents involve complex factual and legal issues and thus each case is being litigated on the merits; we often seek preliminary injunctive relief to stop sales of products which we believe to be infringing - since equitable relief at the early stage of a litigation is subject to a higher standard of proof than decisions made after a trial on the merits, we may have difficulty prevailing in all cases at that preliminary stage. However, even in situations in which we are not able to prevail on interim relief, we intend to continue litigating in such cases and seek permanent injunctive relief and recovery of damages after a full trial.

**ITEM 6. EXHIBITS**

| | |
|---|---|
| 15 | Awareness Letter of KPMG LLP |
| 18 | KPMG LLP Preferability Letter Pension Accounting Change |
| 18.1 | KPMG LLP Preferability Letter Inventory Accounting Change |
| 31.1 | Chief Executive Officer Certification |
| 31.2 | Chief Financial Officer Certification |
| 32.1 | CEO Certification of Quarterly Report |
| 32.2 | CFO Certification of Quarterly Report |
| 101 | Interactive Data File (The instance document does not appear in the interactive data file because its XBRL tags are embedded within the inline XBRL document.) |

\* Incorporated by reference
† Management contract or compensatory plan or arrangement

68