Exhibit 27

*2022/DHC/004849*

$~

\*    **IN  THE  HIGH  COURT  OF  DELHI  AT  NEW  DELHI**

*Reserved on: 3rd November, 2022*


*Reserved on: 3rd November, 2022*
*Date of Pronouncement:14th November, 2022*

+    **CS(COMM) 662/2022, I.A. 15628/2022 and 16508/2022**

FMC CORPORATION & ORS.                          ..... Plaintiff
                    Through:    Mr. Sandeep Sethi, Sr. Advocate with
                    Dr. Sanjay Kumar, Ms. Arpita, Mr.
                    Arjun Kumar, Ms. Mehal Khurana,
                    Mr. Harshit Dixit and Mr. Priyansh
                    Sharma, Advocates (M: 9810404749).
                    versus
GSP CROP SCIENCE PRIVATE LIMITED          ..... Defendant
                    Through:    Mr. J. Sai Deepak, Mr. Guruswamy
                    Nataraj, Mr. Avinash Sharma, Mr.
                    Ankur Vyas and Mr. Shashikant
                    Yadav, Advocates (M: 9717138615)

**CORAM:**
**JUSTICE PRATHIBA M. SINGH**
          **JUDGMENT**

**Prathiba M. Singh, J.**

1.    This hearing has been done through hybrid mode.

**I.A.15628/2022 (u/O XXXIX Rules 1 & 2 CPC)**

**_Brief Facts_**

2.    The present is a suit filed by Plaintiff No.1 – FMC Corporation, USA and its two group companies i.e., Plaintiff No. 2 - FMC Agro Singapore Pvt. Ltd and Plaintiff No.3 - FMC India Pvt. Ltd. seeking *inter alia*, an injunction restraining the infringement of Indian Patent No. IN252004 titled *"Method for Preparing Fused Oxazinones from Ortho-Amino Aromatic Carboxylic Acid and a Carboxylic Acid in the presence of a Sulfonyl Chloride and Pyridine"* (*hereinafter "IN'004/suit patent"*) by the

Validity unknown

Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06

*2022/DHC/004849*

Defendant- GSP Crop Science Private Limited.

3.      The Plaintiffs are companies engaged in the manufacture, marketing and sale of chemicals including agro chemicals. They carry on business in India and several other countries of the world.

4.      The pleaded case is that Plaintiff No.1 was founded in 1883 as Bean Spray Pump Company by John Bean, who developed the first piston-pump insecticide sprayer. Thereafter, in 1928 Bean Spray Pump purchased Anderson-Barngrover Co. and Sprague-Sells Co. and changed its company name to Food Machinery Corporation (FMC) . Over the years it expanded its areas of business in India and around the world to various sectors including defense, gold mining, tractors etc.

5.      Plaintiff No.1 was divided in 2001 into two separate, publically traded companies – a machinery business (FMC Technologies) and a chemicals business (FMC Corporation). On 31st December, 2001, FMC Corporation completed the spin off of FMC Technologies.

6.      As per the Plaintiffs, in November, 2017, Plaintiff No. 1 along with its subsidiary company i.e. Plaintiff No. 2 acquired a significant portion of the Crop Protection business of E. I. Du Pont De Nemours and Company (*hereinafter 'Du Pont'*). This acquisition included certain physical and IP assets around the world.  One of the patents acquired by the Plaintiffs from Du Pont is the suit patent. The said patent was acquired vide assignment agreements with an effective date of 1st November, 2017 and was duly assigned to the Plaintiff Nos. 1 and 2.

7.      The present suit patent relates to an intermediate stated to be used in the manufacture of one of the products sold by the Plaintiffs i.e. Chlorantraniliprole (*'CTPR'*), which is an insecticide product.  The suit


Validity unknown

Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06

patent is a process/method patent, originally filed in the name of the Plaintiffs' predecessor Du Pont and thereafter assigned to the Plaintiffs vide the aforementioned assignment agreement.  The bibliographic details of the suit patent are as under:

| | |
|---|---|
| *Indian Patent No* | *IN 252004* |
| *Application No* | *3877/DELNP/2004* |
| *Title* | *"Method for Preparing Fused Oxazinones from Ortho-Amino Aromatic Carboxylic Acid and a Carboxylic Acid in the presence of a Sulfonyl Chloride and Pyridine"* |
| *Applicant* | *E.I. DU PONT DE NEMOURS AND COMPANY* |
| *Date of filing in India* | *07.12.2004* |
| *International Application No* | *PCT/US2003/023821* |
| *International filing date* | *29.07.2003* |
| *Priority Dates* | *31.07.2002; 11.02.2003* |
| *WO Publication No* | *WO 2004/011447 A1 published on 05.02.2004* |
| *Section 11A Publication* | *20.11.2009 The application was published in the official gazette issued by the Patent Office thereby being open for public to file pre-grant opposition.* |
| *Date of Grant* | *20.04.2012* |
| *Grantee* | *E.I. DU PONT DE NEMOURS AND COMPANY* |
| *Section 43(2) publication* | *27.04.2012 Accordingly, the timeline to file post-grant opposition on the suit patent IN' 004 expired on 27.04.2013.* |
| ***Date of expiry of the patent*** | ***29.07.2023*** |
| *Patentee/Assignee* | *FMC Corporation & FMC Agro Singapore Pte. Ltd.- By virtue of confirmatory assignment agreement dated May 1, 2018 with effective date of November 1, 2017 assigning absolute rights in the invention of the suit patent to the Patentees i.e., Plaintiff No. 1 & 2 herein, taken on record by the Indian Patent Office on 6th August 2018.* |

Validity unknown



Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06

*2022/DHC/004849*

8.      The suit has been filed seeking an injunction against the Defendant from utilising the method/process claimed in the suit patent for manufacturing and selling CTPR.

9.      The Plaintiffs claim to have acquired knowledge of an application filed by the Defendant before the Central Insecticides Board and Registration Committee (*hereinafter "CIB & RC"*) for registration under Section 9(3) of the Insecticides Act, 1968 for Technical Indigenous Manufacture of CTPR. Subsequently, the Defendant obtained the said approval to manufacture CTPR in August 2022.

10.     The Plaintiffs then filed a request under Right to Information Act, 2005 to obtain the details of the CTPR manufacturing process of the Defendant, but the CIB&RC sought consent of the Defendant for disclosure, which was declined by the Defendant. In the light of fact that the CTPR manufacturing process of the Defendant was not disclosed, the Plaintiffs' internal expert - Dr. Vikrant Arun Adsol analysed the Defendant's process based on a report of the Defendant titled *"Environmental Impact & Risk Assessment Report for Proposed Pesticide Technical Product (2175MT/Month) and Pesticide Specific Intermediates (1425MR/Month) Manufacturing Plant"*. The said report was submitted to the Ministry of Environment, Forest and Climate Change, Government of India and was publicly available.

11.     After analysing the report of Dr. Adsool, the internal expert of the Plaintiffs, in his affidavit dated 11th August, 2022 concluded that the manufacturing aspects disclosed by the Defendant are identical to the process/method covered by the suit patent in terms of the starting materials,

Validity unknown

Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06

*2022/DHC/004849*

products and coupling reagent, which falls within claim 1 of the suit patent. Thus, it was alleged by the Plaintiffs that the Defendant was infringing the Plaintiffs' patent. In view of the fact that the suit patent is a process patent, as per the Plaintiffs, under Section 104A of the Patents Act, 1970 (*hereinafter 'the Act'*) the onus of proving non-infringement was upon the Defendant.

12. This case was listed for the first time on 23rd September, 2022. On the said date summons were issued in the suit. A Local Commisioner was appointed to visit the manufacturing facility of the Defendant at ***Plot No.47, 100-103, 103A, G.V.M.M. Odhav, Survey No. 71/1, Plot No. 11 to 22, Nikol. Ahmedabad. Guiarat-382415*** and ascertain the actual process being used by the Defendant for the manufacture of CTPR. On the said date, time was given to the Defendant to file its reply and complete pleadings in the injunction application. It was also observed as under:

> *"19. In the meantime, if the Defendant receives the registration certificate for its product, it shall place the same before this Court by way of an application within 3 working days of the receipt of the certificate."*

13. Accordingly, the local commission was executed on 12th October, 2022 observing the provisions of the confidentiality club made by the Court vide order dated 23rd September, 2022 and the duly signed report of the Local Commissioner was filed on 19th October 2022. Subsequently, various applications were moved by the Plaintiffs and the Defendant. In the meantime, on 31st October, 2022 it was submitted on behalf of the Defendant that it had obtained necessary approvals for the launch of its CTPR product and insecticide being a seasonal product, it prayed for



Validity unknown

Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06

permission to launch, considering the matter was pending adjudication before this Court.

14. This matter has been heard day to day from 31st October, 2022 to 3rd November 2022, as the Defendant's counsel had submitted that the product in question is a seasonal product with its season ending soon and the Defendant has obtained the necessary approvals and is ready to launch the product.

