Exhibit 30

Federal Appeal Court of the 1st
Region
PJe - Electronic Judicial Process

09/25/2023

# Number: **1056475-07.2022.4.01.3400**

Class: **COMMON CIVIL PROCEDURE**

Judging Body: **1st Federal Civil Trial Court of the SJDF**

Last assignment: **08/29/2022**

Amount in Dispute: **BRL 1,000.00**

Topics: **Company Registration**

In camera proceeding? **NO**

Legal aid? **NO**

Request for a preliminary injunction or interlocutory relief? **YES**

| Parties | Attorney/Linked Third Party |
|---|---|
| **RAINBOW DEFENSIVOS AGRICOLAS LTDA (PLAINTIFF)** | **BRUNO DE SOUZA CARDOSO (ATTORNEY)** |
| **NATIONAL HEALTH SURVEILLANCE AGENCY - ANVISA (DEFENDANT)** | |
| **BRAZILIAN INSTITUTE OF THE ENVIRONMENT AND RENEWABLE NATURAL RESOURCES - IBAMA (DEFENDANT)** | |
| **FEDERAL UNION (DEFENDANT)** | |

| Documents | | | |
|---|---|---|---|
| **ID** | **Date of Signature** | **Document** | **Type** |
| 1825429149 | 09/25/2023 13:26 | Judgment Type A | Judgment Type A |



JUDICIARY

FEDERAL COURTS

**Federal District Judiciary Section**

1st Federal Civil Trial Court of the SJDF

---

JUDGMENT TYPE "A"
**CASE:** 1056475-07.2022.4.01.3400
**CLASS:** COMMON CIVIL PROCEDURE (7)
**PLAINTIFFS:** RAINBOW DEFENSIVOS AGRICOLAS LTDA
**PLAINTIFF REPRESENTATIVES:** BRUNO DE SOUZA CARDOSO - SP206583
**DEFENDANTS**: NATIONAL HEALTH SURVEILLANCE AGENCY - ANVISA and others

**JUDGMENT**

This is a lawsuit filed under the common procedure by **RAINBOW DEFENSIVES AGRÍCOLAS LTDA** against the **NATIONAL HEALTH SURVEILLANCE AGENCY – ANVISA**, the **BRAZILIAN INSTITUTE OF THE ENVIRONMENT AND RENEWABLE RESOURCES – IBAMA** and the **FEDERAL UNION**.

The preliminary request was granted, pursuant to decision ID No. 1320099277, to "*order ANVISA and IBAMA, within a maximum period of 30 (thirty) business days, from the summons of this decision via the System, to carry out the toxicological and environmental evaluations of the equivalent technical product CLORANTRANILIPROLE TÉCNICO RAINBOW object of administrative proceedings MAPA No. 21000.041549/2019-42 (ID 1293628255); IBAMA No. 02001.017562/2019-26 (ID 1293628260); and ANVISA No. 25351.356261/2019-05, file No. 0543732/19-9 (ID 1293628266 c/c ID 1293628268)*", against which IBAMA and ANVISA filed interlocutory appeals (ID 1356008285 and 1357873288).

ANVISA challenged the case as to ID 1356412787. It alleges non-fulfillment of the requirements necessary to grant urgent relief, that the 30-day period "*for the beginning of the analysis of the toxicological evaluation of the product is not shown to be reasonable, since there are other requests for toxicological evaluation requested prior to the request currently in question (...), the preliminary injunction exhausts the purpose of the process,*", that it was not


Electronically signed by: MARCELO GENTIL MONTEIRO - 09/25/2023 1:26:10 P.M.
https://pje1g.trf1.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=null
Document number: null

late, in view of the provisions of Art. 3, of Decree No. 10.833/2021, which amended Decree No. 4.074/2022, according to which federal agencies involved in pesticide registration will have a period of four years to complete analyses, "*the chronological order of the analysis queue must be respected, under penalty of injury to the interest of the other applicants, harming the principle of equality and even public interest*."

IBAMA, in its answer ID 1864744270, claims that it is impossible to grant urgent relief, given that the requirements are not met, that the measure is irreversible and that there is a risk of reverse damage, and that "*the obstacles to the immediate toxicological assessment of the aforementioned request lie: a) in the large number of cases in the queue to be analyzed; b) in the queue position in which the product in question is located; c) in the number of civil servants who perform this type of analysis; d) in the sensitivity of the subject being analyzed, which can cause serious harm to the health of the population, such that, obviously, there cannot be a superficial and urgent analysis. Added to all of this is the evident harm to the principle of equality and legality, if the request of the plaintiff party is placed in front of the others who are in front of it in the queue.*"

As for the merits, it claims that it is not late, in view of the provisions of Art. 3, of Decree 10.833/2022, that the "*evaluation of a pesticide, as is known, is a technical activity of high complexity, (...) The chronological order of the queue at IBAMA for the formulated products is in relation to the date on which the payment slip for the environmental assessment fee is cleared, and not in relation to the date on which the product is filed at Ibama.*" Finally, it emphasizes that MAPA did not consider the product *CLORANTRANILIPROLE* TÉCNICO RAINBOW, in this case, as urgent for domestic agriculture.

IBAMA also submitted a statement (ID 1390516801) in which it argues that it is impossible to comply with the decision that granted the request for urgent relief, in view of the decision handed down by Federal Appellate Judge Daniele Maranhão Costa in the case files of the Preliminary Provisional Remedy No. 1001110- 17.2021.4.01.0000, which granted a request for appellate interlocutory relief in an interlocutory appeal (AI No. 1030255-89.2019.4.01.0000) filed by the company FMC Química do Brasil Ltda in view of the judgment handed down in the Civil Common Procedure case No. 1020983-56.2019.4.01.3400, "*to order the sued authorities to refrain from fact finding, initiating technical analysis and/or granting any equivalent product registration claims that indicate FMC technical chlorantraniliprole as reference (registration no. 08809), until the analysis queue reaches the registration requests filed the day after the expiry of the protection of the regulatory data of chlorantraniliprole of the appellant party, protection which ended on June 2, 2020.*"

As to ID 1419483250, the Union submitted its challenge, in which it maintains that there is nothing "*to say about lateness or omissions of the Ministry of Agriculture, Livestock and Supply, because its conduct is in line with Article 3 of Decree No. 10.833/2021, which established a new deadline of up to 04 (four) years to complete the analysis of the registration process of the product, CLORANTRANILIPROLE TÉCNICO RAINBOW, owned by the plaintiff*".



The plaintiff reported, under ID 1440838356, non-compliance with the decision that brought forward the effects of the relief.

