Exhibit 31 (excerpted)

**UNITED STATES**

**SECURITIES AND EXCHANGE COMMISSION**

Washington, DC 20549

# SCHEDULE 14A

PROXY STATEMENT PURSUANT TO SECTION 14(a)
OF THE SECURITIES EXCHANGE ACT OF 1934
(Amendment No.     )

☑ Filed by the Registrant          ☐ Filed by a Party other than the Registrant

| Check the appropriate box: |
| --- |
| ☐ Preliminary Proxy Statement |
| ☐ **Confidential, for Use of the Commission Only (as permitted by Rule 14A-6(E)(2))** |
| ☑ Definitive Proxy Statement |
| ☐ Definitive Additional Materials |
| ☐ Soliciting Material under §240.14a-12 |

# FMC CORPORATION



*(Name of Registrant as Specified in Its Charter)*

*(Name of Person(s) Filing Proxy Statement, if other than the Registrant)*

| Payment of Filing Fee (Check all boxes that apply): |
| --- |
| ☑ **No fee required.** |
| ☐ **Fee paid previously with preliminary materials.** |
| ☐ **Fee computed on table in exhibit required by Item 25(b) per Exchange Act Rules 14a-6(i)(1) and 0-11.** |

Back to Contents

## Code of Ethics and Business Conduct Policy

The Company has a Code of Ethics and Business Conduct that applies to all directors, officers (including its Chief Executive Officer, Chief Financial Officer and Controller) and employees. It is posted on the Investor Relations page of the Company's website at www.fmc.com, under "Governance — Corporate Policies". The Company intends to post any amendments to, or waivers from, the Code of Ethics and Business Conduct required to be disclosed by either SEC or NYSE regulations on the Governance — Corporate Policies section of the Investor Relations page of the Company's website.

## Compensation and Organization Committee Interlocks and Insider Participation

During the last fiscal year, Messrs. Greer, Kempthorne, Norris and Ms. Johnson served as members of the Compensation Committee. All members of the Compensation Committee during 2021 were non-employee directors, each of whom was determined by the Board to be independent on the basis described in the above section entitled "Committees and Independence of Directors". None of the current or former members listed above has been an officer or employee of the Company, and no executive officer of the Company has served on any board of directors or compensation committee of any other company for which any of the Company's directors served as an executive officer at any time during 2021.

## Related Party Transactions Policy

The Board of Directors Statement of Policy with respect to Related Party Transactions sets forth the Company's position and procedures with respect to review, approval or ratification of related party transactions, including the types of transactions addressed by the Policy, and the corporate function responsible for applying the Policy and related procedures.

Under the Policy, "related parties" are defined to include executive officers and directors of the Company and their immediate family members, a stockholder owning in excess of 5% of the Company (or its controlled affiliates), and entities in which any of the foregoing have a substantial ownership interest or control. With respect to any transaction where a related party receives a benefit in excess of a de minimis amount of $5,000 (when aggregated with all similar transactions) the Policy requires that the transaction be pre-approved (or, if less than $120,000, ratified) by the Audit Committee and disclosed where required by SEC rules. The Policy also provides that any related party who is presented with a "corporate opportunity" within the Company's line of business, must first offer that opportunity to the Company.

Notwithstanding the foregoing, in the case of an ordinary course of business transaction between the Company and an entity of which a director of the Company is an executive officer or significant stockholder of the entity, provided the director does not otherwise have a material interest in the transaction, the Policy provides a different standard for the review and approval of transactions that involve payments in any year to or from the Company in excess of either: (i) 1% of the Company's annual consolidated revenue for the most recently completed fiscal year or (ii) the greater of $1 million or 1% of the other entity's consolidated revenue for the most recently completed fiscal year. If the transaction does not exceed the above-mentioned thresholds (and the director does not have a material interest in the transaction), the transaction will be reviewed by the Nominating and Corporate Governance Committee as part of its review of director independence. If the director does have a material interest in the transaction, regardless of whether the above-mentioned thresholds are exceeded, the transaction must be approved or ratified by the Audit Committee in accordance with the preceding paragraph.

In the event of an ordinary course of business transaction that exceeds the above-mentioned thresholds where the director does not have a material interest, the transaction is not required to be pre-approved by the Audit Committee. Instead, the Audit Committee will review the transaction as soon as possible and will determine whether to either ratify or disallow the transaction. In the case of any such transaction associated with prospective directors, review and approval by the Audit Committee must occur prior to the director's election. After approval or ratification, in each case the director will provide updated information at least annually on the aggregate payments involved in the transaction. This information will be reviewed by the Nominating and Corporate Governance Committee in connection with its review of directors' independence. If the aggregate amounts involved in the transaction exceed the thresholds noted above, the Audit Committee shall be required again to review and ratify the transaction.

The Related Party Transactions Policy does not apply to transactions available to all employees generally and transactions involving solely matters of executive compensation.

There were no related party transactions required to be approved or ratified by the Audit Committee under the Policy or disclosed pursuant to SEC rules since January 1, 2021.

