Exhibit 32  (excerpted)

**UNITED STATES**

**SECURITIES AND EXCHANGE COMMISSION**

Washington, DC 20549

# SCHEDULE 14A

**PROXY STATEMENT PURSUANT TO SECTION 14(a)**
**OF THE SECURITIES EXCHANGE ACT OF 1934**
**(Amendment No. )**

☑ Filed by the Registrant ☐ Filed by a Party other than the Registrant

**Check the appropriate box:**

| | |
|---|---|
| ☐ | Preliminary Proxy Statement |
| ☐ | **Confidential, for Use of the Commission Only (as permitted by Rule 14A-6(E)(2))** |
| ☑ | Definitive Proxy Statement |
| ☐ | Definitive Additional Materials |
| ☐ | Soliciting Material under §240.14a-12 |

# FMC CORPORATION



*(Name of Registrant as Specified in Its Charter)*

*(Name of Person(s) Filing Proxy Statement, if other than the Registrant)*

**Payment of Filing Fee (Check all boxes that apply):**

| | |
|---|---|
| ☑ | **No fee required.** |
| ☐ | **Fee paid previously with preliminary materials.** |
| ☐ | **Fee computed on table in exhibit required by Item 25(b) per Exchange Act Rules 14a-6(i)(1) and 0-11.** |

Back to contents

## Related Party Transactions Policy

The Board of Directors has adopted a written Statement of Policy with respect to Related Party Transactions sets forth the Company's position and procedures with respect to review, approval or ratification of related party transactions, including the types of transactions addressed by the Policy, and the corporate function responsible for applying the Policy and related procedures.

Under the Policy, "related parties" are defined to include executive officers and directors of the Company and their immediate family members, a stockholder owning in excess of 5% of the Company (or its controlled affiliates), and entities in which any of the foregoing have a substantial ownership interest or control. With respect to any transaction where a related party receives a benefit in excess of a de minimis amount of $5,000 (when aggregated with all similar transactions) the Policy requires that the transaction be pre-approved (or, if less than $120,000, ratified) by the Audit Committee and disclosed where required by SEC rules. The Policy also provides that any related party who is presented with a "corporate opportunity" within the Company's line of business, must first offer that opportunity to the Company.

Notwithstanding the foregoing, in the case of an ordinary course of business transaction between the Company and an entity of which a director of the Company is an executive officer or significant stockholder of the entity, provided the director does not otherwise have a material interest in the transaction, the Policy provides a different standard for the review and approval of transactions that involve payments in any year to or from the Company in excess of either: (i) 1% of the Company's annual consolidated revenue for the most recently completed fiscal year or (ii) the greater of $1 million or 1% of the other entity's consolidated revenue for the most recently completed fiscal year. If the transaction does not exceed the above-mentioned thresholds (and the director does not have a material interest in the transaction), the transaction will be reviewed by the Nominating and Corporate Governance Committee as part of its review of director independence. If the director does have a material interest in the transaction, regardless of whether the above-mentioned thresholds are exceeded, the transaction must be approved or ratified by the Audit Committee in accordance with the preceding paragraph.

In the event of an ordinary course of business transaction that exceeds the above-mentioned thresholds where the director does not have a material interest, the transaction is not required to be pre-approved by the Audit Committee. Instead, the Audit Committee will review the transaction as soon as possible and will determine whether to either ratify or disallow the transaction. In the case of any such transaction associated with prospective directors, review and approval by the Audit Committee must occur prior to the director's election. After approval or ratification, in each case the director will provide updated information at least annually on the aggregate payments involved in the transaction. This information will be reviewed by the Nominating and Corporate Governance Committee in connection with its review of directors' independence. If the aggregate amounts involved in the transaction exceed the thresholds noted above, the Audit Committee shall be required again to review and ratify the transaction.

The Related Party Transactions Policy does not apply to transactions available to all employees generally and transactions involving solely matters of executive compensation.

There were no related party transactions required to be approved or ratified by the Audit Committee under the Policy or disclosed pursuant to SEC rules since January 1, 2023.

Back to contents

# V. SECURITY OWNERSHIP OF FMC CORPORATION

## Management Ownership

The following table shows, as of December 31, 2023, the number of shares of Common Stock beneficially owned by each current director or nominee for director, the executive officers named in the Summary Compensation Table, and all current directors, nominees for director and executive officers as a group. Each director or nominee and each executive officer named in the Summary Compensation Table ("NEOs") beneficially owns less than 1% of the Common Stock.

| Name | Beneficial Ownership on December 31, 2023 FMC Common Stock | Percent of Class |
|---|---|---|
| Pierre Brondeau[2] | 331,419 | * |
| Eduardo E. Cordeiro[2] | 23,374 | * |
| Carol Anthony ("John") Davidson[2] | 5,764 | * |
| Mark Douglas[1] | 260,209 | * |
| Kathy L. Fortmann[2] | 1,837 | * |
| C. Scott Greer[2] | 65,011 | * |
| K'Lynne Johnson[2] | 26,039 | * |
| Dirk A. Kempthorne[2] | 45,752 | * |
| Margareth Øvrum[2] | 14,004 | * |
| Robert C. Pallash[2] | 46,721 | * |
| Ronaldo Pereira[1] | 37,006 | * |
| Michael F. Reilly[1] | 49,145 | * |
| Andrew Sandifer[1] | 79,380 | * |
| Jacqueline Scanlan[1] | 0 | * |
| Patricia Verduin, Ph.D.[2] | 57 | * |
| All current directors and executive officers as a group - 17 persons[1][2] | 1,010,039 | * |

\*    Less than 1% of class.

