**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| *IN RE* **FMC CORPORATION SECURITIES LITIGATION**<br><br>———————<br><br>**This Document Applies to:**<br><br>**ALL ACTIONS** | No. 2:23-CV-4398-KNS<br><br>CLASS ACTION<br><br>ORAL ARGUMENT REQUESTED |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

**TABLE OF CONTENTS**

PAGE

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ......................................................................................................................... 2

    I.    PLAINTIFFS FAIL TO ALLEGE A FALSE OR MISLEADING STATEMENT ........... 2

        A.    Plaintiffs Fail to Allege that Statements Concerning  Demand and Channel Inventory Were False or Misleading............................................................................... 2

        B.    Plaintiffs Fail to Allege that Statements Concerning Generic Competition, Patent Protection Efforts, and Patent Litigation Were False or Misleading .......................... 6

        C.    Plaintiffs Fail to Allege that FMC Concealed Industry Consolidation........................... 9

        D.    Defendants' Alleged Misstatements Are Not Actionable as a Matter of Law ............... 9

        E.    Plaintiffs' Item 303 Claim Is Meritless........................................................................ 11

    II.    THE COMPLAINT FAILS TO PLEAD FACTS SUPPORTING A STRONG INFERENCE OF SCIENTER ....................................................................................... 11

        A.    Plaintiffs' Allegations Concerning Access to Information and General Knowledge About Demand Are Legally Insufficient.............................................................. 12

        B.    Plaintiffs' Remaining, Scattershot Attempts to Plead Scienter Fail ............................ 14

    III.    PLAINTIFFS FAIL TO PLEAD "CONTROLLING PERSON" LIABILITY ............ 15

CONCLUSION.................................................................................................................... 15

## TABLE OF AUTHORITIES

PAGE

*In re Aetna, Inc. Sec. Litig.*,
617 F.3d 272 (3d Cir. 2010) .......................................................................... 11

*Alberici v. Recro Pharma, Inc.*,
2020 WL 806719 (E.D. Pa. Feb. 14, 2020) .................................................. 15

*Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*,
532 F. Supp. 3d 189 (E.D. Pa. 2021) .......................................................... 14

*In re Allergan Generic Drug Pricing Sec. Litig.*,
2019 WL 3562134 (D.N.J. Aug. 6, 2019) .................................................... 14

*In re Am. Bus. Fin. Servs. Inc. Sec. Litig.*,
413 F. Supp. 2d 378 (E.D. Pa. 2005) ............................................................ 5

*Bldg. Trades United Pension Tr. Fund v. Kenexa Corp.*,
2010 WL 3749459 (E.D. Pa. Sept. 27, 2010) .............................................. 10

*Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*,
394 F.3d 126 (3d Cir. 2004) ..........................................................................4

*In re Campbell Soup Co. Sec. Litig.*,
145 F. Supp. 2d 574 (D.N.J. 2001) .............................................................. 14

*City of Warwick Ret. Sys. v. Catalent, Inc.*,
2024 WL 3219616 (D.N.J. June 28, 2024) .................................................. 13

*In re Coca-Cola Enters. Inc. Sec. Litig.*,
510 F. Supp. 2d 1187 (N.D. Ga. 2007) .......................................................... 5

*In re Cognizant Tech. Sols. Corp. Sec. Litig.*,
2018 WL 3772675 (D.N.J. Aug. 8, 2018) .................................................... 10

*In re Coinbase Glob. Inc. Sec. Litig.*,
2024 WL 4053009 (D.N.J. Sept. 5, 2024) ..................................................... 9

*Emps.' Ret. Sys. of Gov't of the V.I. v. Blanford*,
794 F.3d 297 (2d Cir. 2015) ........................................................................... 6

*Hall v. Johnson & Johnson*,
2019 WL 7207491 (D.N.J. Dec. 27, 2019) .................................................. 14

*Henry v. Futu Holdings Ltd.*,
2024 WL 4285129 (D.N.J. Sept. 25, 2024) ................................................... 3

*In re Henry Schein, Inc. Sec. Litig.*,
2019 WL 8638851 (E.D.N.Y. Sept. 27, 2019) ............................................ 14

*In re Hertz Glob. Holdings Inc.*,
   905 F.3d 106 (3d Cir. 2018) ................................................................................. 15

*In re Hertz Glob. Holdings, Inc. Sec. Litig.*,
2017 WL 1536223 (D.N.J. Apr. 27, 2017) ................................................................. 10

*In re Incyte S'holder Litig.*,
   2014 WL 707207 (D. Del. Feb. 21, 2014) ............................................................... 13

*Institutional Invs. Grp. v. Avaya, Inc.*,
   564 F.3d 242 (3d Cir. 2009) ................................................................................. 15

*La Quinta Worldwide, LLC v. Q.R.T.M, S.A. de C.V.*,
   2011 WL 13233546 (D. Ariz. Feb. 16, 2011) ........................................................... 8

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
   601 U.S. 257 (2024) ............................................................................................. 11

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
   543 F. Supp. 3d 96 (D. Md. 2021) ......................................................................... 11

*Mill Bridge V, Inc. v. Benton*,
   2009 WL 4639641 (E.D. Pa. Dec. 3, 2009) ............................................................ 14

*In re Nice Sys.*,
   135 F. Supp. 2d 551 (D.N.J. 2001) ......................................................................... 7

*In re Novo Nordisk Sec. Litig.*,
   2018 WL 3913912 (D.N.J. Aug. 16, 2018) ............................................................. 15

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
   575 U.S. 175 (2015) ............................................................................................... 4

*Paxton v. Provention Bio, Inc.*,
   2022 WL 3098236 (D.N.J. Aug. 4, 2022) ................................................................ 9

*Rahman v. Kid Brands, Inc.*,
   736 F.3d 237 (3d Cir. 2013) ................................................................................. 13