15. The Defendant has filed its detailed written statement. The following pleas raised in the written statement are being considered for the purpose of adjudicating the *interim* injunction application bearing no. *I.A. 15628/2022*.

(i) The suit patent is invalid in view of the disclosures made in various prior art documents including WO'571, WO'581, WO'591 filed by the predecessor of the Plaintiffs i.e. Du Pont;

(ii) The process of manufacture of CTPR using benzoxazinone intermediate is in public domain in view of the disclosure claimed in IN'332 and IN'307, which have both entered into public domain on 13th August, 2022, upon their expiry;

(iii) The suit patent is invalid due to 'prior claiming' i.e., claims 2 to 4 of IN'332 (process patent) and disclosed/covered in IN'978 (Markush patent). Essence of the suit patent, as per the patentee, resides in the use of pyridine to *"facilitate contact between the carboxylic acid and the sulfonyl chloride"* and then *"facilitate contact of the above with anthranilic acid"*. In both cases, IN'004 itself admits that a reaction takes place since pyridine is identified as a reactant. Thus, the suit patent lacks

Validity unknown



Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06

*2022/DHC/004849*

inventive step, is obvious and invalid due to disclosures in various prior art documents;

(iv)    The Plaintiffs are guilty of evergreening the CTPR exclusivity. There are more than 30 patent families, which have been filed by the Plaintiffs seeking patents on different aspects of CTPR such as processes, ingredients, intermediates, etc., which, if, granted would result in patent monopolies qua CTPR till 2041 i.e. for additional 19 to 20 years, i.e. 20 years beyond the patent period.

(v)     That the Defendant's process for manufacturing CTPR is completely distinctive and different, which is the subject matter of a separate patent application in India, bearing Application No. 202021056370 and was published on 22nd January, 2021. Thus, the Defendant's process is non-infringing.

(vi)    The earliest priority date of the suit patent is 31st July 2002 and with international filing date of 29th July, 2003. Thereafter, it was applied for in India on 7th December 2004. Going by the priority date 20 years have lapsed and 19 years of the life of the patent have lapsed. However, the invention has not been worked in India as per various Form 27 filed by the Plaintiffs from 2013 till 8th September, 2022. Thus, no *interim* injunction ought to be granted as the patented invention clearly lacks industrial applicability or utility.

(vii)   Suit is liable to be revoked in terms of Section 64(1)(g), i.e. the suit patent does not disclose any invention which is useful.

Validity unknown



Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06

(viii) The corresponding European patent application lapsed and this fact was not disclosed to the Patent office. Significantly, the corresponding Japanese application was refused by the Japanese Patent Office, however it was claimed to be abandoned before the Indian Patent Office. Thus, the patent was obtained on false suggestion and mis-representation;

(ix) The suit patent is liable to be revoked under Section 64(1)(m) of the Act due to non-compliance with Section 8 of the Act. This assertion is supported by the fact that documents filed in the Indian Patent Office at the time of examination do not contain all the information regarding the foreign prosecution and the status of the applications filed in different jurisdictions;

(x) The suit patent is invalid in terms of Section 64(1) (a), (e), (f), (g), (d), (k), (h), (j) and (m) of the Act.

### *Submissions on behalf of the parties*

16.  Mr. Sai Deepak, ld. Counsel for the Defendant has made following submissions:

(i) The processes disclosed in IN'332 and IN'978 are identical to the suit patent. Further, the examples in IN'332 relating to the benzoxazinone intermediate i.e. examples 13 and 14 are identical to example 1 and example 13(E) of the suit patent respectively. These examples have been copied *verbatim* from IN'332 to the suit patent;

(ii) The claims in IN'332 were amended in the year 2005 to add the process for manufacture of the benzoxazinone intermediate.

Validity unknown

Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06

*2022/DHC/004849*

Such claims could have been added only if the subject matter was already disclosed in the complete specification. Thus, the disclosure in IN'332 completely invalidates the suit patent i.e. IN'004. In such a situation, there are only two possibilities, either that the new patent i.e., the suit patent is bad and invalid due to the disclosures and teachings in IN'332 or the suit patent is hit by insufficient description in violation of the requirements of Section 10(4)(a) of the Act;

(iv)    On the strength of the above submissions it is argued that the suit patent is *prima facie* invalid due to prior claiming as it is anticipated by IN'332. The suit patent is, thus, liable to be revoked under Section 64(1)(a) of the Act. Moreover, there is no inventive step or qualitative leap or technical advancement in the suit patent i.e. IN'004;

(v)     The Plaintiff is repeatedly filing multiple suits asserting different intermediates, and processes against various entities, only with a view to prevent the launch of CTPR in India. In view of these suits, the manufacture and commercial launch of CTPR by the Defendant has been adversely affected during the season in which the insecticide is in demand.

17.    On the aspect of non-infringement, Mr. J. Sai Deepak, ld. Counsel appearing for the Defendant has made the following submissions:

(i)     Mr. Sai Deepak, ld. Counsel submits that unlike the three steps followed by the Plaintiff to manufacture the benzoxazinone intermediate, the Defendant's process to manufacture benzoxazinone is a single step process. The said single step

Validity unknown



Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06

*2022/DHC/004849*

process consists of five separate parts which are in a unique sequence that has been developed by the Defendant. The Defendant also submits that the said process to manufacture the intermediate is step three in a four step process to manufacture CTPR;

(ii)  The Defendant's patent application bearing application number IN 202021056370 explains the aforementioned processes in detail wherein methane sulphonyl chloride is used only once whereas in the suit patent it needs to be added twice. Since the suit patent shows the importance of these steps, the particular sequence and the steps cannot be interchanged. Since the sequence of steps used by the Defendant is different, it is submitted that the Defendant's process is different than the suit patent process;

(iii) The ld. Counsel also relies upon the Defendant's process which has been disclosed to the Local Commissioner which shows that as per the process description, the manufacture of the intermediate is a one step process in which all the raw materials are transferred at one go. Secondly, the intermediate does not require drying as in the case of the suit patent. Thirdly, the molar ratio of the Defendant's process is not similar to the process described in the suit patent. Further, there is zero discharge of effluents in the Defendant's process. These features are highlighted on the basis of the complete specification of the Defendant's patent application;

Validity unknown



Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06

*2022/DHC/004849*

(iv)     Lastly, the ld. Counsel submits that the Defendant's patent application for manufacture of CTPR titled "*Improved Process for Preparation of Anthranilamides*" dated 24th December, 2020 and published in January, 2021 has not been opposed by the Plaintiff.

18.     Mr. Sandeep Sethi, ld. Sr. Counsel appearing for the Plaintiffs has made the following submissions:

(i)     That the argument of prior claiming is without any basis. He submits that though IN'332 discloses a process for manufacture of benzoxazinone, the process which is disclosed and claimed in the suit patent - IN'004 is different. In order to support this submission, ld. Sr. Counsel shows how *qua* various substitutions at positions shown in the formula 1a of the suit patent, the options provided in the suit patent are much more and much different from that in IN'332. Formula 1a is as follows:



(ii)    That the suit patent also contains a specific molar ratio which is not provided in IN'332;

Validity unknown

Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06

(iii)  As the process and product patent have expired in August 2022, various entities are infringing other patents *qua* intermediates of CTPR which have been granted in favour of the Plaintiffs;

(iv)  The Plaintiffs would have no objection if the process disclosed and claimed in IN'332 for manufacture of benzoxazinone is followed by the Defendant. It is only if the process disclosed in the suit patent is infringed that the Plaintiffs would be aggrieved. He further submits that benzoxazinone as an intermediate is only one part of the CTPR process patent in IN'332. In the IN'004, the patent only relates to a method and process for preparing the Fused Oxazinones, which could also be benzoxazinone;

(v)  Defendant ought to disclose its complete process for manufacture of intermediate, failing which, it would be presumed that the Defendant is using the Plaintiff's patented process and thereby, infringing the same;

(vi)  The technical expert has compared the suit patent with the publicly available report *"Environmental impact and risk assessment report for proposed pesticide technical product (2175MT/Month) pesticide specific intermediate (1425Mr/Month) Manufacturing plant"* disclosing the Defendant's process to establish infringement;

(vii)  Mr. Sethi, ld. Senior Counsel states that some of the examples in IN '332 and IN '004 could be similar as both patents are for related processes, therefore some examples are bound to be same;

Validity unknown



Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06

*2022/DHC/004849*

(viii) On a query from the Court as to whether the process of the suit patent is being implemented and worked in India, it is conceded by the ld. Sr. Counsel for the Plaintiffs that as per the working statements furnished in Form 27 for the suit patent, currently the process is not being worked in India.

19. Mr. Sai Deepak, ld. Counsel for the Defendant, has referred to the Rejoinder filed by the Plaintiffs and has made following submissions:

(i) The rejoinder admits non-working of the suit patent;

(ii) No explanation has been given as to the admitted similarities and identical examples in IN 332 and IN 004;

(iii) The rejoinder does not claim that the process claimed in the suit patent and the alleged manufacturing process of the Defendant are identical;

(iv) The plaint filed by the Plaintiff in September 2022 takes an opposite stand from the Form 27 submissions and states that the suit patent is a commercial success. It is also mentioned that the Plaintiffs do not manufacture CTPR technical in India. The same is imported and only the formulation is made in India which is covered again by a separate patent.