Based on the decision handed down in Preliminary Provisional Remedy No. 1001110-17.2021.4.01.0000, decision ID 1476369383 suspended, "ad cautelam, *the fulfillment of item III of the ruling of the decision of ID 1320099277 until further resolution by the Court",* revoking the judicial act with ID 1466910372, which granted the defendant the ten-day period for ANVISA and IBAMA to carry out "*the toxicological and environmental evaluations of the equivalent technical product CLORANTRANILIPROLE TÉCNICO RAINBOW, object of MAPA administrative proceedings no. 21000.041549/2019-42 (ID 1293628255); IBAMA No. 02001.017562/2019-26 (ID 1293628260); and ANVISA No. 25351.356261/2019-05, file No. 0543732/19-9 (ID 1293628266 combined with ID 1293628268)*".

Reply submitted under ID 1484304363.

Under IDs 1487408369 and 149669086, the plaintiff requests the reconsideration of decision no. 1479802373, on the grounds that several "*applications for registration of equivalent technical products filed after 03/06/20 have already been evaluated by the Defendants*" and that MAPA had started the analysis of its case.

Decision ID 1502222374 granted the petitioner's requests for reconsideration and, as a result, ordered the resumption of the validity and effectiveness of the urgent relief decision (ID 1320099277).

Under ID 1509897384, the Federal Union informs that it has adopted measures to comply with the decision that granted urgent relief.

Under IDs 151589495 and 1530294383, IBAMA and ANVISA allege the impossibility of starting their respective analyses, given that the case had not left MAPA, responsible for Phase I of the plaintiff's product analysis.

Under ID 1557922883, the summons of the Federal Union was ordered to inform the forecast for completion of Phase I, under the responsibility of MAPA and it was stated that the deadline set by the Court for ANVISA will only start when the administrative case is effectively forwarded to the Regulatory Agency, for the start of Phase II.

The Federal Union, under ID 1572331849, informed that MAPA has already completed its assessment and forwarded it to ANVISA.

The plaintiff alleged that ANVISA failed to comply with decision ID 1557922883 (ID 1689110991).



ANVISA, summoned pursuant to decision ID 1709282470, proved full compliance with the court order (ID 1720168981).

The company, FMC Química do Brasil Ltda, responsible for the respective product (*CLORANTRANILIPROLE* ), requested, under ID 1730972051, its joining of the suit as assistant to the defendants.

Under ID 1732515563, the suspension was ordered of decisions with ID 1320099277, ID 1502222374 and ID 1727779094.

The parties (order ID 1739221594) were summoned to express their opinion regarding the possible joinder of this action with number 1036128-55.2019.4.01.3400. ANVISA and IBAMA expressed their support for the existence of a joinder and the request for assistance made by FMC Química do Brasil Ltda, while the plaintiff was against the joinder and assistance.

IBAMA, under ID 1773703559, reported that, despite having completed the analysis of the claim of the plaintiff party, in view of the judicial decision ID 1732515563, suspended the result of the evaluation of the Environmental Hazard Potential (PPA) of the product under this action.

The plaintiff filed an interlocutory appeal (ID 1782778066) against decision ID 1732515563.

Under ID 1811981669, FMC attached information about the Equivalent Technical Products – PTEs analysis queue.

This is the report.

**I HEREBY DECIDE.**

I will initially assess the joinder and assistance request matters.

Case No. 1036128-55.2019.4.01.3400, in progress before the 17th Trial Court of this Judicial Section of the Federal District, was filed by FMC Química do Brasil Ltda - developer of the *chlorantraniliprole* molecule - for the purpose of having the date of 06/03/2020 recognized as the final limit of data protection of the technical chlorantraniliprole product (registration no. 08809) was judged admissible "*to declare as the limit* a quo *of the data protection period for the FMC technical chlorantraniliprole product (registration no. 08809), the date of 06/02/2010, the date of 02/06/2020 being considered as the limit* ad quem," and to have the defendants (IBAMA, ANVISA and the Federal Union) ordered to <u>abstain from "*granting equivalent product registration indicating as the reference FMC's technical chlorantraniliprole (registration no. 08809)* up to the expiration date of the indicated protection period</u>". (highlighting added).

Given that the plaintiff's application for registration was filed with the defendants


Electronically signed by: MARCELO GENTIL MONTEIRO - 09/25/2023 1:26:10 P.M.
https://pje1g.trf1.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=null
Document number: null

on 18/06/2019 (IDs 1293628255, 1293628260 and 1293628266), before 02/06/2020, the connection is characterized.

However, from the consultation of the PJe site, I have verified that case No. 1036128-55.2019.4.01.3400 was decided on 06/29/2021, having been referred to the TRF/1st Region, in an appeal, since 10/21/2021.

Art. 55, §1, of the Code of Civil Procedure states the following:

*Art. 55. 2 (two) or more actions are considered connected when the request or cause of action is common to them.*

*§ 1 Related suits will be combined for joint decision, unless one of them has already been decided on.* (highlighting added)

Thus, although the connection of this action with number 1036128-55.2019.4.01.3400 is characterized, it is not possible to join these cases.

With regard to the request for assistance submitted by FMC Química do Brasil Ltda, considering that it is the reference product used by the plaintiff, I understand that there is relevance in the joinder of this company as assistant to the defendants.

As for merits, the plaintiff is not right.

Art. 49 of Law No. 9.784/99, which governs the administrative process within the scope of the Executive Branch of the Union, has established a period of 30 (thirty) days, extendable for one time, so that the Administration can issue a decision in administrative processes.

The matter of registration of agricultural pesticides is governed by specific legislation, namely Law No. 7.802/1989[1] and its regulatory Decree No. 4.074/2002[2], in which specific powers are assigned to the Ministry of Agriculture, Livestock and Supply – MAPA, the Ministry of the Environment – MMA and the Ministry of Health – MS.

Despite the powers of MMA and MS set forth in Decree No. 4.074/2002, the responsibilities for evaluating agricultural pesticides were delegated, by virtue of Decree No. 6.099/2007 and No. 3.029/1999, respectively, to the Brazilian Institute of Environment of Renewable Natural Resources – IBAMA and the National Health Surveillance Agency – ANVISA.

Decree No. 4.074/2002 was recently amended by Decree No. 10.833/2021, which now provides that the Ministry of the Environment is responsible for "*granting registration, including RET, of pesticides, technical products and premixes and the like intended for use in water environments, in the protection of native forests and other ecosystems, in compliance with the guidelines and requirements of the Ministries of Agriculture, Livestock and Supply and Health*" (Art. 7, IV).



Electronically signed by: MARCELO GENTIL MONTEIRO - 09/25/2023 1:26:10 P.M.
https://pje1g.trf1.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=null
Document number: null

No. 1825429149 - Page 5

Also according to Decree No. 10.833/2021, the Ministry of Health, through ANVISA, is responsible for: "*defining the technical criteria for the toxicological classification and for the assessment of the health risk resulting from the use of pesticides, their components and the like; performing the toxicological classification of pesticides and the like; evaluating the health risk resulting from the use of pesticides and the like*" (Art. 6).