Back to Contents

# V.  SECURITY OWNERSHIP OF FMC CORPORATION

## Management Ownership

The following table shows, as of December 31, 2021, the number of shares of Common Stock beneficially owned by each current director or nominee for director, the executive officers named in the Summary Compensation Table, and all current directors, nominees for director and executive officers as a group. Each director or nominee and each executive officer named in the Summary Compensation Table ("NEOs") beneficially owns less than one percent of the Common Stock.

| Name | Beneficial Ownership on December 31, 2021 FMC Common Stock | Percent of Class |
|---|---:|---:|
| Pierre Brondeau[1]† | 113,600 | * |
| Eduardo E. Cordeiro[2] | 18,182 | * |
| Carol Anthony ("John") Davidson[2] | 1,903 | * |
| Mark Douglas[1] | 127,644 | * |
| Kathy L. Fortmann | 0 | * |
| C. Scott Greer[2] | 61,879 | * |
| K'Lynne Johnson[2] | 23,006 | * |
| Dirk A. Kempthorne[2] | 42,150 | * |
| Paul J. Norris[2] | 73,850 | * |
| Margareth Øvrum[2] | 10,891 | * |
| Robert C. Pallash[2] | 38,916 | * |
| Ronaldo Pereira[1] | 22,157 | * |
| Michael F. Reilly[1] | 41,576 | * |
| Andrew Sandifer[1] | 55,491 | * |
| Kathleen Shelton[1] | 16,511 | * |
| Vincent R. Volpe, Jr.[2] | 49,364 | * |
| All current directors, nominees and executive officers as a group — 17 persons[1][2] | 715,328 | * |

* Less than one percent of class.

(1) Shares "beneficially owned" include: (i) shares owned or controlled by the individual; (ii) shares held in the FMC Corporation Savings and Investment Plan for the account of the individual as of December 31, 2021; (iii) restricted stock units that will vest within 60 days of December 31, 2021 (6,540 for Mr. Douglas, 4,109 for Mr. Sandifer, 1,023 for Mr. Pereira, 1,975 for Mr. Reilly, 1,171 for Dr. Shelton, 742 for an executive officer not listed above, and 15,560 for all executive officers as a group); (iv) shares subject to options that are exercisable within 60 days of December 31, 2021 (50,518 for Mr. Douglas, 26,546 for Mr. Sandifer, 7,307 for Mr. Pereira, 27,552 for Mr. Reilly, 7,612 for Dr. Shelton, 12,564 for an executive officer not listed above, and 132,099 for all executive officers as a group); and (v) shares subject to performance-based restricted stock units that will be settled within 60 days of December 31, 2021 (7,520 for Mr. Douglas, 4,728 for Mr. Sandifer, 885 for Mr. Pereira, 2,275 for Mr. Reilly, 1,012 for Dr. Shelton, 644 for an executive officer not listed above, and 17,064 for all executive officers as a group). Item (iii) includes restricted stock units which the holder has no power to vote or dispose of, but in respect of which the holder is entitled to a cash payment equal to the amount of any dividends paid by the Company on its Common Stock.

(2) Includes vested restricted stock units credited to individual accounts of non-employee directors (see section above entitled "Director Compensation"). The number of restricted stock units credited to directors included in the table above is as follows: Mr. Brondeau, 52,909; Mr. Cordeiro, 12,411; Mr. Davidson, 1,903; Ms. Fortmann, 0; Mr. Greer, 19,724; Ms. Johnson, 21,290; Mr. Kempthorne, 34,375; Mr. Norris, 66,850; Ms. Øvrum, 10,891; Mr. Pallash, 38,916; and Mr. Volpe, 49,364; and all directors as a group, 308,633. Directors have no power to vote or dispose of shares represented by restricted stock units until the shares are distributed and, until such distribution, directors have only an unsecured claim against the Company. The holders of these restricted stock units will be credited with additional restricted stock units having a value equal to the amount of any dividends paid by the Company on its Common Stock. Previously credited amounts are included in the table above.

† Mr. Brondeau retired from his role as Executive Chairman of the Company and was elected non-executive Chairman of the Board effective April 27, 2021.

Back to Contents

# Other Security Ownership

Based on available information, the persons listed below beneficially own more than five percent of the Company's outstanding shares of Common Stock as of December 31, 2021:

| Name and Address of Beneficial Owner | Amount and Nature of Beneficial Ownership | Percent of Class |
|---|---|---|
| The Vanguard Group, Inc.<br>100 Vanguard Blvd.<br>Malvern, PA 19355 | 13,809,336 shares[1] | 10.89% |
| BlackRock, Inc.<br>55 East 52nd Street<br>New York, NY 10055 | 10,130,103 shares[2] | 8.0% |
| Wellington Management Group LLP<br>280 Congress Street<br>Boston, MA 02210 | 8,454,330 shares[3] | 6.67% |

(1)  Based on a Schedule 13G/A filing dated February 10, 2022, as of December 31, 2021, The Vanguard Group, Inc. had shared voting power as to 204,628 shares, sole dispositive power as to 13,293,537 shares and shared dispositive power as to 515,799 shares.

(2)  Based on a Schedule 13G/A filing dated February 1, 2022, as of December 31, 2021, BlackRock, Inc. had sole voting power as to 8,764,770 of such shares and sole dispositive power as to all of the shares.

(3)  Based on a Schedule 13G filing dated February 4, 2022, as of December 31, 2021, Wellington Management Group LLP, Wellington Group Holdings LLP, and Wellington Investment Advisors Holdings LLP had shared voting power as to 7,464,420 of such shares and shared dispositive power as to all of the shares. Wellington Management Company LLP had shared voting power as to 7,061,538 of such shares and shared dispositive power as to 7,492,930 of the shares.

**FMC CORPORATION** - *Notice of Annual Meeting of Stockholders and Proxy Statement*   **27**