(1)  Shares "beneficially owned" include: (i) shares owned or controlled by the individual; (ii) shares held in the FMC Corporation Savings and Investment Plan for the account of the individual as of December 31, 2023; (iii) restricted stock units that will vest within 60 days of December 31, 2023 (9,083 for Mr. Douglas, 3,130 for Mr. Sandifer, 1,486 for Mr. Pereira, 1,744 for Mr. Reilly, 890 for two executive officers not listed above, and 16,333 for all executive officers as a group); (iv) shares subject to options that are exercisable within 60 days of December 31, 2023 (148,603 for Mr. Douglas, 45,985 for Mr. Sandifer, 18,593 for Mr. Pereira, 31,232 for Mr. Reilly, 19,418 for two executive officers not listed above, and 263,831 for all executive officers as a group); and (v) shares subject to performance-based restricted stock units that will be settled within 60 days of December 31, 2023 (8,087 for Mr. Douglas, 1,488 for Mr. Sandifer, 532 for Mr. Pereira, 829 for Mr. Reilly, 249 for an executive officer not listed above, and 11,185 for all executive officers as a group). Item (iii) includes restricted stock units which the holder has no power to vote or dispose of, but in respect of which the holder is entitled to a cash payment equal to the amount of any dividends paid by the Company on its Common Stock.

(2)  Includes vested restricted stock units credited to individual accounts of non-employee directors (see section above entitled "Director Compensation"). The number of restricted stock units credited to directors included in the table above is as follows: Mr. Brondeau, 2,277; Mr. Cordeiro, 14,395; Mr. Davidson, 4,264; Ms. Fortmann, 1,837; Mr. Greer, 22,856; Ms. Johnson, 21,688; Mr. Kempthorne, 38,140; Ms. Øvrum, 12,824; Mr. Pallash, 42,876; and all directors as a group, 161,157. Directors have no power to vote or dispose of shares represented by restricted stock units until the shares are distributed and, until such distribution, directors have only an unsecured claim against the Company. The holders of these restricted stock units will be credited with additional restricted stock units having a value equal to the amount of any dividends paid by the Company on its Common Stock. Previously credited amounts are included in the table above. Shares "beneficially owned" by Mr. Brondeau also include (i) 1,456 restricted stock units that will vest within 60 days of December 31, 2023 and (ii) 211,284 shares subject to options that are exercisable within 60 days of December 31, 2023. Such shares were granted to Mr. Brondeau during his time as an employee of the Company; Mr. Brondeau ceased to be an employee of the Company on April 27, 2021 and currently serves as a non-employee director.

**FMC CORPORATION** - *Notice of Annual Meeting of Stockholders and Proxy Statement* **27**

**Back to contents**

# Other Security Ownership

Based on available information, the persons listed below beneficially own more than 5% of the Company's outstanding shares of Common Stock as of December 31, 2023:

| Name and Address of Beneficial Owner | Amount and Nature of Beneficial Ownership | Percent of Class |
|---|---|---|
| The Vanguard Group, Inc.<br>  100 Vanguard Blvd.<br>  Malvern, PA 19355 | 14,521,747 shares(1) | 11.64% |
| Wellington Management Group LLP<br>  280 Congress Street<br>  Boston, MA 02210 | 12,547,766 shares(2) | 10.06% |
| BlackRock, Inc.<br>  50 Hudson Yards<br>  New York, NY 10001 | 10,265,166 shares(3) | 8.2% |

(1)  Based on a Schedule 13G/A filing dated February 13, 2024, as of December 29, 2023, The Vanguard Group, Inc. had shared voting power as to 160,467 shares, sole dispositive power as to 13,971,458 shares and shared dispositive power as to 550,289 shares.

(2)  Based on a Schedule 13G/A filing dated January 10, 2024, as of December 29, 2023, Wellington Management Group LLP, Wellington Group Holdings LLP, and Wellington Investment Advisors Holdings LLP had shared voting power as to 11,185,411 of such shares and shared dispositive power as to all of the shares. Wellington Management Company LLP had shared voting power as to 10,255,738 of such shares and shared dispositive power as to 10,739,475 of the shares.

(3)  Based on a Schedule 13G/A filing dated January 25, 2024, as of December 31, 2023, BlackRock, Inc. had sole voting power as to 9,169,283 of such shares and sole dispositive power as to all of the shares.