*Rescue Mission of El Paso, Inc. v. K-Sea Transp., Partners L.P.*,
   2013 WL 3087078, (D.N.J. June 14, 2013) ............................................................. 3

*SEB Inv. Mgmt. AB v. Endo Int'l, PLC*,
   351 F. Supp. 3d 874 (E.D. Pa. 2018) ................................................................. 11, 13

*In re Supreme Indus., Inc. Sec. Litig.*,
   2019 WL 1436022 (N.D. Ind. Mar. 29, 2019) .......................................................... 3

*Tanaskovic v. Realogy Holdings Corp.*,
   2021 WL 211049 (D.N.J. Jan. 21, 2021) ................................................................. 9

*Teamsters Loc. 456 Pension Fund v. Universal Health Servs.*,
   396 F. Supp. 3d 413 (E.D. Pa. 2019) ................................................................ 15

*In re Terravia Holdings, Inc. Sec. Litig.*,
   2020 WL 553939 (N.D. Cal. Feb. 4, 2020) ......................................................... 3

*In re Toronto-Dominion Bank Sec. Litig.*,
   2018 WL 6381882 (D.N.J. Dec. 6, 2018) ............................................................ 5

*Tracinda Corp. v. DaimlerChrysler AG*,
   197 F. Supp. 2d 42 (D. Del. 2002) ..................................................................... 5

*In re Urb. Outfitters, Inc. Sec. Litig.*,
   103 F. Supp. 3d 635 (E.D. Pa. 2015) ................................................................ 15

*Utesch v. Lannett Co., Inc.*,
   316 F. Supp. 3d 895 (E.D. Pa. 2018) ................................................................ 14

*In re Viropharma Inc. Sec. Litig.*,
   21 F. Supp. 3d 458 (E.D. Pa. 2014) ................................................................... 9

*Weston v. DocuSign, Inc.*,
   669 F. Supp. 3d 849 (N.D. Cal. 2023) ................................................................ 6

*In re Wilmington Tr. Sec. Litig.*,
   852 F. Supp. 2d 477 (D. Del. 2012) ................................................................... 2

*Winer Fam. Tr. v. Queen*,
   2004 WL 2203709 (E.D. Pa. Sept. 27, 2004).................................................... 4

*Winer Fam. Tr. v. Queen*,
   503 F.3d 319 (3d Cir. 2007) ............................................................................... 4

*W. Palm Beach Pol. Pens. Fund v. DFC Glob. Corp.*,
   2015 WL 3755218 (E.D. Pa. June 16, 2015) .................................................... 15

*Wu v. GSX Techedu Inc.*,
   2024 WL 3163219 (D.N.J. June 25, 2024) ....................................................... 14

*Zucker v. Quasha*,
   891 F. Supp. 1010 (D.N.J. 1995)................................................................... 2–3

STATUTES & RULES

15 U.S.C. § 78u–5 ................................................................................................ 11

Fed. R. Civ. 9 ................................................................................................... 1, 2

***

**Note on Citation Format**: Capitalized terms not defined herein shall have the meaning ascribed to them in the Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (Dkt. No. 36-1).  The Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs' Amended Complaint is referenced herein as the "Motion" or "Br.," and Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Complaint (Dkt. No. 39-1) is referenced herein as the "Opposition" or "Opp."

Unless otherwise noted, emphasis has been added to quotations, and internal quotations, brackets, citations, and footnotes have been omitted.

References to Ex.__ correspond to the exhibits attached to the Declaration of Dana M. Seshens, filed in support of Defendants' Motion (Dkt. No. 36-4).  References to Reply Ex.__ correspond to the exhibits attached to the Reply Declaration of Dana M. Seshens, filed contemporaneously herewith in further support of Defendants' Motion.  References to page numbers within exhibits correspond to the PDF page number of the document, excluding the exhibit cover page, except that references to page numbers for excerpted exhibits correspond to the actual page number on the document itself.

v

**PRELIMINARY STATEMENT**

Plaintiffs cannot avoid the PSLRA's heightened pleading standards by burying Defendants and this Court in a deluge of vague and conclusory allegations. Indeed, Plaintiffs' Opposition all but ignores the PSLRA and Rule 9(b) in arguing the Complaint states a claim. It does not. Because it fails to plead with the requisite particularity either (i) a material misrepresentation or omission or (ii) scienter, the Complaint should be dismissed.

As the Motion explained, FMC disclosed the very risks Plaintiffs allege were concealed, and the Complaint's unparticularized, hindsight allegations—including from numerous Former Employees ("FEs")—identify no allegedly omitted information that should have been disclosed. More specifically, Defendants promptly disclosed that FMC experienced issues with demand and inventory after these issues allegedly emerged in later 2022 or early 2023. Plaintiffs offer no particularized allegations that such risks emerged or were known prior to these disclosures. Instead, they rely on allegations that are vague and internally inconsistent as to *when* demand allegedly began to fall, *which* products and regions were implicated, *how* this was known at FMC, and *by whom*, among other deficiencies. FMC also comprehensively disclosed generic competition and patent litigation risks and results. The Complaint and Opposition ignore or misconstrue these disclosures. Plaintiffs also unsuccessfully argue that puffery, opinions, and forward-looking statements are actionable by disregarding applicable law and attacking statements not alleged to be misleading in the Complaint.

The Complaint further provides no basis to infer that the Individual Defendants acted with scienter. In Opposition, Plaintiffs try to rehabilitate vague, contradictory, and unfounded FE statements by arguing that the FEs tell a consistent story. Even if this were true—and it is not—consistently vague or unsupportable accounts do not satisfy the PSLRA. Notably, Plaintiffs abandon various theories of scienter previously advanced and concede their failure to

1

allege motive.  Plaintiffs instead resort to inadequate FE allegations that Defendants had access to information in data systems about demand, attended meetings where demand was discussed, and made statements about demand and patent protection, but no FE alleges that any Individual Defendant accessed or knew information contrary to public disclosures.  These pleading failures are fatal to Plaintiffs' claims.