### *Prior Litigation relating to CTPR:*

20. On the basis of the submissions and the record, it is clear that there are several CTPR patents and applications. The effect of such multiple filing of applications is being considered hereinbelow. However, before proceeding to decide the issues that arise, it is necessary to list the CTPR patents which are extremely relevant for the present case:

(i) Markush patent: IN204978, titled *"Insecticidal*



Validity unknown

Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06

*2022/DHC/004849*

Anthranilamides" (*hereinafter IN'978*)

(ii)    Product patent: IN201307, titled "*Arthropodicial Anthranilamides*" (*hereinafter IN'307*)

(iii)    Process patent: IN213332, titled "*A Propcess for Preparing a Compound of Formula 1*" (*hereinafter IN'332*)

(iv)    Suit patent: IN252004, titled "*Method for Preparing Fused Oxazinones from Ortho-Amino Aromatic Carboxylic Acid and a Caeboxylic Acid in the Presence of a Sulfonyl Chloride and Pyridine*" (*hereinafter IN'004*)

21.    CTPR has been the subject matter of various litigations, which have been filed by the Plaintiffs before this Court. In two suits filed against **Natco Pharma Ltd.** and **Best Crop Science LLP** i.e., **CS( COMM ) 611/2019** titled **FMC Corporation & Ors. v. Natco Pharma Ltd.** and **CS (COMM) 69/2021** titled **FMC Corporation & Ors. v. Best Crop Science LLP & Anr.**, injuntions were sought *qua* CTPR on the strength of IN'307 (product patent) and IN'332 (process patent). In the said judgment rendered on 7th July, 2021, the ld. Single Judge held that CTPR was not included within the scope of Markush patent IN'978. On the basis of this finding, the Court granted an *interim* injunction restraining the infringement of both the product and process patent related to CTPR. Thus, the Plaintiffs' rights over the CTPR as a product in IN'307 and the process contained in IN'332 were recognised and given protection. The operative portion of the said judgement reads:

> "*24. To my mind, this controversy is really tangential to the issue of interim injunction. The plaintiff has only sought protection against infringement of IN'332. In case, the defendants are not using the process patented in favour of the plaintiff in IN'332, they would,*

Validity unknown



Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06

*naturally, be unaffected by the injunction sought by the plaintiff, insofar as protection of the process for manufacture of CTPR, claimed in IN'332, is concerned. If, on the other hand, the defendants are using the process claimed in IN'332, this order would apply to them.*

*Conclusion*

*25. As a result, the plaintiff is held entitled to protection from infringement in respect of both the suit patents IN'307 and IN'332.*

*26. Pending disposal of the present suit, therefore, the defendant is restrained from*

> *(i) manufacturing, using, selling, distributing, advertising, exporting, offering for sale or in any other manner, directly or indirectly, dealing in any product which infringes the subject matter of IN 201307, including the product Chlorantraniliprole, claimed that disclosed therein, and*

> *(ii) using, directly or indirectly, any of the process as claimed in IN 213332, for the manufacture of Chlorantraniliprole, or the claimed subject matter of IN 201307.*

*27. IA 15352/2019 stands allowed in the aforesaid terms.*

*IA 2084/2021 in CS (Comm) 69/2021 [F.M.C. Corpn & Anr. v. Best Crop Science LLP & Anr.]*

*39. Thus, even on a comprehensive reading of the said assertions in the pleadings of BCS, it is not possible to hold that CTPR was disclosed in WO'115, or that its validity has been rendered vulnerable as a result thereof.*

*40. Other submissions, advanced by BCS, have already been dealt with hereinabove. BCS has sought to contend that denial of injunction to the plaintiff would not result in irreparable loss to it, as it could be compensated in damages and that public interest is in favour of denial of injunction, especially during the COVID-19 pandemic. These are, obviously, merely "residuary" submissions. Without citing judicial authorities in this regard, it is well settled that, in intellectual property infringement cases,*

Validity unknown



Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06

*2022/DHC/004849*

*especially in patent infringement claims and, most specifically, where the infringement case of a pharmaceutical/agrochemical patent, public interest dictates injuncting perpetuation of an invention which is, prima facie, infringing in nature. Damages, it is well settled, are no panacea in such a case.*

*41. BCS does not dispute the fact that it seeks to exploit the claim in IN'307. As with the defendant in CS (Comm) 611/2019, BCS, too, seeks to assail the validity of IN'307 as a ground to justify such exploitation. For the reasons cited hereinabove, no prima facie case can be said to exist, in the said challenge. The inexorable sequitur is that the proposed exploitation deserves to be injuncted.*

*42. For this reason, IA 2084/2021 also succeeds and is allowed, in terms of the directions issued, hereinabove, in IA 15352/2019 in CS (Comm) 611/2019 which apply, mutatis mutandis, to the present application as well.*"

22.    This Court has been informed that against the above injunction order dated 7th July, 2021, *qua* the product and process of CTPR, an appeal was preferred to the ld. Division Bench of this Court in **FAO(OS) (COMM) 119/2021 titled "Best Crop Science LLP vs. FMC Corporation"**. However, the same was withdrawn vide order dated 18th April, 2022. The said order reads:

"*1. Learned counsel for the appellant states that she has instructions to withdraw the appeal and is in the process of filing an application seeking withdrawal of the appeal. Learned counsel seeks leave to withdraw the appeal.*

*2. In view of the statement made by the learned counsel for the appellant on instructions, the appeal is dismissed as withdrawn, without prejudice to the rights and contentions of the parties raised in the present appeal and without expressing any opinion on the merits of the case.*

Validity unknown



Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06

*2022/DHC/004849*

23.    Another suit being **CS (COMM) 349/2022** titled **FMC Corporation & Ors. v. NATCO Pharma Ltd.** was filed by the Plaintiffs seeking an injunction restraining the infringement of the granted process patent bearing Patent No. IN298645 titled *'Method for Preparing N-Phenylpyrazole-1-Carboxamides'*. The said process patent related to the process of amide bond formation and activation of a Carboxylic acid moiety to faciliatate the amide formation. The said process could be used to yield CTPR i.e., it was part of the manufacturing process of CTPR.  Vide judgment dated 19th September, 2022 the ld. Single Judge of this Court analysed the reports of the scientific advisors and held that the processes used by Natco Pharma to produce CTPR are distinctive, different and are non obvious to a person skilled in the art while considering IN'645.  Thus, the Court permitted the Natco Pharma to launch CTPR.

24.    Post the above sets of litigations, the present suit has been filed by the Plaintiffs to assert the suit patent, i.e. IN'004.

### *Analysis and Findings*

### Maze of Patents

25.    Before going into the suit patent being asserted it deserves to be noticed that CTPR is the subject matter of at least 30 separate patents and patent applications in India, as per a list handed over by the Defendant, which is not disputed by the Plaintiffs.  The said list does not include the Markush patent, product patent and process patent listed above. The said list of 30 patents/applications is set out below:

| S.No | Patent No. | Expiry | Claims |
|------|-----------|--------|--------|
| 1 | IN252356 WO2004011453 A2 | July 29, 2023 | **HX** is used in Bromination step for preparing acid intermediate |

Validity unknown



Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06

| 2 | IN252004 WO2004011447 A2 | July 29, 2023 | *Condensation step of acid intermediate and amide intermediate in the presence of optionally substituted pyridine to obtain **benzoxazone** intermediate.* |
| 3 | IN234856 WO2004087689 A1 | Mar 25, 2023 | *Ester Intermediate process by reacting the 3-chlro-2-pyridylhydrazine with **methyl-2-bromo-4-chloro-4-oxobutanoate** in the preparation of **suitable acid** scavenger and solvent.* |
| 4 | IN 256246 WO2004111030 A1 | Jun 10, 2024 | ***Benzoxazinone*** *Intermediate process* |
| 5 | IN 298645 WO2006062978 A1 | Dec 06, 2025 | *Condensation step of Acid intermediate and amide intermediate in the presence of **methylsufonychloride** to obtain chlorantraniliprole* |
| 6 | IN261551 WO 2006102025 A | Mar 14, 2026 | *Ester Intermediate process using oxidation step (Oxidation step in the presence of **Br₂/pyridine)*** |
| 7 | IN273352 WO2008010897 A2 | Jun 27, 2027 | *<u>**Claim 1:**</u> A process for the preparation of Chlorantraniliprole using 3,1-Benzoxazine-2,4(1H)-dione intermediate.* |
| 8 | IN 202117023135 of FMC Corporation WO2020117493 A1 | Dec 03, 2039 if granted | *<u>**Claims:**</u> Condensation step of Acid intermediate and amide intermediate in the presence of **methylsufonylchloride** using continuous process to obtain chlorantraniliprole.* |
| 9 | IN 202217028579 A of FMC Corporation WO2021/102393A1 | Nov 22, 2040 if granted | *<u>**Claims:**</u> A process for the preparation of Chlorantraniliprole intermediate (AC/CHP intermediate) using **Catalyst**.* |
| 10 | IN 202117061288 | Nov 11, | *<u>**Claims:**</u> A process for the* |