Art. 3, of Decree No. 10.833/2021, also established that "*the federal agencies involved in the registration of pesticides will have a period of four years, from the date of publication of this Decree, to analyze the pending cases for registration of technical products, premixes, pesticides and similar, through specific procedures to be established by the agricultural, health and environmental agencies*".

According to the initial complaint itself, "*The product should have been evaluated within 120 days from the date of its filing, but as of yet, after more than 710 days from the filings, the product has not yet been evaluated*" (p. 2 of the initial complaint).

Considering the provisions of Art. 3 of Decree No. 10.833/2021, cited above, lateness is not characterized, and the four-year period has not yet elapsed.

But even if the inapplicability of such a term is defended, I understand that there are not sufficient grounds for the acceptance of the claim.

It is certain that the Brazilian Constitution has enshrined the principles of efficiency, reasonableness and, by virtue of Constitutional Amendment No. 45/2004, which included item LXXVIII in Art. 5 of the Brazilian Constitution/88, the right to speedy processing and reasonable duration of the proceedings.

It is undeniable that any delay of the Administration causes losses to business operation by the Claimant, which is protected by the Federal Constitution of 1988 (art. 170, sole paragraph).

But the same Federal Constitution/1988 stipulates health as one of the social rights, being the right of all and the duty of the State (Arts. 6 and 196).

It also establishes that all have "*the right to the ecologically balanced environment, a common good for the people and essential to a healthy quality of life, imposing on the Public Authorities and the community the duty to defend and preserve it for present and future generations*" (Art. 225).

Thus, if there is a duty of the Administration to analyze and decide on the application submitted by the Plaintiff in a reasonable time, there are a number of other obligations imposed by the Federal Constitution/1988 itself regarding the promotion of health and a balanced environment.

And specifically with regard to the issue addressed herein, the Federal Constitution/1988 was clear in assigning to the public authorities the responsibility for "*controlling the production, marketing and use of techniques, methods and substances that*



*pose a risk to life, quality of life and the environment*" (Art. 225, §1, V).

In order to resolve the conflict, it is necessary to resort to the weighing technique, already used and recognized by the Federal Supreme Court[3].

Regarding the conflict between constitutional provisions and the weighing technique capable of resolution it, Claudio Pereira de Souza Neto and Daniel Sarmento teach the following:

> *"Constitutional provisions may conflict with each other. Although controversial in contemporary legal theory, this is the largely majority position in the doctrinal field and in case law, both in Brazil and in Comparative Law.*
>
> *In the legal field, weighing, also called balancing, can be defined (...) as a technique intended to resolve conflicts between valid rules applying to the case, seeking to promote, to the extent possible, an optimized satisfaction of the legal interests in conflict. (...) It is not always possible to reach a middle ground between the legal interests in dispute, in weighing. Sometimes, given the existing alternatives, the solution will have to prioritize one of the interests at stake, over the other. (...) The first step in weighing is to verify the existence of an actual conflict between constitutional provisions. (...) In other words, one should analyze whether or not the case under discussion is contained within the hypothesis of incidence of different constitutional provisions, which point to different solutions to the case. In some situations, it will be concluded that one of the constitutional provisions under discussion does not even apply* prima facie*, and there is no need for consideration. (...) It is certain that the hegemonic theory of weighing, formulated by Robert Alexy, and followed in Brazil by authors such as Virgílio Afonso da Silva and Jane Reis Gonçalves Pereira, supports that each of the constitutional provisions at stake should be interpreted as broadly as possible, resolving by weighing the conflicts that arise from it. (...) Yes, we maintain that conflicting provisions must be interpreted in a reasonable manner – not necessarily expansive or restrictive – considering all important elements of legal hermeneutics (text, history, system, purpose of the provision, underlying values, etc.). The actual weighing phase only begins if, in this interpretative phase, it is concluded that there is more than one constitutional provision at stake (...). If the case is of weighing, the main criterion to be employed for its implementation is the principle of proportionality with its three sub-principles (adequacy, need and proportionality in a strict sense (...). Weighing is a technique aimed at resolving tensions between principles, given that these can be conceived, according to Robert Alexy's famous definition, as 'optimization requirements', fulfilled to the extent of the factual and legal possibilities of each case. (...) However, there are extraordinary cases, not foreseen by the constituent, in which even the application of constitutional rules can be overruled by weighting. For example, in the judgment of Habeas Corpus No. 89,417, which occurred in 2006, the Federal Supreme Court overruled, based on weighing, the constitutional rule that establishes that the detention in flagrante delicto of a state deputy must be submitted to the scrutiny of the respective Legislative Assembly (art. 27, §1, c/c art. 53, §2, Federal Constitution) (...). The Court correctly understood that the very unique characteristics of the case justified the non-application of the rule in question, since the application of the rule would imply guarantee of impunity of the political agent, in violation of several constitutional principles, such as the Republic, morality and democracy. (...) setting parameters is extremely important for weighing, due to reducing the risks of error and judicial discretion, increasing the predictability of decisions in favor of legal security, and saving the time and energy of Legal operators in future cases. Such parameters should not be invented, according to the preferences of the interpreter, but inferred from the constitutional system. (...) Here, we*

*will briefly highlight three general parameters for weighing: a) constitutional rules have prima facie preference over principles. In general, the rules establish exceptions to the application of the principles, prevailing over them (Lex specialis criteria). Only in exceptional cases should the overruling of a constitutional rule by way of weighing be allowed. (...) b) There is a prima facie preference for provision that establish fundamental rights when they conflict with others that ensure different interests and legal assets. (...) c) Among fundamental rights, there is a prima facie preference for existential rights and freedoms, those linked to guaranteeing the prerequisites of democracy and essential living conditions, over those of a merely property-related or economic nature.[4]*

Firstly, the already-mentioned responsibility of the public authorities *to "control the production, marketing and use of techniques, methods and substances that pose a risk to life, quality of life and the environment"* (Art. 225, §1, V) may be considered a rule, thus having preferential application over principles such as efficiency, reasonable duration of processes and free exercise of economic activity.

In addition, considering the aforementioned parameters, I believe that the best solution for the case is the one that prioritizes the right to health and a balanced environment.

Although the right to free exercise of economic activity and the reasonable duration of processes are also fundamental rights, health and the balanced environment are related to essential living conditions, thus going beyond property-related limits.

For such reasons, it is not appropriate to interfere with the technical-scientific activities performed with regard to the toxicological analysis of agricultural pesticides, which should be considered as a whole, either for technical reasons or due to the number of similar cases positioned ahead.

Interfering in the order of technical analysis of toxicological assessment may lead to imbalance of administrative action, distorting the preference criteria, an approach capable of causing harm to public health, to the balanced environment and to the state's obligation to control the production, marketing and use of techniques, methods and substances that pose a risk to life, quality of life and the environment.



In light of the foregoing, I hereby ratify decision ID 1732515563 and **I judge the plaintiff's claims unfounded**.