For these reasons and those set forth in the Motion, the Complaint should be dismissed.

## ARGUMENT

Plaintiffs must meet the exacting standards of the PSLRA and Rule 9(b) to state their claims.  Br. 7–8.  Plaintiffs fail to do so with respect to pleading an actionable misstatement or omission and pleading facts giving rise to an inference of scienter.

## I.    PLAINTIFFS FAIL TO ALLEGE A FALSE OR MISLEADING STATEMENT

Plaintiffs do not dispute that repeating "a laundry list of reasons why [] statement[s] *could* be untrue" is "not sufficient" under the PSLRA, *In re Wilmington Tr. Sec. Litig.*, 852 F. Supp. 2d 477, 490 (D. Del. 2012), nor do they dispute that the Complaint does just that, Br. 8–9. For that reason, among others, the Complaint should be dismissed.

### A.    Plaintiffs Fail to Allege that Statements Concerning Demand and Channel Inventory Were False or Misleading

Plaintiffs' Complaint alleged that every one of dozens of statements misleadingly omitted information about declining demand and/or unsustainable inventory.  In Opposition, Plaintiffs claim that only a subset of those statements are misleading for that reason.[1]  Plaintiffs do not pursue—and have thus abandoned—the argument that any other statements are actionable on this theory.  *Zucker v. Quasha*, 891 F. Supp. 1010, 1019 (D.N.J. 1995), *aff'd*, 82 F.3d 408 (3d Cir.

---

[1] AC ¶¶ 285, 291, 293-4, 297, 300, 302, 308-09, 323, 325, 331, 333, 337-8, 352, 357, 363-4, 367-70, 384, 386, 390, and 395.  Opp. 5–7, 16–18, 20–28.

2

1996).  As to those Plaintiffs still challenge, they are insufficient.  Br. 9–14.

### 1.     FMC Disclosed the Risks of Which Plaintiffs Now Complain

As set forth in the Motion, FMC disclosed emerging inventory and demand issues

beginning in its Q4 2022 earnings call, and the Complaint lacks any particularized allegations

that these issues existed and/or were knowable sooner.  Br. 9–11.  This dooms Plaintiffs' claims

as of that time and thereafter because issuers cannot be liable under the securities laws when they

"warn[] of the exact risk the Plaintiffs argue they failed to disclose."  *Henry v. Futu Holdings

Ltd.*, No. 23-3222, 2024 WL 4285129 at *16 (D.N.J. Sept. 25, 2024); *see also* Br. 10.

In response, Plaintiffs argue that (i) FMC's Class Period disclosures of inventory issues

"downplayed the severity and breadth of the issues," Opp. 20, and (ii) these issues were "seen in

real time by FMC" before they were disclosed, Opp. 17–18.  Both arguments fail.  *First*, FMC—

having disclosed emerging issues—was not required to offer "more dire specifics," as explained

in the *Rescue Mission of El Paso, Inc. v. K-Sea Transportation, Partners L.P.* case Plaintiffs

ignore.  No. 12-0509, 2013 WL 3087078, at *2 (D.N.J. June 14, 2013); Br. 10–11.  *Second*,

Plaintiffs do not dispute that several FEs claim that demand began to decline due to destocking *in

early 2023 or Q4 2022*—consistent with the timing of FMC's disclosures.  Br. 10; AC ¶¶ 142,

144; *see also* AC ¶ 169 ("impact on demand *in 2023*"); *id*. ¶ 193 ("as of *May 2023*, there was a

steady decrease in [] orders").  Plaintiffs cite vague allegations about inventory issues earlier in

2022, Opp. 17, but these fail, particularly because they conflict with other allegations' timing.

Br. 10, 12–14.  *See, e.g.*, *In re Terravia Holdings, Inc. Sec. Litig.*, No. 16-6633, 2020 WL

553939, at *6 (N.D. Cal. Feb. 4, 2020) ("internally inconsistent claim" insufficient for falsity).[2]

---

[2]  The Opposition claims that, in arguing that FMC "detected [rising inventories] in 2023 and warned investors
[then]," Defendants seek to introduce facts outside the Complaint.  Opp. 19, n.19.  That is not so, but it also misses
the point: Plaintiffs *do not adequately allege* that FMC detected inventory issues before disclosing them.  *See, e.g.*,
*In re Supreme Indus., Inc. Sec. Litig.*, No. 17-0143, 2019 WL 1436022, at *9 (N.D. Ind. Mar. 29, 2019) (confidential

Plaintiffs finally resort to mischaracterizing the Motion as offering a truth-on-the-market defense. Opp. 19–22. But that defense applies to a concededly false or misleading statement, where "the truth of the matter was known already and had been factored into the market price." *Winer Fam. Tr. v. Queen*, No. 03-4318, 2004 WL 2203709, at *4 (E.D. Pa. Sept. 27, 2004), a*ff'd* 503 F.3d 319 (3d Cir. 2007). Defendants are not invoking that defense, but, rather, are holding Plaintiffs to their PSLRA burden to plead with particularity that the challenged statements— *evaluated in their full context*, *see Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 190–91 (2015)—were "false or misleading when made," *Winer*, 503 F.3d at 331. FMC's disclosures and SEC filings provide the required context, which further highlights the inadequacy of the allegations in the Complaint.

### 2. FMC's Alleged Failure to Predict and Disclose Destocking Before It Occurred Is Unsupported and Not Actionable

As explained in the Motion, Plaintiffs also fail to plead that the high demand experienced during the pandemic was known to be "unsustainable" and should have been identified as such. Br. 11. The FE accounts do not show otherwise. *Id*. at 12–14.