Validity unknown

Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06

| | | | |
|---|---|---|---|
| | *A of FMC Corporation WO 2021/096903 A1* | *2040 if granted* | *preparation Chlorantraniliprole intermediate (BPC-III intermediate) via oxidation step and **starting material is added in second time** before completing reaction.* |
| *11* | *IN 202217008145 A of FMC Corporation WO2021034904 A1* | *Aug 19, 2040 if granted* | <u>***Claims:***</u> *A process for the preparation Chlorantraniliprole intermediate (BPC-II intermediate) via bromination step using POBr$_3$/**Br$_2$**.* |
| *12* | *IN 202117061264 A of FMC Corporation WO 2021086957 A1* | *Nov 11, 2040 if granted* | <u>***Claims:***</u> *A process for the preparation Chlorantraniliprole intermediate (ADB intermediate) using 3,1-Benzoxazine-2,4 (1H)-dione intermediate.* |
| *13* | *WO2021142344 A1 of FMC Corporation* | *National phase to be entered by Jun 08, 2022* | <u>***Claims:***</u> *A process for the preparation of Acid intermediate (BPC intermediate) via oxidation step using **inorganic base.*** |
| *14* | *WO2021076838 A1 of FMC Corporation IN202117061286* | *National phase to be entered by Jun 18, 2022* | <u>***Claims:***</u> *A process for the preparation of Acid intermediate (BPC intermediate) by reacting pyrazole compound with pyridine.* |
| *15* | *IN 202217021500 A of FMC Corporation WO2021076832 A1* | *Oct 16, 2040 if granted* | <u>***Claims:***</u> *A process for the preparation of Acid intermediate (BPC intermediate) using carbonyl containing compound.* |
| *16* | *IN 202117061284 A of FMC Corporation WO2021076831 A1* | *Oct 16, 2040 if granted* | <u>***Claims:***</u> *A process for the preparation of Acid intermediate (BPC intermediate) using sulfonyl pyrazole intermediate.* |
| *17* | *IN 202117061265 A of FMC Corporation WO2021076835 A1* | | <u>***Claims:***</u> *A process for the preparation of Acid intermediate (BPC intermediate) using halogenated pyrazole* |

Validity unknown



Digitally Signed
By:DEVANSHU JOSHI
Signing Date:13.11.2022
17:21:06

*2022/DHC/004849*

| | | | |
|---|---|---|---|
| | | | *intermediate.* |
| *18* | *WO2021076839 A1 of FMC Corporation IN 202117061285 A* | | ***Claims:*** *A process for the preparation of Acid intermediate (BPC intermediate) using novel intermediates* ***(Nitrile compound)*** |
| *19* | *WO2022/020540 A1 of FMC* | *National phase to be entered by Feb 23, 2023* | ***Claim 1:*** *A three-component crystal comprising BPC intermediate, ADB intermediate and base (3-picoline), which is used in the preparation of Chlorantraniliprole.* |
| *20* | *IN 202117023135 A of FMC* | *May 24, 2041 if granted* | ***Claim 1:*** *A process for preparation of Chlorantraniliprole/Cyantranilipr ole using* ***sulfonyl chloride.*** |
| *21* | *WO2022/020547 A1 of FMC* | *National phase to be entered by Feb 23, 2023* | ***Claim 1:*** *A composition comprising a crystalline organic pesticide (AC01 or AC02), BPC intermediate, ADB or ACD intermediate, amine base and an aprotic solvent.* <br><br> ***Claim 11:*** *A process for the preparation of AC01 or AC02 using methyl sulfonyl chloride.* |
| *22* | *WO2022/164871 A1 of FMC* | *National phase to be entered by Aug 29, 2023* | ***Claims:*** *A process for the preparation of Acid intermediate of Chlorantraniliprole using* ***carbonyl containing compound.*** |
| *23* | *IN 202117061288 of FMC* | *November 11, 2039, if granted* | *Method for synthesizing Ethyl-3-bromo-1-(3-chloropyridin-2-yl)-1H-pyrazole-5-carboxylate useful for preparation of Chlorantraniliprole and Cyantraniliprole* |
| *24* | *IN 202117061286 of FMC* | *October 18, 2039, if* | *This disclosure is directed to novel methods of synthesizing 5-* |

Validity unknown

Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06

| | | | |
|---|---|---|---|
| | | *granted* | *Bromo-2-(3-chloro-pyridin-2-yl)-2H-pyrazole-3-carboxylic acid. Compounds prepared by the methods disclosed herein are useful for preparation of certain anthranilamide compounds that are of interest as insecticides, such as, for example, the insecticides chlorantraniliprole and cyantraniliprole.* |
| *25* | *IN 202117061285 of FMC* | *February 27, 2040, if granted* | *This disclosure is directed to novel methods of synthesizing 5-Bromo-2-(3-chloro-pyridin-2-yl)-2H-pyrazole-3-carboxylic acid. Compounds prepared by the methods disclosed herein are useful for preparation of certain anthranilamide compounds that are of interest as insecticides, such as, for example, the insecticides chlorantraniliprole and cyantraniliprole.* |
| *26* | *IN 202117061284 of FMC* | *November 06, 2039, if granted* | *This disclosure is directed to novel methods of synthesizing 5-Bromo-2-(3-chloro-pyridin-2-yl)-2H-pyrazole-3-carboxylic acid. Compounds prepared by the methods disclosed herein are useful for preparation of certain anthranilamide compounds that are of interest as insecticides, such as, for example, the insecticides chlorantraniliprole and cyantraniliprole.* |
| *27* | *IN 202117061264 of FMC* | *November 01, 2039, if granted* | *This disclosure is directed to novel methods of synthesizing 2-amino-5-chloro-N, 3-dimethylbenzamide. Compounds* |

Validity unknown

Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06



| | | | *prepared by the methods disclosed herein are useful for preparation of certain anthranilamide compounds that are of interest as insecticides, such as, for example, the insecticides chlorantraniliprole and cyantraniliprole.* |
|---|---|---|---|
| *28* | *IN 202217008145 of FMC* | *August 22, 2039, if granted* | *This disclosure relates to the preparation of 3-halo-4, 5-dihydro-1H-pyrazoles using a novel one-step bromination process. Compounds prepared by the process disclosed herein are useful for preparation of certain anthranilamide compounds that are of interest as insecticides, such as, for example, the insecticides chlorantraniliprole and cyantraniliprole.* |
| *29* | *IN 202217021500 of FMC* | *November 11, 2039, if granted* | *This disclosure is directed to novel methods of synthesizing 5-Bromo-2-(3-chloro-pyridin-2-yl)-2H-pyrazole-3-carboxylic acid. Compounds prepared by the methods disclosed herein are useful for preparation of certain anthranilamide compounds that are of interest as insecticides, such as, for example, the insecticides chlorantraniliprole and cyantraniliprole.* |
| *30* | *IN 202217028579 of FMC* | *November 22, 2039, if granted* | *This disclosure is directed to novel methods of synthesizing (3-chloro-2-pyridyl)hydrazine. Compounds prepared by the methods disclosed herein are useful for preparation of certain* |

Validity unknown



Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06

*2022/DHC/004849*

|  |  |  | *anthranilamide compounds that are of interest as insecticides, such as, for example, the insecticides chlorantraniliprole and cyantraniliprole.* |
|---|---|---|---|

It is further submitted by ld. Counsel for the Defendant that the above list is not exhaustive.

26.    After a public search, which can be conducted online, it is noticed that CTPR may be the subject matter of an even larger number of patent families across the globe.  Even if one restricts to the list that has been placed before the Court by the Defendant, the same would show that the said patents and the patent applications relate to:

- Preparation of intermediates such as acid intermediates, amide intermediates, ester intermediates and oxazinone intermedites;
- The processes for various steps in the preparation of intermediates;
- The process for preparing crystals comprising certain intermediates;
- Various methods of synthesisation of the intermediates;
- Methods of preparation of anthranilamide compounds.

27.    These patents and patent appplications are apart from the three main patents i.e. Markush patent (IN'978), CTPR product patent (IN'307) and CTPR process patent (IN'332).

28.    An *interim* injunction was granted in the case of *FMC Corporation & Ors. v. Best Crop Science LLP (supra)*, protecting the CTPR product patent (IN'307) and process patent (IN'332). However, after the term of the said patents has expired as of August 2022, when other entities appear to have been gearing up towards the launch of CTPR which has fallen into public

*CS (COMM) 662/2022*                                                            *Page 23 of 48*

Validity unknown



Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06

*2022/DHC/004849*

domain, the present suit has been filed asserting the suit patent related to a CTPR intermediate. Here, it is pertinent to note that the suit patent was filed in India 19 years ago.  It was not asserted against any party for all these years. Even in the litigations for the aforementioned product and process patents for CTPR, the suit patent does not appear to have been asserted.