**I hereby uphold** the joinder of FMC Química do Brasil Ltda in the suit as assistant. To be noted.

I hereby order the plaintiff party to pay the costs and attorneys' fees for loss, (i) those owed to the defendant's attorneys, *ex vi* of art. 85, *introductory* clause and §14, Code of Civil Procedure[5] , and Art. 22 et seq. of Law 8.906/94[6], (ii) which I set, by equitable assessment (since the amount in dispute is low), in the amount of BRL 6,000,00 (six thousand reais), in the proportion of one-third (1/3) to the attorneys of each defendant, whose *quantum debeatur* was set considering (a) § 2 combined with § 8 of Art. 85 of the Code of Civil Procedure, and (b) further, the degree of zeal of these professionals, the place of service delivery, the nature and importance of the cause, the work carried out by such attorneys/lawyers and the time required to carry out the procedural acts preceding this judgment; and (c) in order to enable future and possible increase, pursuant to §11 of the same conclusion[7].

In the event of filing of appeal and adhesion, it will be up to honorable Secretariat to summon the opposing party to submit the appellate brief, observing the provisions of Articles 1.009, § 2, and 1.010, § 2, of the Code of Civil Procedure (Law No. 13.105/2015). Subsequently, the cases is to be referred to the Honorable Federal Regional Court of the 1st Region, regardless of admissibility judgment, including with regard to the regularity of preparation, pursuant to Article 1.010, § 3, of the same legal statute.

To be summoned.

Brasilia/Federal District.

**MARCELO GENTIL MONTEIRO**

Deputy Federal Judge of the 1st Court - SJ/Federal

District, acting as regular judge

---

[1] *Sets forth provisions on research, experimentation, production, packaging and labeling, transportation, storage, marketing, commercial advertising, use, import, export, final destination of waste and packaging, registration, classification, control, inspection and supervision of pesticides, their components and the like, and provides other measures.*

[2] *Regulates Law No. 7.802, of July 11, 1989, which sets forth provisions on research, experimentation, production, packaging and labeling, transportation, storage, marketing, commercial advertising, use, import, export, final destination of waste and packaging, registration, classification, control, inspection and supervision of pesticides, their components and the like, and provides other measures.*



[3] *By way of example, the ruling of ADI 485, in which the criterion of weighing was used for the analysis of the conflict existing between FREEDOM OF ARTISTIC AND CULTURAL EXPRESSION, INFORMATION, REGARDLESS OF CENSURE OR PRIOR AUTHORIZATION (ART. 5, ITEMS IV, IX, XIV; 220, §§ 1 AND 2) AND THE INVIOLABILITY OF INTIMACY, PRIVATE LIFE, HONOR AND PUBLIC IMAGE (ART. 5, ITEM X).*

[4] *Constitutional law: theory, history, and methods of work, 1. Reprint, Belo Horizonte: Forum, 2013, p. 493, 511, 512, 517, 518, 524/526.*

[5] *"Art. 85. The sentence will order the defeated party to pay the winning party's attorney's fees.*

*(...)*

*§ 14. The fees constitute the right of the attorney and are for support, with the same privileges as receivables arising from labor legislation, and offsetting in the event of partial loss is prohibited."*

[6] *Art. 22 of the Brazilian Bar Association Charter sets forth: "The provision of professional service guarantees the right to the agreed fees, those established by judicial arbitration and those of the losing party" (emphasis added) and in its art. 23 – "the fees included in the sentence, resulting from arbitration or the losing party, belong to the attorney, having this autonomous right to enforce the judgment in this part, being able request that the the writ of execution, when necessary, be issued in his/her favor".*

[7] *"Art. 85. The sentence will order the defeated party to pay the winning party's attorney's fees.*

*(...)*

*§ 11. The court, in judging appeal, will increase the fees set previously taking into account the additional work carried out in appeals, observing, as the case may be, the provisions of §§ 2 to 6. The court is prohibited, in the general calculation of the setting of fees due to the winner's attorney, from exceeding the respective limits established in §§ 2 and 3 for the cognizance phase."*



Justiça Federal da 1ª Região
PJe - Processo Judicial Eletrônico

25/09/2023

Número: **1056475-07.2022.4.01.3400**

Classe: **PROCEDIMENTO COMUM CÍVEL**
 Órgão julgador: **1ª Vara Federal Cível da SJDF**
 Última distribuição : **29/08/2022**
 Valor da causa: **R$ 1.000,00**
 Assuntos: **Registro de Empresa**
 Segredo de justiça? **NÃO**
 Justiça gratuita? **NÃO**
 Pedido de liminar ou antecipação de tutela? **SIM**

| Partes | Procurador/Terceiro vinculado |
|---|---|
| **RAINBOW DEFENSIVOS AGRICOLAS LTDA (AUTOR)** | **BRUNO DE SOUZA CARDOSO (ADVOGADO)** |
| **AGENCIA NACIONAL DE VIGILANCIA SANITARIA - ANVISA (REU)** | |
| **INSTITUTO BRASILEIRO DO MEIO AMBIENTE E DOS RECURSOS NATURAIS RENOVAVEIS - IBAMA (REU)** | |
| **UNIÃO FEDERAL (REU)** | |

| Documentos | | | |
|---|---|---|---|
| Id. | Data da Assinatura | Documento | Tipo |
| 18254 29149 | 25/09/2023 13:26 | Sentença Tipo A | Sentença Tipo A |



PODER JUDICIÁRIO

JUSTIÇA FEDERAL

**Seção Judiciária do Distrito Federal**

1ª Vara Federal Cível da SJDF

---

SENTENÇA TIPO "A"
**PROCESSO**: 1056475-07.2022.4.01.3400
**CLASSE**: PROCEDIMENTO COMUM CÍVEL (7)
**POLO ATIVO**: RAINBOW DEFENSIVOS AGRICOLAS LTDA
**REPRESENTANTES POLO ATIVO**: BRUNO DE SOUZA CARDOSO - SP206583
**POLO PASSIVO**:AGENCIA NACIONAL DE VIGILANCIA SANITARIA - ANVISA e outros

**SENTENÇA**

Trata-se de ação ajuizada sob o procedimento comum por **RAINBOW DEFENSIVOS AGRÍCOLAS LTDA** em desfavor da **AGÊNCIA NACIONAL DE VIGILÂNCIA SANITÁRIA – ANVISA**, do **INSTITUTO BRASILEIRO DO MEIO AMBIENTE E DOS RECURSOS RENOVÁVEIS – IBAMA** e da **UNIÃO**.

O pedido liminar foi deferido, nos termos da decisão Id. Num. 1320099277, para "*determinar à ANVISA e ao IBAMA que, no prazo máximo de 30 (trinta) dias úteis, a contar da intimação desta decisão via Sistema, realizem as avaliações toxicológica e ambiental do produto técnico equivalente CLORANTRANILIPROLE TÉCNICO RAINBOW objeto dos processos administrativos MAPA nº 21000.041549/2019-42 (id. 1293628255); IBAMA nº 02001.017562/2019-26 (id. 1293628260); e ANVISA nº 25351.356261/2019-05, expediente nº 0543732/19-9 (id. 1293628266 c/c id. 1293628268)*", em face da qual o IBAMA e a ANVISA interpuseram agravos de instrumento (id. 1356008285 e 1357873288).