As a threshold matter, Plaintiffs' assertion that Defendants contested the accounts of only three FEs—4, 6, and 18—is incorrect. Although those three cannot be credited,[3] the Motion identified the inadequacies of *all* relevant FE allegations. *See* Reply Ex. 1 (Chart of Responses to FE Statements). Plaintiffs' Opposition cannot rehabilitate their insufficient FE allegations.[4]

---

witness's allegations of undisclosed sales slowdown did not support claim where the allegations' "timing [was] vague" and alleged slowdown occurred around when company itself "disclosed signs of slowing down").

[3] Plaintiffs do not explain how an engineer or research scientist (FEs 4 and 18) would have insights into inventory or sales. *Compare* Br. 13–14 *with* Opp. 12–13. Plaintiffs also do not address that FE-6 had no *direct* knowledge of regions outside of Pakistan, nor identify with particularity the information he may have gleaned from meetings with other managers. *See California Public Employees' Retirement System v. Chubb Corp.*, 394 F.3d 126, 148 (3d Cir. 2004) (discounting statements from "local branch office[]" FEs for information on "business on a national scale").

[4] Plaintiffs attempt to bolster their individually deficient FE allegations by arguing they are consistent. Opp. 12–16. They are not, but, in any event, Plaintiffs "cannot overcome a lack of particularity [of individual FE accounts] by

4

*First*, Plaintiffs have not adequately alleged with particularity *when* before Q4 2022 Defendants purportedly detected demand or channel inventory issues.[5]  Instead, they identify a smattering of conclusory allegations referencing vague issues at non-specific and conflicting times.  *See* Opp. 14, 17 (citing allegations claiming demand began to decline "by February or March 2022," "2021 to 2022," or "end of 2021").  This is inadequate to plead that any statement about demand or inventory levels was false or misleading when made.  *See* Br. 12.

*Second*, although Plaintiffs claim the Complaint alleges that "customer behavior . . . signaled a demand decline," Opp. 15, 17, they cite the same inadequate allegations that the Motion addressed, ignoring Defendants' arguments.  None of those allegations describes with particularity how levels of customer returns, purchases, or discounts compared to the past, why this evidenced oversupply, and whether any of this was known at the time.[6]  *See* Br. 13.

*Third*, Plaintiffs argue that they need not identify impacted products.  Opp. 14–15.  But the very case they cite relied on allegations of, among other details, "where the misconduct occurred . . . *and what products may have been involved*."  *In re Toronto-Dominion Bank Sec. Litig.*, No. 17-1665, 2018 WL 6381882, at *5 (D.N.J. Dec. 6, 2018).

In short, Plaintiffs' FE allegations fail to show that FMC could or should have disclosed

---

citing to the allegations of [FEs] . . . as a group."  *In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, 413 F. Supp. 2d 378, 391–92 (E.D. Pa. 2005); *see* Br. 12.  Plaintiffs also concede that certain FEs did not work at FMC during the Class Period, yet fail to explain how their statements are probative of *in*-Class Period events.  *See* Opp. 14 n.8.

[5] Plaintiffs attempt to distinguish Defendants' cases because they alleged *no* dates within a class period.  Opp. 14 n.8.  But the Complaint often references dates running the entire Class Period—functionally the same.  Plaintiffs also claim inventory and demand "issues were seen at FMC in real-time by 2022," but they cite only allegations describing how SAP worked, Opp. 15, 18, without detail about what it showed, to whom, and when.

[6] Plaintiffs also fail to defend their theory about credit extensions and discounts.  Opp. 15 n.13, 17.  Instead they provide inadequate "information about when, where and to whom" FEs' statements were made and "the sources" of those allegations.  *Tracinda Corp. v. DaimlerChrysler AG*, 197 F. Supp. 2d 42, 83 (D. Del. 2002).  Plaintiffs also cannot distinguish *Coca-Cola* because it applied a "heightened pleading standard"; the same PSLRA standard applies here.  *In re Coca-Cola Enters. Inc. Sec. Litig.*, 510 F. Supp. 2d 1187, 1194 (N.D. Ga. 2007).

destocking and declining demand sooner than it did.[7]

**B.      Plaintiffs Fail to Allege that Statements Concerning Generic Competition, Patent Protection Efforts, and Patent Litigation Were False or Misleading**

The Complaint also alleged that dozens of Defendants' statements misleadingly omitted information about generic competition and patent litigation.  Plaintiffs all but concede that the FE allegations fail to support this theory; the Opposition does not defend the FE statements on generic competition and patent protection, nor does it address the insufficiencies identified in the Motion.  Br. 16–18, nn. 7–8.  Further, the Opposition focuses only on subset of the patent-related misrepresentations previously alleged.[8]  None is actionable because, as explained, *see* Br. 15–21, FMC disclosed all that was required on these subjects, including the risks allegedly concealed.

**1.      FMC Adequately Disclosed Risks Related to Generic Competition and Patent Protection Efforts**

FMC's repeated, present-tense disclosures on generic competition and patents, *see* Br. 4–5, 15–17, doom Plaintiffs' claims.  Plaintiffs largely ignore these disclosures in their Opposition and instead twist FMC's words, claiming its "risk factors misleadingly described generic competition as a 'potential impact' that 'could' affect FMC," Opp. 21 (citing AC ¶¶ 291–92), "when such competition [] was *already* impacting its critical markets," *id.* (citing AC ¶¶ 147–60, 166–68).  But the "potential impact" language does not even come from a disclosure on generic competition; it comes from a disclosure on the "emerge[nce]" of "new [agricultural] technologies" and their "largely unknown" "potential impact."  *See e.g.*, Ex. 4 (2021 10-K) at 12.