29.    Any party, which intends to launch CTPR post the expiry of the product/process patent, would be forced to examine this complex maze of patents and patent applications, even after the product and the process claimed in IN'332 has fallen in public domain.

30.    Admittedly, the Markush patent and both the product and process patents relating to CTPR have expired in August 2022 and there can be no exclusivity in the same. However, if one goes by the list of granted and pending patents applications, the various components, intermediates and manufacturing processes of CTPR, if granted/validated, would result in the Plaintiffs monopoly and exclusive rights till 2041 i.e., a further period of 19 years.

31.    Thus, in the opinion of this Court, filing of such multiple patents for different aspects of the same product with an intention to extend the initial monopoly in some form or the other, would not be permissible. It is this very abuse that Section 3(d), mandatorily required disclosures under S.10 and other provisions of the Act, intend to curb.

32.    Undoubtedly, multiple patents can be filed for different aspects of a particular product, if the tests for novelty, inventive steps and industrial applicability are satisfied and the inventions are patentable. However, serial patenting in order to 'Evergreen' a particular monopoly, is not permissible.

33.  This would also clearly constitute an abuse of the patenting system and

Validity unknown

Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06



*2022/DHC/004849*

curb legitimate manufacture and sale of such products in India, especially if most of the patents/inventions are not being worked. The effort to extend the monopoly beyond the permissible period of 20 years in this manner is contrary to law as held by the Supreme Court in **Novartis AG v. Union of India, AIR 2013 SC 1311,** where it was observed:

> *156. However, before leaving Hogan and proceeding further, we would like to say that in this country the law of patent, after the introduction of product patent for all kinds of substances in the patent regime, is in its infancy. We certainly do not wish the law of patent in this country to develop on lines where there may be a vast gap between the coverage and the disclosure under the patent; where the scope of the patent is determined not on the intrinsic worth of the invention but by the artful drafting of its claims by skillful lawyers, and where patents are traded as a commodity not for production and marketing of the patented products **but to search for someone who may be sued for infringement of the patent**.*

### *Prior Claiming*

34.     Prior claiming is one of the grounds for refusal of a patent application or invalidating a granted patent as per Indian law. For prior claiming to be satisfied as a ground for non-grant or revocation, it needs to be demonstrated that the subject matter of the invention which has been claimed, was also claimed in an earlier filed patent application. Prior claiming can be raised even when the claims of the prior patent/application have not been published.

35.     The ground of prior claiming is encapsulated in Section 13(1)(b) of the Act.  It is also one of the grounds for revocation under Section 64(1)(a) of the Act.  The said provision is a result of considerable deliberation as is



Validity unknown

Digitally Signed
By:DEVANSHU JOSHI
Signing Date:13.11.2022
17:21:06

*2022/DHC/004849*

evident from the "*Report on the Revision of the Patents Law*" by Justice N. Rajagopala Ayyangar.  The relevant portion of the report reads:

> " ***Clause 12-Search for anticipation by previous publication and by prior claim***
>
> 378. I have already set out in paragraphs 111 to 115 ante my views as to what should constitute anticipation by publication. I have there explained that the U.K. system, which has been followed in India under Section 9 of the Patents and Designs Act, 1911, of anticipatory publications being confined to publication in India and which is continued in the Bill is not in the interests of the country and that national economy would be better served if the continental or the American system, whereunder publication of the invention before the priority date in any part of the world constitutes anticipation, were adopted.
>
> 379. It may be noticed that though the marginal note to Clause 12 refers to a search for anticipation by previous publication etc., the body of the clause does not use the expression "anticipation". This may be remedied.
>
> 380. _A provision on the lines of Section 11 (2) of the U.K. Act, 1949 is useful and may be added._ Section 44 of the Patents Law of 1957 of Czechoslavakia contains a provision for a Commission of Experts as the advisory organ of the President of the Patent Office, with assignments to be fixed by the latter. A similar provision for a panel of experts to advise the Controller, if he desires at any time to consult them on questions involving novelty or subject matter might be usefully adopted here. The references should be made confidentially and if the report of the expert is adverse to the applicant, the Controller might be directed not to act upon the report without making the report available for the applicant and giving him an opportunity to be heard.


Validity unknown

Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06

*2022/DHC/004849*

36.    A perusal of the above would indicate that the ground of prior claiming which was a part of the Patents Act, 1949 of UK and Czechoslovakia was recommended for inclusion in Indian law. The said provision, however, is no longer part of the statute in UK. Terrell on the Law of Patents (16th Edition) discusses the aspect of prior claiming and the relevant portion is:

> *"Under the old law, this problem was dealt with by the law of prior claiming. The law was that a patent would be invalidated if the invention claimed in the later application was shown to have been the subject of a valid prior grant. Prior publication was immaterial. Problems arose in deciding whether the ground of invalidity was limited to cases where the two claims were identicle or whether it extended to the cases where carrying out the invention claimed in one case would infringe the claims in the other."*

Prior claiming however, continues to be one of the grounds for refusing the grant of a patent and invalidating a patent in India.

37.    In the present case, the CTPR process patent - IN'332 was filed on 8th January 2004 with a priority date of 13th August 2001, and published on 15th December 2006. The suit patent - IN'004 was filed on 7th December, 2004 with the earliest priority date of 31st July, 2002, and thus is evidently the subsequent patent. It is pertinent to note that an amendment to IN'332 was filed on 6th September, 2005 after the suit patent was filed. However, the priority date of the claims in the amendment are the same as the original priority date. Therefore, for the consideration of the validity of the suit patent, IN'332 would need to be distinguished from IN'004.

**Claims in the Suit Patent. IN'004**


Validity unknown

Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06

2022/DHC/004849

38.    The claims of the suit patent read as under:

*"1. A method for preparing a fused oxazinone of Formula 1a*

**1a**

*wherein X is N or CR6 ;*
*Y is N or CH;*
*$R^4$ is C1-C4 alkyl or halogen;*
*$R^5$ is H, C4-C4 alkyl, C1-C4 haloalkyl or halogen;*
*$R^6$ and $R^7$ are independently H, C1-C4 alkyl, C1-C4 haloalkyl, halogen, CN or C1-C4 haloalkoxy;*
*$R^8$ is H, C1-C4 alkyl, C2-C4 alkenyl, C2-C4 alkynyl, C3-C6 cycloalkyl, C1-C4 haloalkyl, C2-C4 haloalkenyl, C2-C4 haloalkynyl, C3-C6 halocycloalkyl, halogen, CN, NO2, C1-C4 alkoxy, C1-C4 haloalkoxy, C1-C4 alkylthio, C1-C4 alkylsulfinyl, C1-C4 alkylsulfonyl, C1-C4 alkylamino, C2-C8 dialkylamino, C3-C6 cycloalkylamino, (C1- C4 alkyl)(C3-C6 cycloalkyl)amino, C2-C4 alkylcarbonyl, C2-C6 alkoxycarbonyl, C2- C6 alkylaminocarbonyl, C3-C8 dialkylaminocarbonyl or C3-C6 trialkylsilyl;*
*$R^9$ is CF3, OCF3, OCHF2, OCH2CF3, S(O)pCF3, S(O)pCHF2 or halogen; and p is 0, 1 or 2 comprising:*

*(1) contacting a carboxylic acid of Formula 2'*

Validity unknown

Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06

*2022/DHC/004849*

**2'**

$LS(O)_2Cl$

with a sulfonyl chloride of Formula 4        **4**
wherein L is selected from alkyl, haloalkyl, and phenyl optionally substituted with from one to three substituents independently selected from alkyl or halogen; in the presence of an optionally substituted pyridine compound, the mole ratio of sulfonyl chloride to carboxylic acid being from about 0.75 to 1.5; (2) contacting the mixture prepared in (1) with an ortho-ammo aromatic carboxylic acid of Formula 5'

**5'**

in the presence of an optionally substituted pyridine compound, the mole ratio of the ortho-ammo aromatic carboxylic acid of Formula 5' to carboxylic acid charged in (1) being from about 0.8 to 1.2; and
(3) adding additional sulfonyl chloride to the mixture prepared in (2), the mole ratio of additional sulfonyl chloride added in (3) to carboxylic acid charged in (1) being at least about 0.5.

2. The method as claimed in Claim 1 wherein X is N;
Y is N;
$R^4$ is CH3, F, Cl or Br;
$R^5$ is CF3, F, Cl, Br or I;

Validity unknown

Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06

$R^7$ *is Cl or Br;*
$R^8$ *is H; and*
$R^9$ *is CF3, OCHF2, OCH2CF3, Cl or Br."*

### *Claims in the related Process Patent IN'332*

39.    IN'332 is a previously filed process patent in which benzoxazinone, one of the intermediates in the manufacture of CTPR was disclosed. The term of the said patent expired on 13th August, 2022. The first claim in IN'332 reads as under:

*Claim 1. A process for preparing a compound of Formula 1.*



**1**

wherein

$R^1$ is CH$_3$, F, Cl or Br;
$R^2$ is F, Cl, Br, I or CF$_3$;
$R^3$ is CF$_3$, Cl, Br or OCH$_2$CF$_3$;
$R^{4a}$ is C$_1$–C$_4$ alkyl;
$R^{4b}$ is H or CH$_3$; and
$R^5$ is Cl or Br.