A ANVISA contestou o feito à id. 1356412787. Alega a inexistência dos requisitos necessários à concessão da tutela de urgência, que o prazo de 30 dias "*para início da análise da avaliação toxicológica do produto não se mostra razoável, visto que há outros pedidos de avaliação toxicológica requerido antes do pedido ora*


Assinado eletronicamente por: MARCELO GENTIL MONTEIRO - 25/09/2023 13:26:10
https://pje1g.trf1.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=null
Número do documento: null

*em tela (...),a tutela liminar esgota o objeto do processo,*", que não incidiu em mora, tendo em vista o disposto no art. 3º, do Decreto nº 10.833/2021, que alterou o Decreto nº 4.074/2022, segundo o qual os órgãos federais envolvidos no registro de agrotóxicos disporão do prazo de quatro anos para a conclusão das análises, devendo "*ser respeitada a ordem cronológica da fila de análise, sob pena de lesão ao interesse dos demais requerentes, ferindo o princípio da isonomia e até mesmo o interesse público*".

O IBAMA, em sua contestação id. 1864744270, sustenta a impossibilidade da concessão da tutela de urgência, diante do não preenchimento dos requisitos, da irreversibilidade da medida e do perigo de dano inverso, bem como que "*os óbices à imediata avaliação toxicológica do referido pleito estão: a) na grande quantidade de processos na fila para serem analisados; b) na posição da fila em que o produto em tela se encontra; c) na quantidade de servidores que realizam esse tipo de análise; d) na sensibilidade do objeto que está sendo analisado, que pode trazer graves prejuízos à saúde da população, então, por óbvio, não pode haver uma análise superficial e urgente. Some-se tudo isso à evidente lesão ao princípio da isonomia e da legalidade, caso o pedido da parte autora seja colocado na frente dos demais que estão à sua frente na fila*".

Quanto ao mérito, alega não ser o caso de mora, diante do disposto no art. 3º, do Decreto 10.833/2022, que a "*avaliação de um produto agrotóxico, como se sabe, é uma atividade técnica de elevada complexidade, (...) A ordem cronológica da fila no IBAMA para os produtos formulados se dá em relação à data em que o boleto da taxa de avaliação ambiental é compensado, e não em relação à data em que o produto é protocolado no Ibama*". Salienta, por fim, que o MAPA não considerou o produto *CLORANTRANILIPROLE* TÉCNICO RAINBOW, objeto dos autos, como urgente à agricultura nacional.

O IBAMA apresenta, ainda, manifestação (id. 1390516801) em que argumenta ser impossível cumprir a decisão que deferiu o pedido de tutela de urgência, diante da decisão prolatada pela Desembargadora Federal Daniele Maranhão Costa nos autos da Tutela Cautelar Antecedente nº 1001110-17.2021.4.01.0000, que deferiu pedido de antecipação de tutela recursal em agravo de instrumento (AI nº 1030255-89.2019.4.01.0000) interposto pela empresa FMC Química do Brasil Ltda em face da sentença prolatada nos autos do Procedimento Comum Cível nº 1020983-56.2019.4.01.3400, "*para determinar que as autoridades requeridas se abstenham de instruir, iniciar análise técnica e/ou deferir quaisquer pleitos de registro de produto equivalente que indiquem como referência o chlorantraniliprole técnico da FMC (registro nº 08809), até que a fila de análise chegue aos pleitos de registro protocolados no dia seguinte à expiração da proteção dos dados regulatórios do chlorantraniliprole da parte recorrente, proteção que se encerrou em 02 de junho de 2020*".

À id. 1419483250, a União, apresenta sua contestação, em que sustenta que não há "*que se falar em mora ou omissão do Ministério da Agricultura, Pecuária e Abastecimento, porquanto sua conduta encontra-se em consonância com o artigo 3º*


Assinado eletronicamente por: MARCELO GENTIL MONTEIRO - 25/09/2023 13:26:10
https://pje1g.trf1.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=null
Número do documento: null

*do Decreto nº 10.833/2021, que estabeleceu novo prazo de até 04 (quatro) anos para concluir a análise do processo de registro do produto CLORANTRANILIPROLE TÉCNICO RAINBOW, de propriedade da autora*".

A autora noticiou, à id. 1440838356, o descumprimento da decisão que antecipou os efeitos da tutela.

Com fundamento na decisão proferida na Tutela Cautelar Antecedente nº 1001110-17.2021.4.01.0000, a decisão id. 1476369383 suspendeu, "ad cautelam, *o cumprimento do item III da parte dispositiva da decisão de id. 1320099277 até ulterior deliberação do Juízo*", revogando o ato judicial de id. 1466910372, que concedeu à parte ré o prazo de dez dias para que a ANVISA e o IBAMA realizassem "*as avaliações toxicológica e ambiental do produto técnico equivalente CLORANTRANILIPROLE TÉCNICO RAINBOW, objeto dos processos administrativos MAPA nº 21000.041549/2019-42 (id. 1293628255); IBAMA nº 02001.017562/2019-26 (id. 1293628260); e ANVISA nº 25351.356261/2019-05, expediente nº 0543732/19-9 (id. 1293628266 c/c id. 1293628268)*".

Réplica apresentada à id. 1484304363.

Às ids. 1487408369 e 149669086, a autora pede a reconsideração da decisão nº 1479802373, sob o fundamento de que diversos "*pleitos de registro de produtos técnicos equivalentes protocolados depois de 03/06/20 já foram avaliados pelos Réus*" e de que o MAPA iniciara a análise de seu processo.

A decisão id. 1502222374 deferiu os pedidos de reconsideração da requerente e, em consequência, determinou a retomada da validade e eficácia da decisão de tutela de urgência (id. 1320099277).

À id. 1509897384, a União informa que adotou as providências para o cumprimento da decisão que deferiu a tutela de urgência.

Às ids. 151589495 e 1530294383, o IBAMA e a ANVISA alegam a impossibilidade de iniciar as suas respectivas análises, tendo em vista que o processo não havia saído do MAPA, responsável pela Fase I da análise do produto da autora.

À id. 1557922883, foi determinada a intimação da União para informar a previsão de conclusão da Fase I, de responsabilidade do MAPA e consignado que o prazo fixado pelo Juízo para a ANVISA apenas se iniciará quando o processo administrativo for efetivamente encaminhado àquela Agência Reguladora, para início da Fase II.

A União, à id. 1572331849, informa que MAPA já encerrou a sua avaliação e encaminhou à ANVISA.

A autora alegou que a ANVISA descumpriu a decisão id. 1557922883 (id. 1689110991).