---

[7] Plaintiffs' own authorities highlight the deficiency of their FE allegations.  *See Empls.' Ret. Sys. of Gov't of the V.I. v. Blanford*, 794 F.3d 297, 307 (2d Cir. 2015) (witnesses in "management positions" had "broad[] knowledge of the company's inventory and accounting practices" and "reported to [] executives who . . . ignored repeated complaints"); *Weston v. DocuSign, Inc.*, 669 F. Supp. 3d 849, 867–68 (N.D. Cal. 2023) (witnesses "discussed [specific] lagging metrics" with "supervisors who reported to the individual defendants").

[8]  AC ¶¶ 291, 293-4, 300, 323, 331, 337-8, 352, 361, 367, 368-70, 375, 377, 390, 393, 408-9.  Opp. 18, 21.

And the "could affect" language comes from FMC's disclosure that it presently "*faces competition*" that "*could affect*" its business in various ways. *Id*.  In any event, as the Motion explained—and as Plaintiffs do not meaningfully dispute—Plaintiffs fail adequately to plead any actual, undisclosed impact of generic competition on FMC or its pricing.  In fact, Plaintiffs allege that FMC *raised* prices during the Class Period.  Br. 16–18.

While Plaintiffs acknowledge that FMC disclosed expiration of the Rynaxypyr composition of matter patent, they claim that it nevertheless was misleading for FMC to "claim[] that other Diamide protections would inhibit generic competition late into the decade."  Opp. 21. The statements Plaintiffs cite, however, merely state that other patent protections would remain in place—which Plaintiffs do not dispute—and do not claim these protections would prevent *any* generic incursion.  *Id.* (citing AC ¶¶ 96–97 (not alleged in the Complaint to be misleading), 105, 361, 375, 393).  Indeed, Defendants noted the threat of generic competition in some of the same statements Plaintiffs cite.  *See, e.g.*, *id*. ¶ 393 ("We have always presumed that over time, there would be generic entry into this marketplace.").  FMC was not required to take a "gloomy, fearful or defeatist" view of that threat.  *In re Nice Sys*., 135 F. Supp. 2d 551, 575 (D.N.J. 2001).

### 2.     FMC Adequately Disclosed Patent Proceedings and Legal Risks

Just as they ignore or misconstrue FMC's disclosures regarding generic competition and patent protection, Plaintiffs also ignore FMC's comprehensive warnings about patent litigation. FMC disclosed, among other things, that it was "currently," and "may in the future" be, a party to patent-related legal proceedings; that it "may not be successful in" such litigation; that patents could be "deemed unenforceable" or "circumvented" in court; and that adverse enforcement decisions could permit entry of generic competitors and harm results.  *See* Br. 5, 18–19.  In light of these and other disclosures, Plaintiffs' claim that FMC misled investors by "conceal[ing] . . . patent litigation losses in Brazil, China, and India" must fail.  *See* Opp. 16–17.

*First*, as stated in the Motion, FMC regularly, timely disclosed developments in the China patent litigation, including the two adverse September 2022 decisions. *See* Br. 19. Plaintiffs do not dispute or even mention these disclosures in the Opposition. Yet, remarkably, they continue to make the demonstrably false claim that FMC concealed these decisions. Opp. 17.[9]

*Second*, as to the India and Brazil decisions, Plaintiffs do not—and cannot—show that the omission of concededly nonfinal orders in these ongoing litigations rendered any statement by FMC false or misleading, or that FMC otherwise had a duty to disclose them. Br. 20–21. The Complaint alleged that legal "losses" in Brazil and India had an undisclosed impact on demand for FMC's products, AC ¶¶ 334(d), 354(d), but Plaintiffs offer no support for this theory, *see* Br. 18. Instead, Plaintiffs fall back on their allegation that the decisions in India enabled generic competitors to enter the market, Opp. 18, ignoring that FMC *disclosed* that it was facing generic competition and failing to adequately allege that such competition had any undisclosed impact during the Class Period. *See* Section I.B.1, *supra*; Br. 15–18, n.9. Plaintiffs also do not dispute that the Complaint fails to allege generic competition entered the market after the Brazil decision, *see* Br. 21, or that the Brazil decision was *vacated* during the Class Period.[10]

Plaintiffs also assert that, "because Defendants repeatedly boasted about FMC's various IP litigation wins, they had a duty to disclose the losses so as not to mislead." Opp. 18 (citing AC ¶¶ 361, 367, 377). But the disclosures Plaintiffs identify—high-level statements about

---

[9] The Opposition attempts to attribute a supposed 50% sales drop in China to patent litigation losses. *See* Opp. 17. However, Plaintiffs allege no credible facts to support that such a drop occurred, Br. 17–18, much less any basis to connect the supposed drop to the patent litigation "losses" given that the FE identifying the purported drop is alleged to have stopped working at FMC months before the alleged litigation losses took place. *See* AC ¶¶ 41, 148, 159.

[10] Plaintiffs wrongly claim, *see* Opp 18, n.17, that the Court cannot take judicial notice of the decision vacating the prior Brazil order. But foreign judgments are judicially noticeable on a motion to dismiss, Br. 21, n.13 (collecting cases), and the out-of-Circuit case Plaintiffs cite is not to the contrary. *See La Quinta Worldwide, LLC v. Q.R.T.M, S.A. de C.V.*, No. 09-0175, 2011 WL 13233546, at *8 (D. Ariz. Feb. 16, 2011) (declining to take judicial notice of foreign trademark decision in deciding *merits* of U.S. trademark dispute). Here the Court need only take judicial notice of the fact and outcome of the foreign decision.

nonspecific wins in various unnamed past lawsuits over unnamed patents in various jurisdictions, "including in India and China," *id.*—did not trigger a duty to disclose every interim setback in any patent lawsuit. *See, e.g.*, *Paxton v. Provention Bio, Inc.*, No. 21-11613, 2022 WL 3098236, at *13 (D.N.J. Aug. 4, 2022) (finding "no duty to disclose interim, non-final" FDA feedback as "it does not express a binding agency decision and is subject to change").[11] Plaintiffs do not even claim that the nonspecific "wins" and alleged "losses" concerned related patents, parties, or proceedings. In any case, FMC expressly disclosed that it was, and may continue to be, involved in patent-related legal disputes in which it may not succeed, including the very losses in China Plaintiffs claim were concealed. *See* Section I.B.1, *supra*; Br. 4–5, 18–20.