*by reacting a benzoxazinone of formula 2*

**2**

Validity unknown

Digitally Signed
By:DEVANSHU JOSHI
Signing Date:13.11.2022
17:21:06

*2022/DHC/004849*

*with an C1-C4 alkyl amine or dimethylamine*

40.    Even the process of manufacture of benzoxazinone intermediate was disclosed in claims 2 to 4 of IN'332.  The said claims read as under:

> 2. *A process as claimed in claim 1 wherein said benzoxazinone of formula 2 is prepared by coupling of a pyrazolecarboxylic acid of formula 4 with an anthranilic acid of formula 3.*



> 3. *A process as claimed in claim 2 wherein said coupling reaction comprising sequential addition of methanesulfonyl chloride in the presence of a tertiary amine to a pyrazolecarboxylic acid for formula 4, followed by the addition of an anthranilic acid of formula 3, foll owed by a second addition of methanesulfonyl chloride and a tertiary amine.*
>
> 4. *A process as claimed in claim 3 wherein said tertiary amine is triethylamine or pyridine.*

41.    A perusal of the claims of IN'332 show that for the preparation of benzoxazinone, the following steps are claimed.

    (i)    Coupling of pyrazolecarboxylic acid [formula 4] with anthranilic acid [formula 3]

    (ii)    Coupling recreation comprising the following steps;

      (a) Addition of methanesulphonyl chloride in the presence of a

Validity unknown

Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06

*2022/DHC/004849*

tertiary amine

(b) Adding the above mixture to a pyrazolecarboxylic acid [Formula 4]

(c) Addition of anthranilic acid [Formula 3]

(d) A second addition of methane sulphonyl chloride and tertiary amine, where the tertiary amine could be triethyl amine or pyridine

***Comparison of IN'332 and the suit patent***

42.    A perusal of the aforementioned claims would show that formula 1a of the suit patent is identical to formula 2 disclosed in Claim 1 of IN'332 as benzoxazinone. The two structures are reproduced below:

| Formula 1a of IN'004 – Fused Oxazinone one of which is benzoxazinone | Formula 2 of IN'332 - benzoxazinone |
|---|---|
| ![1a structure] | ![2 structure] |

43.    In IN'332 the process of manufacturing of benzoxazinone is covered in claims 2 to 4 which disclosed the following steps:

(i)    <u>Claim 2</u>- coupling of pyrazolecarboxylic acid with an anthranilic acid.

(ii)    <u>Claim 3</u>- The first part of Claim-2 is expanded in Claim 3 which disclosed sequential addition of methane sulphonyl

Validity unknown

Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06


*2022/DHC/004849*

chloride in the presence of a tertiary amine to a pyrazolecarboxylic acid. It also discloses addition of anthranilic acid followed by a second addition of methane sulphonyl chloride and a tertiary amine.

(iii)  <u>Claim 4</u> - The tertiary amine is defined as a triethylamine or pyridine.

Thus, overall, claims 2 to 4 of IN'332 disclose and claim the entire process for manufacture of benzoxazinone.

44.    In the suit patent an almost identical sequence has been claimed. Step 1 discloses the contact between carboxylic acid of formula 2 with sulphonyl chloride in the presence pyridine compound. In the suit patent, the reference to methane sulphonyl chloride is made in a generic fashion by using formula $LSO_2Cl$ where L would include an alkyl including methane. The Ortho-amino Aromatic Carboxylic Acid claimed in part 2 of claim 1 of the suit patent is nothing but an anthranilic acid. Finally, the suit patent discloses and claims the addition of sulphonyl chloride and the tertiary amine which is pyridine which is also disclosed in claim 3 of IN'332. Thus, the claims in the suit patents are identical to the claims in IN'332. A side by side comparision of claim 1 of the suit patent and claims 2 to 4 of IN'332 is as follows


Validity unknown

Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06

| Claim 1 of IN'004 | Claims 2 to 4 of IN'332 |
|---|---|
| 1. The method in the suit patent is as follows: | 2.    A process as claimed in claim 1 wherein said benzoxazinone of formula 2 is prepared by coupling of a pyrazolecarboxylic acid of formula 4 with an anthranilic acid of formula 3. 3.    A process as claimed in claim 2 wherein said coupling reaction comprising sequential addition of methanesulfonyl chloride in the presence of a tertiary amine to a pyrazolecarboxylic acid for formula 4, followed by the addition of an anthranilic acid of formula 3, foll owed by a second addition of methanesulfonyl chloride and a tertiary amine. 4.    A process as claimed in claim 3 wherein said tertiary amine is triethylamine or pyridine. |

45.    If one minutely analyses the processes claimed in IN'004 and IN'332, it maybe observed that the same are almost identical, though in IN'004 the

Validity unknown

Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06

claims are couched in broader and generic terminology. These processes include:

- Coupling of carboxolic acid with anthranilic acid.
- Addition of Sulphonyl Chloride, use of alkyl or halogen sulphur
- Addition in the presence of pyridine compound
- Contact with ortho-amino aromatic carboxolic acid where contact is in the presence of pyridine compound.
- Adding any Sulphonyl Chloride at the end to the mixture.

46. The fact that instead of the specific substances, they are described in generic terms is evident from the differences in the descriptions, which, for instance are illustratively set out below:

- Instead of specifically using pyrazolecarboxolic acid as in IN'332, a broad Carboxolic Acid is used in the suit patent. It is known to any person skilled in the art that one of the carboxylic acids is pyrazolecarboxolic acid;
- Instead of methanesulphonyl chloride, use of alkyl or halogen is mentioned. It is known to any person skilled in the art that one of the alkyls is methyl;
- Instead of a tertiary amine or pyridine, additional optionally substituted pyridine compound is mentioned.
- Instead of methane sulphonyl chloride being added for a second time, addition of sulphonyl chloride is mentioned. It is known to any person skilled in the art that one of the sulphonyl chlorides is methane sulphonyl chloride.

Clearly, the broad processes, are almost identical and the differences are merely superficial.



Validity unknown
Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06

*2022/DHC/004849*

47.    This fact is also established by the examples given in the complete specifications, of IN'332 and IN'004. Although, Mr. Sandeep Sethi, ld. Sr. Counsel sought to distinguish the examples by arguing that not all the steps are same, however, this Court notices that the examples provided in the manufacture of benzoxazinone in IN'332 and corresponding steps in the suit patent are identical. For instance:

- Example 13 of IN'332 is identical to a step of example 1 of the suit patent.
- Example 14 of IN'332 is identical to example 13(E) of the suit patent.

The comparative chart of examples is set out below:

| IN'004 | IN'332 |
|---|---|
| Example 1 (Step F)<br><br>Preparation of 2-[3-bromo-1-(3-chloro-2-pyridinyl)-1H-pyrazol-5-yl]-6-chloro-8-methyl-4H-3,1-benzoxazin-4-one | Example 13<br><br>Preparation of 2-[3-bromo-1-(3-chloro-2-pyridinyl)-1H-pyrazol-5-yl]-6-chloro-8-methyl-4H-3,1-benzoxazin-4-one |
| Example 13(E)<br><br>Preparation of 6-chloro-2-[3-chloro-1-(3-chloro-2-pyridinyl)-1H- pyrazol-5-yl]-8-methyl-4H-3,1- benzoxazin-4-one | Example 14<br><br>Preparation of 6-chloro-2-[3-chloro-1-(3-chloro-2-pyridinyl)-1H- pyrazol-5-yl]-8-methyl-4H-3,1- benzoxazin-4-one |

Validity unknown

Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06

*2022/DHC/004849*

48.     Clearly, the Court gets the impression, that the Plaintiffs identified benzoxazinone as the target intermediate useful in the manufacture of CTPR which they included in IN'332. The same was disclosed in IN'332 but was not claimed at the time of filing. After filing the suit patent in 2004, in 2005, benzoxazinone and the process of its manufacture was then claimed by way of an amendment in IN'332, while taking priority from 2001.

49.     It is to be noted that as per Section 59 of the Act, for any amendment to be allowed, the same has to be within the scope of the originally filed subject matter. Clearly, the manufacture and use of fused oxazinones including benzoxazinone and related processes thereof were known to the patentee while filing IN'332. In order to fulfill the requirement of disclosing the best method of performance, under Section 10, the identity of the benzoxazinone intermediate and process for its manufacture was claimed by way an amendment.

50.     The patentees having opted for disclosing the best method and having claimed the same in IN'332, have enjoyed the full term of exclusivity till the expiry of the said patent in August, 2022. Thus, they cannot now seek to enjoy or extend the said monopoly by seeking to distinguish between the suit patent and IN'332. The invention disclosed in the claims of the suit patent was at best a chance, which the patentees took for securing a broad coverage, even when benzoxazinone was already part of IN'332.