A ANVISA, intimada nos termos da decisão id. 1709282470, comprovou o integral cumprimento da determinação judicial (id. 1720168981).

A empresa FMC Química do Brasil Ltda, responsável pelo produto referência (*CLORANTRANILIPROLE*), requer, à id. 1730972051, seu ingresso no feito na qualidade de assistente dos réus.

À id. 1732515563, foi determinada a suspensão das decisões de id. 1320099277, id. 1502222374 e id. 1727779094.

Intimadas (despacho id. 1739221594) as partes para manifestação acerca da possível conexão desta ação com a de número 1036128-55.2019.4.01.3400, ANVISA e IBAMA manifestaram-se favoravelmente à existência de conexão e ao pedido de assistência formulado pela FMC Química do Brasil Ltda, enquanto a autora posicionou-se contrariamente à conexão e à assistência.

O IBAMA, à id. 1773703559, noticia que, apesar de haver concluído a análise do requerimento da parte autora, em face da decisão judicial Id 1732515563, suspendeu o resultado da avaliação do Potencial de Periculosidade Ambiental (PPA) do produto objeto desta ação.

A autora interpôs agravo de instrumento (id. 1782778066) em face da decisão id. 1732515563.

À id. 1811981669, a FMC junta informações acerca da fila de análises de Produtos Técnicos Equivalentes – PTEs.

É o relatório.

**DECIDO.**

Aprecio, inicialmente, as questões relativas à conexão e ao pedido de assistência.

O processo nº 1036128-55.2019.4.01.3400, em trâmite perante a 17ª Vara desta Seção Judiciária do Distrito Federal, foi ajuizado pela empresa FMC Química do Brasil Ltda - desenvolvedora da molécula *chlorantraniliprole* – com o objetivo de ver reconhecido, como termo final de proteção de dados do produto chlorantraniliprole técnico (registro nº 08809), o dia 03/06/2020, foi julgado procedente "*para declarar como termo* a quo *do prazo de proteção dos dados do produto* chlorantraniliprole *técnico da FMC (registro nº 08809) a data de 02/06/2010, sendo considerado o termo* ad quem*, o dia 02/06/2020*" e de ver os réus (IBAMA, ANVISA e União) condenados a se abster "*de conceder registro de produto equivalente que indicam como referência o chlorantraniliprole técnico da FMC (registro nº 08809) até a data de expiração do prazo de proteção indicada*". (grifo nosso).

Tendo em vista que o pedido de registro da autora foi protocolizado, junto



aos réus, no dia 18/06/2019 (ids. 1293628255, 1293628260 e 1293628266), antes do dia 02/06/2020, está caracterizada a conexão.

Todavia, verifico, da consulta ao sítio do PJe, que o processo nº 1036128-55.2019.4.01.3400 foi sentenciado no dia 29/06/2021, tendo sido remetido para o TRF/1ª Região, em sede de apelação, desde 21/10/2021.

Assim dispõe o art. 55, §1º, do CPC:

*Art. 55. Reputam-se conexas 2 (duas) ou mais ações quando lhes for comum o pedido ou a causa de pedir.*

*§ 1º Os processos de ações conexas serão reunidos para decisão conjunta, salvo se um deles já houver sido sentenciado.*(grifo nosso)

Dessa forma, em que pese estar caracterizada a conexão desta ação com a de número 1036128-55.2019.4.01.3400, não é possível a reunião desses processos.

No que diz respeito ao pedido de assistência formulado pela FMC Química do Brasil Ltda, tendo em vista que é dela o produto referência utilizado pela autora, entendo haver pertinência no ingresso dessa empresa na condição de assistente dos réus.

Quanto ao mérito, não assiste razão à autora.

O art. 49 da Lei nº 9.784/99, que rege o processo administrativo no âmbito do Poder Executivo da União, estatuiu o prazo de 30 (trinta) dias, prorrogáveis por uma vez, para que a Administração prolate decisão nos processos administrativos.

A matéria de registro de defensivos agrícolas é regida por legislação específica, a saber, a Lei nº 7.802/1989[1]  e seu Decreto regulamentador nº 4.074/2002[2], em que se atribui competências específicas ao Ministério da Agricultura, Pecuária e Abastecimento – MAPA, ao Ministério do Meio Ambiente – MMA e ao Ministério da Saúde – MS.

A despeito das competências do MMA e do MS dispostas no Decreto nº 4.074/2002, as responsabilidades de avaliação dos defensivos agrícolas foram delegadas, por força dos Decretos nº 6.099/2007 e nº 3.029/1995, respectivamente, ao Instituto Brasileiro de Meio Ambiente dos Recursos Naturais Renováveis – IBAMA e à Agência Nacional de Vigilância Sanitária – ANVISA.

O Decreto n° 4.074/2002 foi recentemente alterado pelo Decreto n° 10.833/2021, que passou a prever caber ao Ministério do Meio Ambiente "*conceder o registro, inclusive o RET, de agrotóxicos, produtos técnicos e pré-misturas e afins destinados ao uso em ambientes hídricos, na proteção de florestas nativas e de outros ecossistemas, atendidas as diretrizes e exigências dos Ministérios da Agricultura,*


Assinado eletronicamente por: MARCELO GENTIL MONTEIRO - 25/09/2023 13:26:10
https://pje1g.trf1.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=null
Número do documento: null

*Pecuária e Abastecimento e da Saúde*" (art. 7°, IV).

Ainda de acordo com o Decreto n° 10.833/2021, compete ao Ministério da Saúde, por meio da ANVISA: "*definir os critérios técnicos para a classificação toxicológica e para a avaliação do risco à saúde decorrente do uso de agrotóxicos, seus componentes e afins; realizar a classificação toxicológica de agrotóxicos e afins; avaliar o risco à saúde decorrente do uso de agrotóxicos e afins*" (art. 6°).

O art. 3°, do Decreto n° 10.833/2021, estabeleceu, ainda, que "*os órgãos federais envolvidos no registro de agrotóxicos disporão do prazo de quatro anos, contado da data de publicação deste Decreto, para analisar os processos pendentes de registro de produtos técnicos, pré-misturas, agrotóxicos e afins, mediante procedimentos específicos a serem estabelecidos pelos órgãos de agricultura, de saúde e de meio ambiente*".

Segundo a própria inicial, "*O produto deveria ter sido avaliado em até 120 dias da data do seu protocolo, mas até hoje, passados mais de 710 dias dos protocolos, o produto ainda inda não foi avaliado*" (p. 2 da inicial).

Considerando o disposto no art. 3°, do Decreto n° 10.833/2021, acima citado, não está caracterizada a mora, não tendo ainda transcorrido o prazo de quatro anos.

Mas ainda que se defenda a inaplicabilidade de tal prazo, entendo que não há fundamento suficiente para o acolhimento da pretensão.