**C.      Plaintiffs Fail to Allege that FMC Concealed Industry Consolidation**

Plaintiffs all but abandon the claim that FMC concealed industry consolidation, which it in fact disclosed, *see* Br. 21. Their only support for any suggestion that some unspecified impact of consolidation was not sufficiently disclosed is FE-10, who Plaintiffs do not dispute was a Midwest-based, regional employee who claims no insight into FMC's broader business.

**D.      Defendants' Alleged Misstatements Are Not Actionable as a Matter of Law**

*Puffery*. Many statements Plaintiffs challenge are nonactionable puffery. Br. 21–22; see generally Ex. 1.[12] Plaintiffs assert that it is improper to dismiss claims on this basis, *see* Opp. 24–25, ignoring innumerable decisions that do just that. *See, e.g.*, *Tanaskovic v. Realogy Holdings Corp.*, No. 19-15053, 2021 WL 211049, at *20–21 (D.N.J. Jan. 21, 2021). Statements

---

[11] The cases Plaintiffs cite, by contrast, involved detailed, affirmative statements that directly bore on or contradicted allegedly omitted information. Opp. 18 (citing *In re Viropharma Inc. Sec. Litig.*, 21 F. Supp. 3d 458, 471–72 (E.D. Pa. 2014) (defendants spoke about exclusivity of specific drug but omitted FDA "conclusions" "b[earing] directly" on exclusivity) and *In re Coinbase Glob. Inc. Sec. Litig.*, No. 22-4915, 2024 WL 4053009, at *10 (D.N.J. Sept. 5, 2024) (defendants disclosed specific risks in safeguarding customer assets but omitted other known, related risks).)

[12] Plaintiffs claim Exhibit 1 "divorces [] misstatements from their context," Opp. 16, n.14, but that is not so. Defendants provided Exhibit 1 as a guide to Plaintiffs' numerous inadequate allegations. As Defendants made clear, it was never intended to be a comprehensive recitation of every alleged misstatement and related disclosure.

about "strong" demand or "significant" patent protection are not concrete and verifiable and thus

nonactionable. *See, e.g.*, *In re Hertz Glob. Holdings, Inc. Sec. Litig.*, No. 13-7050, 2017 WL

1536223, at *11 (D.N.J. Apr. 27, 2017); *Bldg. Trades United Pension Tr. Fund v. Kenexa Corp.*,

No. 09-2642, 2010 WL 3749459, at *12 (E.D. Pa. Sept. 27, 2010). Such statements do not

become actionable on the mere assertion that they "misled by omission" (which Plaintiffs fail

adequately to allege, Br. 9–21; see Sections I.A–B, *supra*) or because they describe core aspects

of the business, *see, e.g.*, *In re Cognizant Tech. Sols. Corp. Sec. Litig.*, No. 16-06509, 2018 WL

3772675, at *23 (D.N.J. Aug. 8, 2018).

    *Opinion and Belief.* Plaintiffs also challenge statements of protected opinion. *See* Br.

22–23; *see generally* Ex. 1. In disputing whether the statements are opinions, Plaintiffs highlight

several statements that *they never alleged* were misleading[13] and excerpt disclosures but ignore

the language that reflects they are opinions, *see, e.g.*, Opp. 27 n.26 (citing part of disclosure at

AC ¶ 332 but ignoring part about future growth "we would *expect*"). Otherwise, Plaintiffs

merely assert that subjective assessments of inventory levels and patent enforcement risks, *e.g.*,

AC ¶ 297, 337, and financial projections, *e.g.*, *id*. ¶ 331, are actionable because they omitted

material facts, Opp. 27. They did not. *See* Br. 9–21; *see also* Sections I.A–B, *supra*.

    *Forward-Looking Statements.* Plaintiffs challenge statements about *future* demand,

*projected* financials, and patent-related *expectations* for the patent landscape. Br. 23–24; see

generally Ex. 1. Such forward-looking statements accompanied by robust risk disclosures, Br.

4–6, are not actionable (and Plaintiffs cannot overcome the safe harbor because the statements

also were made without intent to deceive, *see* Br. 25–30; Point II, *infra*). Plaintiffs claim FMC's

---

[13] *See* Opp. 26. (quoting unbolded portion of AC ¶ 333), 27 n.26 (same for AC ¶ 361). At paragraphs 334 and 365 in the Complaint, Plaintiffs alleged that only the "*bolded*" statements in Paragraphs 333 and 361 were misleading.

disclosures mischaracterized existing risks as potentialities, but this is simply wrong. *See, e.g.*, Br. 15; Section I.B.1, *supra*. Their claim that forward-looking statements "implicat[ing] current or past trends" are actionable is also wrong; the statute protects management's "plans and objectives" *and* "any statement of the assumptions underlying or related [there]to," 15 U.S.C. § 78u–5(i)(1)(B)–(D). Even statements with present elements are protected where, as here, these cannot "meaningfully be distinguished" from future elements. *See, e.g.*, *In re Aetna, Inc. Sec. Litig.*, 617 F.3d 272, 280 (3d Cir. 2010).[14] Finally, Plaintiffs claim "the safe harbor does not protect omissions of existing facts or circumstances," but support this merely by asserting that FMC "omitted a swath of materially adverse facts." This fails.[15]

### E.    Plaintiffs' Item 303 Claim Is Meritless

Plaintiffs claim they have "adequately allege[d] an Item 303 violation." Opp. 27–28. But they do not dispute that FMC disclosed generic competition *as a* "*trend*," nor explain how it could be liable for failing to do so. Plaintiffs also ignore *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 265 (2024), which precludes an Item 303 claim absent allegations that failure to disclose pursuant to Item 303 rendered other statements misleading. Plaintiffs identify no such misleading statements. Br. 8–23; *see also* Sections I.A-D, *supra*.