51.     The differences, which the Plaintiffs seek to highlight between IN'332 and IN'004 are completely farcical in nature and are merely cosmetic differences, aimed to confound the sitation. Thus, *prima facie,* the suit patent is hit by prior claiming.

Validity unknown



Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06

*2022/DHC/004849*

### *Invalidity*

52.    The identity of -

- Formula 1a in the suit patent and Formula 2 in IN'332;

- Formula 2 in the suit patent and Formula 4 in IN'332.

is clear and needs no elaboration. Formula 4 of the suit patent and part 3 of claim 3 of IN'332 are similar with the mere difference of L being described as an alkyl - i.e. methyl. Such identity/substitution *prima facie* renders the suit patent invalid and liable to be revoked.  The comparative charts are set out below:

| Formula 1a of IN'004 | Formula 2 of IN'332 |
|---|---|
| ![1a structure] | ![2 structure] |
| Formula 2 of IN'004 | Formula 4 of IN'332 |
| ![2' structure] | ![4 structure] |
| Formula 4 of IN'004 | Formula in Part 3 of Claim 3 in IN'332 |
| LS(O)₂Cl<br><br>L – alkyl or halogen | MeS(O)₂Cl<br><br>Me- Methyl which is an alkyl |



Validity unknown

Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06

2022/DHC/004849

53.    The sequence of the events in the suit patent as also in IN'332 leaves no manner of doubt that the process for manufacture of benzoxazinone or even fused oxazinones, was completely disclosed in the patent specification of IN'332. Even though, the process for manufacture of benzoxazinone was only claimed by way of an amendment dated 18th September, 2005, it still has the same priorirty date as IN'332. It is observed that the same process was used in the suit patent for producing benzoxazinone – leading to CTPR. The suit patent also contains identical examples from the IN'332.  This cannot merely be a coincidence. Therefore, this court is convinced that this is nothing but an attempt by the Plaintiffs to extend their monopoly beyond the life of IN'332 under the garb of the slight differences and usage of broad terminologies in the suit patent.  The non-assertion of the suit patent prior to the expiry of IN'332 supports the conclusion the intention is to merely extend the monopoly on CTPR, in some way or the other.

54.    It also appears that unwittingly, the amendment in IN'332 may not have come to the notice of the examiner of the suit patent and thus, the same may have been granted.  There was a duty cast upon the applicant in the suit patent to have informed the examiner of the monopoly granted on claims in IN'332. This duty was not fulfilled by the applicant.

55.    It is the *prima facie* conclusion of this Court that the amended claims in IN'332 may have not in the knowledge of the patent office at the time of examining IN'004.  Had the patent office known of the same, the suit patent may not have been granted. Even if granted, the suit patent may at best have been a patent of addition, which would have the same term as IN'332.

56.    The aforementioned analysis clearly renders the suit patent more than vulnerable to revocation.  Thus, the Defendant has raised a strong challenge


Validity unknown

Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06

*2022/DHC/004849*

to the validity of the suit patent.

57. Moreover, even other prior art documents, which have been relied upon by the Defendant, though have not been considered in detail in the present judgment, show that the processes for manufacture of fused oxazinones by following the process of coupling of carboxolic acide with anthralinic acid in the presence of pyridine and a second addition of anthralinic acid with pyridine is known in the art. The said prior art documents are as follows:

 (i) "*Facile Synthesis of 2-aryl-4H-3,J-benzoxain-4-ones*"; D.V. Ramanna & E. Kantharaj (1993) Published in Organic Preparations and Procedures International: The New Journal for Organic Synthesis; vol. 25, 1993, pp.588-590;

 (ii) "*The Chemistry of 4H-3,1-Benzoxazin-3-ones*"; G. M. Coppola, J. Heterocyclic Chemistry 1999, 36, 563-588;

 (iii) "*Synthesis and Evaluation of 2-aryl-4H-3, J-benzoxazin-4- ones as serine protease inhibitors*"; Gilmore et al, Bioorganic & Medicinal Chemistry Letters, Vol. 6, No. 6, pp. 679-682, 1996;

 (iv) "*Inhibitors of the Tissue Factor/Factor VIIa-Induced Coagulation: Synthesis and In Vitro Evaluation of Novel Specific 2-Aiyl Substituted 4H-3, l-Benzoxazin-4-ones*"; Jakobsen ct al, Bioorganic & Medicinal Chemistty 8 (2000) 2095-2103;

 (v) WO 2002/048115 published on 20th July, 2002 (of Du Pont)

 (vi) WO 2001/070671 published on 27th September, 2001 (of Du Pont).

## **Suppression and Misrepresentation**

58. Apart from the vulunerablity of the suit patent due to prior claiming, there are several other factors in the present case that need consideration.

59. The Plaintiffs have not been candid with the patent office and the Court in respect of the lapsing of the corresponding European patent as of


Validity unknown

Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06

2007 and the rejection of the corresponding Japanese Patent Application in 2009.

60.    Even in the rejoinder filed on the last date of hearing when submissions were heard, the Plaintiffs continued to mislead the Court by submitting that the patent was granted in several jurisdictions in Europe. To substantiate the same, the following chart filed with the rejoinder is extracted:

| Country | Filing number | Filing date | Status | Publication date | Grant number | Grant date |
|---|---|---|---|---|---|---|
| AUSTRALIA | 2003257028 | 29/07/2003 | Granted | 09/12/2010 | 2003257028 | 24/03/2011 |
| BRAZIL | PI0313341.9 | 29/07/2003 | Filed | | | |
| CHINA P.R. | 03818202.5 | 29/07/2003 | Granted | | 03818202.5 | 10/10/2008 |
| ISRAEL | 165503 | 29/07/2003 | Granted | | 165503 | 03/01/2011 |
| JAPAN | 524204/04 | 29/07/2003 | Abandoned | | | |
| KOREA SOUTH | 10-2005-7001577 | 29/07/2003 | Granted | | 1050872 | 14/07/2011 |
| CANADA | PCT/US03/23821 | 29/07/2003 | Abandoned | | | |
| AUSTRIA | 03772097.6 | 29/07/2003 | Abandoned | 06/07/2005 | | |
| BELGIUM | 03772097.6 | 29/07/2003 | Abandoned | 06/07/2005 | | |
| BULGARIA | 03772097.6 | 29/07/2003 | Abandoned | 06/07/2005 | | |
| CYPRUS | 03772097.6 | 29/07/2003 | Abandoned | 06/07/2005 | | |
| CZECH REPUBLIC | 03772097.6 | 29/07/2003 | Abandoned | 06/07/2005 | | |
| DENMARK | 03772097.6 | 29/07/2003 | Abandoned | 06/07/2005 | | |
| FINLAND | 03772097.6 | 29/07/2003 | Abandoned | 06/07/2005 | | |
| FRANCE | 03772097.6 | 29/07/2003 | Granted | 06/07/2005 | 1549643 | 29/08/2007 |
| GERMANY | 03772097.6 | 29/07/2003 | Granted | 06/07/2005 | 60316006.9 | 29/08/2007 |
| GREAT BRITAIN | 03772097.6 | 29/07/2003 | Granted | 06/07/2005 | 1549643 | 29/08/2007 |
| GREECE | 03772097.6 | 29/07/2003 | Abandoned | 06/07/2005 | | |
| HUNGARY | 03772097.6 | 29/07/2003 | Abandoned | 06/07/2005 | | |
| IRELAND | 03772097.6 | 29/07/2003 | Abandoned | 06/07/2005 | | |
| ITALY | 03772097.6 | 29/07/2003 | Abandoned | 06/07/2005 | | |
| LUXEMBOURG | 03772097.6 | 29/07/2003 | Abandoned | 06/07/2005 | | |
| MONACO | 03772097.6 | 29/07/2003 | Abandoned | 06/07/2005 | | |
| NETHERLANDS | 03772097.6 | 29/07/2003 | Abandoned | 06/07/2005 | | |
| POLAND | 03772097.6 | 29/07/2003 | Abandoned | 06/07/2005 | | |

Validity unknown



Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06

*2022/DHC/004849*

| PORTUGAL | 03772097.6 | 29/07/2003 | Abandoned | 06/07/2005 | | |
| ROMANIA | 03772097.6 | 29/07/2003 | Abandoned | 06/07/2005 | | |
| SLOVAKIA | 03772097.6 | 29/07/2003 | Abandoned | 06/07/2005 | | |
| SPAIN | 03772097.6 | 29/07/2003 | Abandoned | 06/07/2005 | 1549643 | 29/08/2007 |
| SWEDEN | 03772097.6 | 29/07/2003 | Abandoned | 06/07/2005 | | |
| SWITZERLAND | 03772097.6 | 29/07/2003 | Granted | 06/07/2005 | 1549643 | 29/08/2007 |
| TURKEY | 03772097.6 | 29/07/2003 | Abandoned | 06/07/2005 | | |
| ESTONIA | 03772097.6 | 29/07/2003 | Abandoned | 06/07/2005 | | |
| SLOVENIA | 03772097.6 | 29/07/2003 | Abandoned | 06/07/2005 | | |
| TAIWAN | 092118080 | 29/07/2003 | Granted | 21/06/2010 | I132683 | 21/06/2010 |
| PAT COOP TREATY | PCT/US03/23821 | 29/07/2003 | Expiry date | 05/02/2004 | | |
| EUR PATENT | 03772097.6 | 29/07/2003 | Granted | 06/07/2005 | 1549643 | 29/08/2007 |

61.    The said chart was filed in the Patents Office to satisfy the requirements in Section 8 of the Act, as Form 3 on 7th March, 2012. This submission though, is a complete misrepresentation as it does not disclose that as of 2012, the corresponding European patent had lapsed with effect from 29th August, 2007. The chart shows the same as 'Granted' in various European countries including France, Germany, Switzerland – which is factually incorrect.