É certo que a Constituição da República consagrou os princípios da eficiência, da razoabilidade e, em virtude da Emenda Constitucional n° 45/2004, que incluiu no art. 5º da CF/88 o inciso LXXVIII, o direito à célere tramitação e à razoável duração dos processos.

É inegável que eventual demora da Administração acarreta prejuízos ao exercício da atividade econômica pela Requerente, que é protegida pela Constituição Federal de 1988 (art. 170, parágrafo único).

Mas a mesma CF/88 dispõe ser a saúde um dos direitos sociais, sendo direito de todos e dever do Estado (arts. 6° e 196).

Prevê, ainda, terem todos "*direito ao meio ambiente ecologicamente equilibrado, bem de uso comum do povo e essencial à sadia qualidade de vida, impondo-se ao Poder Público e à coletividade o dever de defendê-lo e preservá- lo para as presentes e futuras gerações*" (art. 225).

Assim, se há dever da Administração em analisar e decidir o requerimento apresentado pelo Autor em tempo razoável, há uma série de outras obrigações impostas pela própria CF/88 quanto à promoção da saúde e do meio ambiente equilibrado.



E especificamente quanto à questão aqui tratada, a CF/88 foi expressa ao incumbir ao poder público *"controlar a produção, a comercialização e o emprego de técnicas, métodos e substâncias que comportem risco para a vida, a qualidade de vida e o meio ambiente"* (art. 225, §1°, V).

Para a solução do conflito, faz-se necessário recorrer à técnica da ponderação, já utilizada e reconhecida pelo STF[3].

Sobre o conflito entre normas constitucionais e a técnica da ponderação com apta à sua resolução, lecionam Claudio Pereira de Souza Neto e Daniel Sarmento:

> *"As normas constitucionais podem colidir entre si. Embora polêmica na teoria jurídica contemporânea, essa é a posição amplamente majoritária no campo doutrinário e na jurisprudência, tanto no Brasil como no Direito Comparado.*
>
> *No campo jurídico, a ponderação, também chamada de sopesamento, pode ser definida (...) como técnica destinada a resolver conflitos entre normas válidas e incidentes sobre um caso, que busca promover, na medida do possível, uma realização otimizada dos bens jurídicos em confronto. (...) Nem sempre, na ponderação, se logra alcançar um meio-termo entre os bens jurídicos em disputa. Algumas vezes, diante das alternativas existentes, a solução terá que priorizar um dos interesses em jogo, em detrimento do outro. (...) O primeiro passo na ponderação é a verificação da existência de efetivo conflito entre normas constitucionais. (...) Em outras palavras, deve-se analisar se o caso em discussão está ou não contido no interior da hipótese de incidência de normas constitucionais distintas, que apontem soluções diferentes para o caso. Em algumas situações, chegar-se-á à conclusão de que uma das normas constitucionais em debate não incide sequer prima facie não havendo qualquer tipo de necessidade de ponderação. (...) É certo que a teoria hegemônica da ponderação, formulada por Robert Alexy, e seguida no Brasil por autores como Virgílio Afonso da Silva e Jane Reis Gonçalves Pereira, sustenta que se deve interpretar da forma mais ampla possível cada uma das normas constitucionais em jogo, resolvendo por meio da ponderação os conflitos que surjam daí. (...) Sustentamos, sim, que as normas em conflito devem ser interpretadas de maneira razoável – não necessariamente ampliativa ou restritiva – considerando-se todos os elementos importantes da hermenêutica jurídica (texto, história, sistema, finalidade da norma, valores subjacentes, etc). Só se passa à fase da ponderação propriamente dita se, nessa fase interpretativa, chegar-se à conclusão de que existe mais de uma norma constitucional em jogo (...). Se o caso for de ponderação, o principal critério a ser empregado para a sua realização é o princípio da proporcionalidade com seus três subprincípios (adequação, necessidade e proporcionalidade em sentido estrito (...). A ponderação é uma técnica vocacionada para a resolução de tensões entre princípios, haja vista que estes podem ser concebidos, de acordo com a célebre definição de Robert Alexy, como 'mandados de otimização', cumpridos na medida das possibilidades fáticas e jurídicas de cada caso. (...) Porém, há hipóteses extraordinárias, não previstas pelo constituinte, em que mesmo a aplicação das regras constitucionais pode ser afastada por ponderação. Por exemplo, no julgamento do Habeas Corpus n° 89.417, ocorrido em 2006, o STF afastou, por ponderação, a regra constitucional que determina que a prisão em flagrante de um deputado estadual deve ser submetida ao crivo da respectiva Assembleia Legislativa (art. 27, §1°, c/c art. 53,*



*§2°, CF) (...). A Corte entendeu, corretamente, que as características singularíssimas do caso justificavam a não aplicação da regra em questão, uma vez que a incidência da norma implicaria em garantia da impunidade do agente político, em afronta a diversos princípios constitucionais, como a República, a moralidade e a democracia. (...) a fixação de parâmetros é extremamente importante para a ponderação, por reduzir os riscos de erro e arbítrio judicial, aumentar a previsibilidade das decisões em favor da segurança jurídica, e poupar tempo e energia dos operadores do Direito em casos futuros. Tais parâmetros não devem ser inventados, ao sabor das preferências do intérprete, mas inferidos do sistema constitucional. (...) Aqui, destacaremos sinteticamente três parâmetros gerais para a ponderação: a) as regras constitucionais têm preferência prima facie sobre os princípios. Em geral, as regras instituem exceções à aplicação dos princípios, prevalecendo sobre eles (critério* Lex specialis*). Só em hipóteses excepcionais se deve admitir o afastamento de uma regra constitucional pela via da ponderação. (...) b) Há uma preferência* prima facie *das normas que instituem direitos fundamentais quando colidem com outras que assegurem interesses e bens jurídicos distintos. (...) c) Dentre os direitos fundamentais, há uma preferência* prima facie *dos direitos e liberdades existenciais, dos ligados à garantia dos pressupostos da democracia e das condições essenciais de vida sobre aqueles de conteúdo meramente patrimonial ou econômico.[4]*

Em primeiro lugar, a já mencionada incumbência do poder público de " *controlar a produção, a comercialização e o emprego de técnicas, métodos e substâncias que comportem risco para a vida, a qualidade de vida e o meio ambiente*" (art. 225, §1°, V) pode ser considerada uma regra, tendo, portanto, aplicação preferencial sobre princípios como da eficiência, razoável duração dos processos e da livre exercício da atividade econômica.

Além disso, considerando os parâmetros acima mencionados, tenho que a melhor solução para o caso é a que privilegia o direito à saúde e ao meio ambiente equilibrado.

Embora o direito ao livre exercício da atividade econômica e à razoável duração dos processos também sejam direitos fundamentais, a saúde e o meio ambiente equilibrado estão relacionados às condições essenciais de vida, ultrapassando, pois, os limites patrimoniais.