## II.    THE COMPLAINT FAILS TO PLEAD FACTS SUPPORTING A STRONG INFERENCE OF SCIENTER

Plaintiffs implicitly concede that the Individual Defendants had no motive to deceive, *see* Opp. 28 n.29, and do not explain why they would have *increased* their FMC holdings ahead of

---

[14]  This applies to, *e.g.*, statements about the import of inventory levels for FMC's future business, AC ¶¶ 285, 297, 325, and expectations for FMC's patent portfolio amid generic competition, AC ¶¶ 361, 375, 377, 393.

[15] *See, e.g.*, *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 543 F. Supp. 3d 96, 127 (D. Md. 2021), *aff'd sub nom. In re Marriott Int'l, Inc.*, 31 F.4th 898 (4th Cir. 2022). The plaintiffs in *SEB Investment Management AB v. Endo International, PLC*, 351 F. Supp. 3d 874, 902 (E.D. Pa. 2018), by contrast, alleged that a specific forward-looking statement (about the prospect that a drug would receive FDA approval) was rendered misleading by a specific omission (about the drug's abuse potential, which would affect the prospects for approval).

an allegedly known, imminent demand drop, Br. 26 & n.26.  In such circumstances, the strength of Plaintiffs' scienter allegations must be "greater" than otherwise and "at least as compelling as a[ny] nonculpable inference."  *Id.* at 25, 26 (citing cases).  Plaintiffs do not meet these standards.

### A.  Plaintiffs' Allegations Concerning Access to Information and General Knowledge About Demand Are Legally Insufficient

Plaintiffs attempt to plead scienter by alleging that:  (i) Defendants could have accessed unspecified information about demand on FMC's internal systems, Opp. 30–31; (ii) Defendants discussed demand-related issues at meetings, according to FEs who largely did not attend the meetings, *id.* at 30; and (iii) Defendants made public statements about demand and patent protection, *id.* 28–29, 31–32.  These allegations are wholly insufficient.  *See* Br. 26–29.

*Access to Information.*  Allegations that Defendants had access to information regarding demand and inventory—absent any detail about the specific information they received, when they received it, or how it contradicted any public statement—are insufficient to plead a strong inference of scienter under Third Circuit law.  Br. 26–27 (citing cases).  Such allegations form the overwhelming basis for Plaintiffs' theory of scienter, but the Opposition barely defends them.  Plaintiffs attempt to distinguish the litany of cases rejecting such allegations by claiming, in a footnote, that those plaintiffs relied on "one source to plead scienter," whereas they offer "facts from nineteen FEs with corroborating accounts about FMC's information systems and reports, what data they contained, and who had access to them."  Opp. 31. n.35.  This is inaccurate as to the cases—which included multiple sources of scienter allegations, *see* Br. 26–27—and misses the point:  *No* FE alleges the specific data included in any particular report, document, or internal system—as opposed to the general type of data in those sources—nor how such data conflicted with any public disclosure.  *See, e.g.*, AC ¶¶ 197–98, 200–01, 206.  And *no* FE offers support for the inference that either Individual Defendant *actually* reviewed such data—only that they *could*

12

have. *See, e.g., id.* ¶¶ 196, 198–99, 201–03, 206–07. These allegations are inadequate. *See, e.g., In re Incyte S'holder Litig.*, No. 13-0365, 2014 WL 707207, at *11 (D. Del. Feb. 21, 2014) (declining to infer scienter absent allegations about "who specifically reviewed [internal] reports (aside from the conclusory assertion they were made available to Defendants)").[16]

*FE Allegations.* The Complaint offers no support for the inference that any FE possesses information about Defendants' state of mind or scope of knowledge. Br. 27–29. Plaintiffs dispute this principally by claiming that "FEs report that Defendants attended" meetings at which "the status of distribution channels, sales figures, and inventory levels were routinely discussed." Opp. 30 & n.33. But Plaintiffs ignore that only two FEs claim to have attended such meetings, and they offer no information about what was discussed. AC ¶¶ 211, 217. Other FEs' claims about meetings they did not attend should not be credited, *see Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 245 (3d Cir. 2013), but, regardless, they give no insight that could support scienter.

*Defendants' Public Statements.* Plaintiffs claim that Defendants' statements about demand, inventory levels, market dynamics, and FMC's internal tracking systems—including in response to analyst questions—demonstrate their general knowledge on these topics. Opp. 28–29, 31–32. Though these statements reference internal systems for tracking customer inventory and demand, they do not show that Defendants possessed information counter to the statements Plaintiffs challenge on those subjects. *See* Br. 28. Tellingly, the cases Plaintiffs cite include what the Complaint lacks: allegations about specific "detailed information" defendants contemporaneously knew that "directly suggested precisely the opposite" of their public

---

[16] In Plaintiffs' cited cases, the defendants were allegedly aware of *specific* information conflicting with their public statements. *See City of Warwick Ret. Sys. v. Catalent, Inc.*, No. 23-1108, 2024 WL 3219616, at *14 (D.N.J. June 28, 2024) (aware of "internal audit" findings showing "serious control issues"); *SEB*, 351 F. Supp. 3d at 894–95, 906–07 (aware of undisclosed clinical data because they had relied on the same data in regulatory submissions).