62.    Further, the Plaintiffs in their Form 3 submitted to the Indian patent office that the corresponding Japanese patent application was abandoned. However, this is a gross misrepresentation as the same was refused on the strength of disclosures made in the published PCT application bearing international publication number WO200248115. The machine translation of the order issued by the Japanese Patent Office  supplied by the Defendant reads as under:

> *"This **application should be refused** for the reason mentioned below. If the applicant has any opinion(s) against the reason, a written opinion should be*



Validity unknown

Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06

*2022/DHC/004849*

*submitted within 3 months from the date on which this notification was dispatched. Reason*

*The following to which invention concerning the following claim of this application was distributed in Japan or abroad before the application was filed -- (A) – **based on the Invention described in Cited Publication or invention available to the public through electric telecommunication lines of 1 and 2, Since a person skilled in the art can invent easily before the application was filed**, a patent cannot be obtained in accordance with the provisions of Article 29(2) of the Patent Act. Note"*

63. The plaint claims that the process covered by the suit patent is `commercially very successful'. The relevant extract of the plaint reads:

> *"15.     The suit patent related to a method for preparing a fused oxazinone **which are commercially very successful** represented by formula 1a."*

64. This is in stark contrast with the Form 27 dated 8th September, 2022 where it is categorically admitted by the Plaintiffs that the product is not being worked in India. The Plaintiffs in paragraph 51 of the rejoinder attempt to respond to this issue, in the following manner:

> *"51.   It is submitted that the suit patent pertains to a process for preparing an intermediate and not to a product per se.  It is submitted that due to stringent regulatory requirements and keeping in mind the quality and efficacy standard, the process needs to be carried out in a conducive environment as per the international standards.   Accordingly, manufacturing facility to carry out a process cannot be established in every country.  In view thereof, the requirement of local manufacture by the patented process may not be the mandate of the law."*


Validity unknown

Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06

*2022/DHC/004849*

65.    The contentions of `commercial success' and `admitted non-working' of the suit patent are completely contradictory to each other as the Plaintiffs admit in the rejoinder and during oral submissions that there is no local manufacturing in India of the suit patent. In fact, from the averments in the pleadings and the submissions it appears that the invention claimed in the suit patent has not been worked anywhere globally, let alone in India.

**Non-infringement**

66.    The Plaintiffs have claimed infringement in the plaint in the following manner.

> "*35. The alleged manufacturing process disclosed by the Defendant is identical to the process claimed in IN '004. Both IN '004 and the alleged manufacturing process of the Defendant, describe a formation of fused oxazinone, namely 2-[5-bromo-2-(3-chloropyridine-2-yl)-2Hpyrazol-3-yll-6-chloro-8-methyl-1-benzo[d][1,3]oxazin-4-one.      2-[5-bromo-2-(3-chloropyridine-2-yl)-2Hpyrazol-3-y1]-6-chloro-8-methyl- 1 -benzo[d][ 1,3]oxazin-4-one is subsequently used to manufacture chlorantraniliprole as evidenced in Step 2 of the GSP manufacturing process in paragraph 3l above.  Accordingly, the manufacturing processes of IN '004 and the Defendant are identical processes.*
> *36. The manufacturing process disclosed in IN '004 and the alleged manufacturing process disclosed by the Defendant both rely on formation of a fused oxazinone, in particular, 2-[5-bromo-2-(3-chloropyridine-2-yl)-2H-pyrazol-3-yl]-6-chloro-8-methyl-1-benzo[d][1,3]oxazin-4-one.*"

67.    The elements, which are used by the Plaintiffs to claim infringement of the suit patent by the Defendant's CTPR manufacturing process, as per

Validity unknown



Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06

*2022/DHC/004849*

paragraph 32 of the Plaint are –

    (i)     Formation of fused oxazinone namely benzoxazinone as claimed in IN'004;

    (ii)    Benzoxazinone is used for manufacture of CTPR, as per the Defendant's publically available information and the same is disclosed in IN'004;

    (iii)   The Defendant's CTPR manufacturing process commences in step one, which in essence is the process contained in IN'004.

68.    In the suit patent i.e. IN'004, the process of manufacture of fused oxazinone involves five steps. The Defendant wishes to highlight the differences between the suit patent and its own CTPR manufacturing process, relying on its own patent application. The Local commissioner has filed his report. The adjudication of the question of non-infringement would involve the following:

- Complete analysis of each step disclosed in IN'332;
- Complete analysis of each step disclosed in the suit patent;
- Complete analysis of each step disclosed in the Defendant's patent application;
- Analysis of the process disclosed to the Local Commissioner;

69.    Fused oxazinones are known as per the disclosures made in IN'332. Process for manufacturing the same was also known. The question whether the process of the Defendant is different or not can only be conclusively established after the technical experts have given evidence. The conclusion of the Plaintiff's expert based on a part of the process disclosed in the Environmental Impact Report of the Defendant is not reliable at this stage, as the same is based on half-baked information. To the extent that there are

Validity unknown



Digitally Signed
By:DEVANSHU JOSHI
Signing Date:13.11.2022
17:21:06

*2022/DHC/004849*

similarities, the same are also disclosed in IN'332 which deals with the process for manufacture of benzoxinanone. *Prima facie*, it is not possible to arrive at a conclusion that the process of the Defendant is infringing, at this stage. The same would have to be adjudicated post-trial once the technical experts give their evidence. Moroever, even before embarking on the question of infringement, the validity of the suit patent would have to be established, which at this stage, is clearly in doubt.

## Conclusion

70.    From the above analysis and discussion, this Court has arrived at the following *prima facie*, conclusions:

(i)    That the suit patent, i.e. IN'004 is *prima facie* invalid owing to the disclosures made in the complete specification and claims of IN'332 i.e. CTPR process patent.

(ii)    The Plaintiffs are *prima facie* guilty of supressing material facts and misleading the Court as also the patent office.

(iii)    The long list of patents, which have been filed in respect of CTPR and its various components and processes clearly points towards an attempt for evergreening CTPR. This has been done even though, the product patent for the same has expired and therefore, fallen into public domain.

(iv)    The non-working of the suit patent for more than 20 years from the priority date and 19 years since filing in India, raises doubt as to the industrial applicability of the suit patent itself. Although the threshold for industrial applicability at the time of granting a patent is not very high, at the stage of *interim* injunction, where the invention has not been worked for more

Validity unknown



Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06

than 19 years and the term of the patent has nearly expired, this Court would be hesistant to grant an *interim* injunction.

71.    The present appears to be a classic case as warned by the Supreme Court in ***Novartis (supra)*** where the Plaintiffs seek to search for a Defendant(s) who could be sued in order to prevent commercial launch of the CTPR product in some manner, after the product and process patents have expired – that too by placing reliance on an intermediate patent which has not been worked, which is *prima facie* invalid and whose term is coming to an end in a few months.

72.    The balance of convenience is thus in favour of the Defendant which is stated to have obtained approvals from the relevant authorities for the manufacture and commercial launch of CTPR. Irreparable injury would be caused if the Defendant is not permitted to lauch the manufacture and sale of CTPR, in these facts. In the above facts and circumstances, the Plaintiffs are not entitled to an *interim* injunction. The Defendant shall however maintain account of sales and produce the same on a half-yearly basis, during the pendency of the present suit.

73.    In the facts & circumstances of this case, the application for *interim* injunction is, accordingly, dismissed with costs of Rs. 2 lakhs. The said costs shall be paid within 4 weeks to the Defendant.

74.    ***I.A. 15628/2022*** is dismissed.

75.    ***I.A. 16508/2022*** seeks a *status quo* order against the Defendant. In view of the order passed in ***I.A. 15628/2022***, the said ***I.A. 16508/2022*** is also dismissed.

Validity unknown



Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06

*2022/DHC/004849*

76.    Anything said in the present order, shall not bind the final adjudication of the suit and the counter claim.

**PRATHIBA M. SINGH**
**JUDGE**

**NOVEMBER 14, 2022**/*DK/KT/Am*



Validity unknown

Digitally Signed
By:DEVANSHU JOSHI
Signing Date:15.11.2022
17:21:06