Por tais motivos, não se mostra adequado interferir nas atividades técnico-científicas desempenhadas quanto à análise toxicológica de defensivos agrícolas, que devem ser consideradas como um todo, seja por motivos técnicos, seja pela quantidade de processos semelhantes posicionados precedentemente.

Interferir na ordem de análise técnica de avaliação toxicológica pode acarretar em desequilíbrio da atuação administrativa, desvirtuando os critérios de preferência, atitude apta a acarretar prejuízos à saúde pública, ao meio ambiente equilibrado e à obrigação estatal de controle da produção, a comercialização e o emprego de técnicas, métodos e substâncias que comportem risco para a vida, a qualidade de vida e o meio ambiente.


Assinado eletronicamente por: MARCELO GENTIL MONTEIRO - 25/09/2023 13:26:10
https://pje1g.trf1.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=null
Número do documento: null

Ante o exposto, ratifico a decisão id. 1732515563 e **julgo improcedentes** os pedidos autorais.

**Defiro** o ingresso da FMC Química do Brasil Ltda no feito na qualidade de assistente. Anote-se.

Condeno a parte autora ao pagamento das custas e dos honorários advocatícios de sucumbência, (i) esses devidos aos advogados da parte ré, *ex vi* do art. 85, *caput* e §14, CPC[5] , e art. 22 e seguintes da Lei 8.906/94[6], (ii) os quais fixo, por apreciação equitativa (já que o valor da causa é baixo), no montante de R$ 6.000,00 (seis mil reais), na proporção de 1/3 (um terço) para os patronos de cada réu, cujo *quantum debeatur* foi fixado considerando-se (a) o § 2º c/c § 8º do art. 85 do CPC, e (b) ainda, o grau de zelo desses profissionais, o lugar de prestação do serviço, a natureza e importância da causa, o trabalho realizado por tais procuradores/advogados e o tempo exigido para a prática dos atos processuais que antecederam a presente sentença; e (c) de modo a possibilitar sua futura e eventual majoração, nos termos do §11 do mesmo dispositivo[7].

No caso de interposição de recurso de apelação e adesivo, caberá à i. Secretaria intimar a parte contrária para contrarrazões, observado o disposto nos artigos 1.009, § 2º, e 1.010, § 2º, do Código de Processo Civil (Lei nº 13.105/2015). Em seguida, remetam-se os autos ao e. Tribunal Regional Federal da 1ª Região, independentemente de juízo de admissibilidade, inclusive no que se refere à regularidade do preparo, nos termos do artigo 1.010, § 3º, do mesmo diploma legal.

Intimem-se.

Brasília/DF.

### MARCELO GENTIL MONTEIRO

Juiz Federal Substituto da 1ª Vara - SJ/DF,

no exercício da titularidade

---

[1] *Dispõe sobre a pesquisa, a experimentação, a produção, a embalagem e rotulagem, o transporte, o armazenamento, a comercialização, a propaganda comercial, a utilização, a importação, a exportação, o destino final dos resíduos e embalagens, o registro, a classificação, o controle, a inspeção e a fiscalização de agrotóxicos, seus componentes e afins, e dá outras providências.*

[2] *Regulamenta a Lei no 7.802, de 11 de julho de 1989, que dispõe sobre a pesquisa, a experimentação, a produção, a embalagem e rotulagem, o transporte, o armazenamento, a comercialização, a propaganda comercial, a utilização, a importação, a exportação, o destino final dos resíduos e embalagens, o registro, a classificação, o controle, a inspeção e a fiscalização de agrotóxicos, seus componentes e afins, e dá outras providências.*



[3]   A título de exemplo, o julgamento da ADI 485, em que se utilizou do critério da ponderação para a análise do conflito existente entre a LIBERDADE DE EXPRESSÃO, DE INFORMAÇÃO, ARTÍSTICA E CULTURAL, INDEPENDENTE DE CENSURA OU AUTORIZAÇÃO PRÉVIA (ART. 5º INCS. IV, IX, XIV; 220, §§ 1º E 2º) E a INVIOLABILIDADE DA INTIMIDADE, VIDA PRIVADA, HONRA E IMAGEM DAS PESSOAS (ART. 5º, INC. X).

[4] Direito constitucional: teoria, história e métodos de trabalho, 1. Reimpressão, Belo Horizonte: Fórum, 2013, p. 493, 511, 512, 517, 518, 524/526.

[5] "*Art. 85. A sentença condenará o vencido a pagar honorários ao advogado do vencedor.*

*(...)*

*§ 14. Os honorários constituem direito do advogado e têm natureza alimentar, com os mesmos privilégios dos créditos oriundos da legislação do trabalho, sendo vedada a compensação em caso de sucumbência parcial.*"

[6] Dispõe o art. 22 do Estatuto da OAB: "*A prestação de serviço profissional assegura aos inscritos na OAB o direito aos honorários convencionados, aos fixados por arbitramento judicial e aos de sucumbência*" (grifou-se) e em seu art. 23 – "*os honorários incluídos na condenação, por arbitramento ou sucumbência, pertencem ao advogado, tendo este direito autônomo para executar a sentença nesta parte, podendo requerer que o precatório, quando necessário, seja expedido em seu favor*".

[7] "*Art. 85. A sentença condenará o vencido a pagar honorários ao advogado do vencedor.*

*(...)*

*§ 11. O tribunal, ao julgar recurso, majorará os honorários fixados anteriormente levando em conta o trabalho adicional realizado em grau recursal, observando, conforme o caso, o disposto nos §§ 2º a 6º, sendo vedado ao tribunal, no cômputo geral da fixação de honorários devidos ao advogado do vencedor, ultrapassar os respectivos limites estabelecidos nos §§ 2ºe 3º para a fase de conhecimento.*"





STATE OF NEW YORK
CITY OF NEW YORK
COUNTY OF NEW YORK

CERTIFICATION

I, Jacqueline Yorke, as an employee of TransPerfect Translations, Inc., do hereby certify, to the best of my knowledge and belief, that the provided Chinese into English translation(s) of the source document(s) listed below are true accurate:

- September 25, 2023 Rainbow Decision

TransPerfect Translations, Inc., a translation organization with over 90 offices on six continents, is a leader in professional translations. TransPerfect Translations, Inc. has over twenty years experience translating into the above language pair, its work being accepted by business organizations, governmental authorities and courts throughout the United States and internationally.

TransPerfect Translations, Inc. affirms that the provided translation was produced in according to our ISO 9001:2015 and ISO 17100:2015 certified quality management system, and also that the agents responsible for said translation(s) are qualified to translate and review documents for the above language pair, and are not a relation to any of the parties named in the source document(s).

_____
Jacqueline Yorke, Project Manager

Sworn to before me this
Friday, September 06, 2024

_____
Signature, Notary Public

WENDY POON
Notary Public - State of New York
No. 01PO0000184
Qualified in Queens County
My Commission Expires February 02, 20 27

_____
Stamp, Notary Public