13

statements.  *See Wu v. GSX Techedu Inc.*, No. 20-4457, 2024 WL 3163219, at \*27 (D.N.J. June 25, 2024).[17]  Absent any such allegations about *what* Defendants knew regarding demand, inventory, and market dynamics—or that they actually accessed internal data on these topics— Plaintiffs' identification of statements allegedly "on the subject of the fraud" are insufficient.  *In re Henry Schein, Inc. Sec. Litig.*, No. 18-1428, 2019 WL 8638851, at \*21 (E.D.N.Y. Sept. 27, 2019).[18]

### B.  Plaintiffs' Remaining, Scattershot Attempts to Plead Scienter Fail

Plaintiffs have abandoned several scienter theories advanced in the Complaint, including that "everyone knew" about the supposed fraud and that the Defendant executives must have known.  *See* Br. 28, 29.  Plaintiffs' equally weak remaining arguments also fail.

*First*, Plaintiffs ignore the ample case law rejecting the assumption that executives know all information on a company's "core operations."  *See* Br. 29 (citing cases).  Plaintiffs' own cases show that pleading "core operations" is insufficient without allegations—absent here—"of specific information conveyed to management and related to the fraud."  *Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*, 532 F. Supp. 3d 189, 232 (E.D. Pa. 2021).[19]

*Second*, Plaintiffs claim that the timing of statements from February 2023 onward is

---

[17] *See also, e.g.*, *Hall v. Johnson & Johnson*, No. 18-1833, 2019 WL 7207491, at \*22 (D.N.J. Dec. 27, 2019) (defendant received "audit report" and "email . . . update" suggesting "quality assurance issues"); *see* n.16, *supra*.

[18] Plaintiffs fail to distinguish *Utesch v. Lannett Co., Inc.*, 316 F. Supp. 3d 895, 905–6 (E.D. Pa. 2018); there, statements about reasons for high prices did not show awareness of other, unlawful reasons.  Similarly, statements here attributing high inventories to, *e.g.*, weather, do not show intent to conceal COVID-era demand distortions.

[19] Plaintiffs' other cases involved more robust scienter allegations—beyond "core operations"—than the Complaint offers.  *See, e.g.*, *GSX*, 2024 WL 3163219, at \*24 (defendants received "detailed information" counter to public statements); *In re Allergan Generic Drug Pricing Sec. Litig.*, No. 16-9449, 2019 WL 3562134, at \*12 (D.N.J. Aug. 6, 2019) (ongoing DOJ price-fixing investigation supported scienter); *Mill Bridge V, Inc. v. Benton*, No. 08–2806, 2009 WL 4639641, at \*31 (E.D. Pa. Dec. 3, 2009) (defendants' insider trading supported scienter); *In re Campbell Soup Co. Sec. Litig.*, 145 F. Supp. 2d 574, 599 (D.N.J. 2001) (defendants advised others to avoid discussing undisclosed discounting).

suspect. For this, they rely solely on the opinion statement of one EMEA-based employee. Opp. 34; AC ¶ 53. And Plaintiffs ignore that these later statements, AC ¶¶ 349–411, came amid disclosures affirmatively identifying inventory issues and describing adverse patent decisions, Br. at 4–6, which undermines any inference of scienter. *See* pp. 3–4, 6–8, *supra*.[20]

*Third*, Plaintiffs claim—without any alleged basis—that Mr. Douglas's post-Class Period resignation supports scienter. It does not, Br. 30, and Plaintiffs' cases are not to the contrary. In both, unlike here, the plaintiffs made the required "particularized allegations connecting the departure[] to the alleged fraud." *In re Hertz Glob. Holdings Inc.*, 905 F.3d 106, 118 (3d Cir. 2018); *see W. Palm Beach Pol. Pens. Fund v. DFC Glob. Corp.*, No. 13-6731, 2015 WL 3755218, at *15 (E.D. Pa. June 16, 2015) (executive in charge of implementing regulations resigned after systemic violations revealed); *In re Novo Nordisk Sec. Litig.*, No. 17-00209, 2018 WL 3913912 at *4 (D.N.J. Aug. 16, 2018) (executives allegedly secretly fired as a result of relevant business issues).

## III.   PLAINTIFFS FAIL TO PLEAD "CONTROLLING PERSON" LIABILITY

Because Plaintiffs fail to plead a primary violation of Section 10(b) of the Exchange Act, their Section 20(a) control person claims against the Individual Defendants also fail. Br. 30.

### CONCLUSION

For the reasons set forth herein and in Defendants' opening brief, Defendants respectfully submit that the Complaint should be dismissed with prejudice.

---

[20] Plaintiffs attempt to distinguish *Alberici v. Recro Pharma, Inc.*, No. 18-2279, 2020 WL 806719, at *18 (E.D. Pa. Feb. 14, 2020) and *Teamsters Loc. 456 Pension Fund v. Universal Health Services*, 396 F. Supp. 3d 413, 472 (E.D. Pa. 2019) (*see* Opp. 33 n.37), but in both, as here, defendants disclosed adverse information related to the alleged omissions, undermining an inference of scienter. Several of Plaintiffs' other cases are also distinguishable because they involved unqualified positive statements as disaster was imminent. *See, e.g.*, *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 270 (3d Cir. 2009); *In re Urb. Outfitters, Inc. Sec. Litig.*, 103 F. Supp. 3d 635, 653 (E.D. Pa 2015).

Dated:    December 13, 2024

**BALLARD SPAHR LLP**

/s/ *M. Norman Goldberger*

M. Norman Goldberger
Laura E. Krabill
Lauren Engelmyer
1735 Market Street, 51st Floor
Philadelphia, PA  19103
(215) 864-8850
goldbergerm@ballardspahr.com
krabilll@ballardspahr.com
engelmyerl@ballardspahr.com


**DAVIS POLK & WARDWELL LLP**

Dana M. Seshens (*pro hac vice*)
Brian M. Burnovski (*pro hac vice*)
450 Lexington Avenue
New York, NY  10017
(212) 450-4000
dana.seshens@davispolk.com
brian.burnovski@davispolk.com

*Attorneys for Defendants FMC Corporation,*
*Mark A. Douglas, and Andrew D. Sandifer*

16